**2020-1362**

# United States Court of Appeals for the Federal Circuit

IMPLICIT, LLC,

*Plaintiff – Appellant,*

*v.*

SANDVINE CORPORATION,

*Defendant – Appellee.*

On appeal from the United States District Court for the Eastern District of Texas in Case No. 2:18-CV-00054, Chief District Judge J. Rodney Gilstrap

## OPENING BRIEF FOR APPELLANT

CHRISTIAN JOHN HURT
DAVIS FIRM PC
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
churt@bdavisfirm.com

*Counsel for Appellant*

MAY 18, 2020

# CERTIFICATE OF INTEREST

Counsel for Appellant, Christian Hurt, certifies the following:

1. The full name of every party or amicus represented by me is:

   Implicit, LLC

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   William Ellsworth Davis, III, Christian J. Hurt, Kirk Voss, Davis Firm, P.C.;

   Former Counsel: Brandon C. Martin, Darrell Atkinson, Diane S Rice, Francesca Miki Shima Germinario, Spencer Hosie, Hosie Rice LLP

5. The title and number of any case known to counsel to be pending in this or any other court agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47.4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary):

   No other appeal from these proceedings was previously before this Court or any other appellate court. There is no case pending in this Court or any other court that will directly affect or be directly affected

by the Court's decision here with the exception of *Implicit, LLC v. NetScout System's Inc., Inc.*, Case No. 2:18-CV-00053-JRG (EDTX), which was previously the lead case that this matter was consolidated into for all pretrial issues. Plaintiff's Motion for Judgement as a Matter of Law and Motion for a New Trial is fully briefed and currently pending in that proceeding.

Dated: May 18, 2020 Respectfully submitted,

/s/Christian John Hurt
Christian John Hurt
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................iv

STATEMENT OF RELATED CASES....................1

JURISDICTIONAL STATEMENT....................1

STATEMENT OF ISSUES....................1

STATEMENT OF THE CASE....................3

I. The Implicit Patents....................3

II. The District Court Proceedings....................9

A. The Accused Sandvine Products....................9

B. The Claim Construction Opinion....................11

C. The Stipulated Judgment of Noninfringement....................15

SUMMARY OF THE ARGUMENT....................15

STANDARD OF REVIEW....................16

ARGUMENT....................16

I. The District Court Erred in its Construction of the "Sequence of [Two or More] Routines" Terms....................16

A. Implicit's Proposed Construction–Supported By Two Other District Courts–is Correct....................16

B. The Claimed "Path" that Indicates the "Sequence of [Two or More] Routines" is a Data Structure—Not the Source Code....................22

C. The Court's Construction Was Twisted Into An Improper the "Source Code" is the "Path" Defense....................23

D. Under the Correct Construction, There is At Lease an Issue for Trial ....... 27

II. The District Court Erred in its Construction of the "Execute" and "Convert" Terms ....... 28

A. The Plain-and-Ordinary Meaning of These Terms Do Not Require the District Court's "Outermost Header" Limitation ....... 28

B. The District Court's Construction Improperly Excluded Advancing References From the Scope of the Claims ....... 31

C. The Court's Erroneous Construction Was Twisted Into a Baseless "Outermost Header" Defense ....... 38

D. The District Court Improperly Limited This Claim When It Was Undisputed That the Intrinsic Record Lacked Lexicography or Disclaimer ....... 39

E. Under the Correct Constructions, There is At Least an Issue for Trial ....... 41

CONCLUSION ....... 43

**ADDENDUM**

Claim Construction Memorandum and Order –
Implicit v. NetScout Systems, Inc.; Case No. 2:18-CV-53-JRG
(E.D. Tex. Apr. 15, 2017) ....... Appx1

U.S. PATENT NO. 8,694,683 ....... Appx37

U.S. PATENT NO. 9,270,790 ....... Appx101

Final Judgment
Implicit v. Sandvine Corporation; Case No. 2:18-CV-54-JRG
(E.D. Tex. Dec. 18, 2019) ....... Appx2247

Stipulation of Noninfringement;
Implicit v. Sandvine Corporation; Case No. 2:18-CV-54-JRG
(E.D. Tex. Dec. 17, 2019) ............................................................ Appx4099

# TABLE OF AUTHORITIES

## Cases

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*
632 F.3d 1246 (Fed. Cir. 2011) .................... 30

*GE Lighting Sol'ns, LLC v. AgiLight, Inc.*
750 F.3d 1304, 1309 (Fed. Cir. 2014) .................... 41

*Continental Circuits LLC v. Intel Corp.*
915 F.3d 788 (Fed. Cir. 2019) .................... 16

*Medrad, Inc. v. MRI Devices Corp.*
401 F.3d 1313 (Fed. Cir. 2005) .................... 25

*O2 Micro v. Beyond Innovation Tech. Co.*
521 F.3d 1351 (Fed. Cir. 2008) .................... 25, 39

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) .................... 29, 40

*Vitronics Corp. v. Conceptronic, Inc.*
90 F.3d 1576 (Fed. Cir.1996) .................... 40

*Thorner v. Sony Comp. Ent't Am., LLC*
669 F.3d 1362 (Fed. Cir. 2012) .................... 40

*Party Name v. Party Name*
Citation (Court and Year) .................... X

## Statutes & Rules

28 U.S.C. § 1295(a) .................... 1

28 U.S.C. § 1338(a) .................... 1

## STATEMENT OF RELATED CASES

No other appeal from these proceedings was previously before this Court or any other appellate court. There is no case pending in this Court or any other court that will directly affect or be directly affected by the Court's decision here with the exception of *Implicit, LLC v. NetScout System's Inc., Inc.*, Case No. 2:18-CV-00053-JRG (E.D. Tex.), which was previously the lead case before this matter was consolidated into for all pretrial issues. Plaintiff's Motion for Judgement as a Matter of Law and Motion for a New Trial is fully briefed and currently pending in that proceeding.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction in this appeal under 28 U.S.C. § 1295(a). This appeal arises from a final judgment in a patent-infringement case in which the District Court had jurisdiction under 28 U.S.C. § 1338(a).

## STATEMENT OF ISSUES

This appeal raises the following two claim-construction issues:

1. <u>"Sequence of [Two or More] Routines"</u>: These terms relate to a claimed "path" within a data structure that indicates the "sequence of [two or more] routines" that the software uses to process network data traffic. Multiple district court decisions issued the same construction that Implicit proposed in this case: "an ordered arrangement of [two or more] software routines that ***was not identified (i.e.,***

***configured) prior to receiving a first packet of a message***." The Court in this case departed from that construction. It construed the phrase as "an ordered arrangement of [two or more] software routines that ***was not selected from a set of arrangements created before receiving a first packet of the message***." Neither party here proposed the Court's new construction. And the Court allowed the construction to be used to improperly shift away from determining whether the "path" ***data structure*** was identified (or was configured) in the network device prior to receiving the first packet of a message to determining whether the software ***source code*** itself was written to handle the possible arrangements prior to receiving the first packet of the message. Should this Court reverse the District Court's construction?

2. <u>"Execute" and "Convert" Terms</u>. The District Court added the requirement that claims must "convert each packet's outermost header structure" from one format to another to meet these claims and that executing a protocol required operating on the "outermost header." It has long been common for computer systems written in C-based languages to advance a reference to perform this functionality. The patent also specifically discloses a single-copy embodiment that advances a reference pointer. Despite this, the District Court expressly rejected Implicit's contention that moving a reference meets this claim limitation and allowed an "outermost header" defense that excludes whole classes of network devices from the scope of the claims. Should this Court reverse the District Court's construction?

## STATEMENT OF THE CASE

### I. The Implicit Patents

This case involves three related patents that are referred to collectively as the Demultiplexing Patents (or "the Implicit Patents").[1] The Patents are entitled "Method and System for Data Demultiplexing." *E.g.*, Appx37. The Patents provide an architecture for network devices to demultiplex data into different messages (or flows) to inspect and analyze each flow at the application layer. Traffic on a network (such as the Internet) is multiplexed together, which means that the traffic from different messages (such as video, image, or email) are interleaved with one another and transmitted over a medium. Demultiplexing refers to the process of separating out that interleaved traffic in a way that permits the network device to identify and inspect packets from each message.

Network traffic is transmitted in smaller units called "packets" that contain smaller pieces of the overall message. Computers communicate using a layered "stack" of protocols, and each packet has a number of headers that generally correspond to each protocol in the stack, *e.g.*, TCP/IP is a common protocol stack for Internet communications that uses the TCP and IP protocols. There are protocols

---

[1] The following are the Demultiplexing Patents at issue in this case: U.S. Patent Nos. 8,694,683 ("the '683 Patent"); 9,270,790 ("the '790 Patent"); 9,591,104 ("the '104 Patent"). Appx37–132.

relating to the data link that the traffic travels on (*e.g.*, Ethernet). There are also protocols for applications that the data is associated with. Common examples are HTTP for web-based traffic and SMTP for email. The data itself (*e.g.*, the video or email) is on top of the protocol stack. Packets from multiple messages are mixed together on the network as they travel, resulting in a multiplexed stream of packets.

A multiplexed stream of packets for three different messages—video, email, and an image, is shown in the figure below:




The Demultiplexing Patents provide a path-based architecture for a network device to inspect the packets at the application layer to demultiplex a received multiplexed stream. As a packet is received by the network device, the software inspects information in that packet in the lower-level protocols. Packets in a message are typically associated together based on the addresses of the source and destination of the message (typically the IP addresses), the network port from which the message originated, and the network port to which the message is destined. If the packet is for a message that has not yet been identified by the network device,

the software creates a path to process packets making up that message.

The software routines then inspect the packet at the higher-level protocols and continue to create the "path" in a data structure as the software inspects and identifies the application-level protocol for the message (*e.g.*, HTTP) and the application data (*e.g.*, Netflix). This example process is shown in the annotated version of Figure 1 of the Demultiplexing Patents for processing a message containing Netflix traffic (*see*, *e.g.*, Appx45), which would process packets of that message based on the "path" data structure created in the network device. The Demultiplexing patents describe that the "path" is created by inspecting the first packet of the message, then used in processing subsequent packets of that same message.



Fig. 1

While this example shows the software identifying the application protocol (HTTP) and the application data (Netflix) based on a single packet, it often takes

more than one packet for the system to identify the application protocol and the application data. This is because that application information may span multiple packets. It therefore may take more than one packet to definitively identify the application protocol and application for the message. In those cases, the software will continue to create the path based on inspecting subsequent packets of the messages (including ensuring that they are in the right order).

The process to create the path requires more complicated programming and analysis when analyzing network traffic to determine the application protocol (*e.g.*, HTTP) and the application (*e.g.*, Netflix). The Implicit Patents overcome this speed problem by providing a way to inspect the initial packet or packets of the flow, determine the complicated branching decisions needed to process those packets, store that path in a data structure, and then use that path when the network device processes subsequent packets of the flow.

After the network device identifies the path for the message, it stores that path. Then, when subsequent packets from that message arrive, the software processes those packets using the path that it has already built. This processing is fast because it does not need to re-create the path.

The example below from Figure 4 shows the stored path data structure (typically a flow table) for three different messages—a Netflix video, a Gmail email,

and an Instagram image (*see* Appx47):







Claim 1 of the '683 Patent includes limitations reciting these three concepts: create the path, store the path, and process subsequent packets using that path, where the path indicates that the software can inspect at the application layer (the "execute . . . to convert one or more packets having a TCP format into a different format" limitation) (Appx67):

> 1. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
>
> a processing unit; and a
>
> memory storing instructions executable by the processing unit to:
>
>> create, based on an identification of information in a received packet of a message, a path that includes one or more data structures that indicate a sequence of routines for processing packets in the message;
>>
>> store the created path; and

> process subsequent packets in the message using the sequence of routines indicated in the stored path,
>
> wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.

The Implicit Patents also teach examples of how the device can process convert the format of packets "up" the protocol stack from the lower layers (*e.g.*, TCP) to the application layers (*e.g.*, HTTP) and ultimately to the application itself (*e.g.*, Netflix, Gmail, Instagram). There are multiple ways to convert a packet's format up the protocol stack, including using reference pointers, copies of the packets, other data structures, or other ways.

The '683 Patent discloses a reference-pointer-based embodiment, known as a "single-copy" embodiment. This is because only one copy of the packet is required (as opposed to making multiple copies as the device processes the packet). The single-copy embodiment explains that the device can "advance the reference past the header information for the protocol so that the reference is positioned at the next header" (Appx67 ('683 Patent, at 14:10–16)):

> [A] reference to a single copy of the message can be passed to each conversion routine or demuxkey routine. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence.

In addition to this embodiment, a few claims of the Patents specifically recite that the conversion occurs by "removing an outermost header of the packets." *E.g.*, Appx68 ('683 Patent, at claim 20). The remainder of the claims omit any reference to an "outermost header" and recite "convert[ing] packets from an input format to an output format," Appx68 ('683 Patent, at claim 16), "execut[ing] a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format," Appx68 ('683 Patent, at claim 1), and similar limitations.

Implicit's predecessor (BeComm) designed in-line network devices based on the Implicit Patents, including a media gateway, a media server, and a residential gateways for cable customers. *E.g.*, Appx415, Appx417, Appx429–430.

## II. The District Court Proceedings

### A. The Accused Sandvine Products

Implicit filed this case against Sandvine in March, 2018. Appx184. Implicit asserted infringement against three Sandvine networking products: the Policy Traffic Switch ("PTS"), PacketLogic, and the Network Application Visibility Library ("NAVL"). *See* Appx1225–1299. Internet service providers and other companies use Sandvine's products to determine, at the application level, the type of traffic that is flowing through their networks. *E.g.*, Appx1225.

The way Sandvine provides this visibility is through dynamic flow-based processing. One of Sandvine's founders publicly explained how this process

operated for the PTS, and though the process is generally similar for each product. Appx1245–1247, *see generally* Appx1259–1299. The PTS contains a flow table that tracks the "Application ID," such as "Facebook" or other applications (such as "ESPN," "Netflix," or "YouTube") (Appx1245–1247):




Appx1247

Before any traffic arrives, the flow table is empty. The product creates each flow table entry for a flow after the first packet of the flow arrives. For example, the product first receives the "Photos" traffic, analyzes it, and then creates a flow-table entry for "Connection Flow 1." *See* Appx1245–1247. On the first packet, "the application ID isn't known" and "is not knowable." Appx1245–1246. As the

product analyzes the "Photos" traffic at the application levels, it determines that the traffic is "Facebook" and it updates the entry. *See* Appx1245–1247.

The Sandvine products also use pointers to process packets at various layers in the protocol stack, including the transport layer (*e.g.*, TCP) and application layers (*e.g.*, HTTP or Facebook). *See* Appx1248–1257 (PTS), Appx1280–1284 (PacketLogic), Appx1296–1299 (NAVL), *see also* Appx1154–1156 (discussing pointers in C programming language), Appx1111, Appx2111–2114 (summary judgment briefing and transcript discussing products).

### B. The Claim Construction Opinion

The District Court issued its Claim Construction Opinion on April 15, 2019. Appx1. The parties disputed the "sequence of [two or more] routines" terms. Implicit proposed a construction of "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of a message." Appx8. Implicit proposed a construction based on claim construction orders entered in two prior cases, the *F5 Networks II* case and the *Trend Micro* case. Appx10, Appx24. Those courts assessed the same record for this term, and, after years of litigation, the construction appeared settled (the parties agreed to that construction in a different, third case, the *Palo Alto Networks* case). Appx224.

Sandvine proposed the following construction: "an ordered arrangement of two or more software routines that was not selected (or found or picked) from a finite

set of possible arrangements which were created before receiving a first packet of the message." Appx8. No court had previously adopted this construction.

The District Court rejected both parties' proposals. The focus of the dispute related to Implcit's statements to the Patent Office regarding a 1997 Ph.D. thesis by David Mosberger that described an operating system called SCOUT. Appx9–13; *see also* Appx2501–2504. Because SCOUT was designed for special-purpose devices (*e.g.*, set-top boxes that handle MPEG-2 audio-video), it pre-stored each processing "path" data structure before any packets arrived. SCOUT loaded a configuration that codified all the possible branching decisions that the software would need to make given the special-purpose of the device. SCOUT then used that configuration to create all the possible path data structures before it received any the packets associated with those paths. Appx11. Figure 3.6 from Mosberger shows an example of pre-configured paths (Appx2503 (color version of Appx11)):




Figure 3.6: Paths Versus Classifiers

The figure shows with green lines (p1, p2, p3, p4, and p5) the pre-created "paths" in one implementation, namely a device that handles traffic based on certain types of lower-level protocols (*e.g.*, Ethernet, ARP, IP, UDP, and TCP).

Reviewing this record, the Court construed the term in a new way: "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." [2] Appx14. The Court concluded that, while the specification "frequently uses the words 'identify,' 'identifies,' and 'identified,'" altering the prior constructions would "more clearly reflect the patentee's statements regarding Mosberger and will be more readily understandable in the context of the claims." *Id.*

The parties also disputed the construction of the "execute" and "convert" terms in the Implicit Patents. Implicit proposed that the Court afford these terms their plain-and-ordinary meaning, which refers to processing packets up and down the stack at each protocol layer. Appx23–24, Appx29–31. Implicit asserted that these terms were not limited to how the device performed the "execute" or "convert"

---

[2] The "sequence of [two or more] routines" terms include "sequence of [two or more] routines" and "list of conversion routines." Because those terms raise the same issue, the parties "presented substantially the same dispute" for both terms. Appx15. The Court also construed the terms with the same "not selected from a set of arrangements created before receiving a first packet of the message." Appx14–15. For these reasons, Implicit addresses both the "sequence of [two or more] routines" and "list of conversion routines" as a single term: "sequence of [two or more] routines."

processing—whether using pointers, copies of packets, or other data structures. Sandvine asserted that the terms required operating on a packet whose "outermost header" was affiliated with a protocol (*e.g.*, TCP) and then "converting the outermost header structure" of that packet to "another type of header structure." Appx23–24, Appx29–31.

The Court sided with Sandvine. The Court construed the "convert" terms as requiring "covert[ing] the packet(s) outermost header from [TCP/a transport layer protocol header/different protocol header] to another type of header structure." Appx23–34. The Court similarly construed the "execute" terms as operating on packets "whose outermost header" is the header related to the protocol (*e.g.*, "execute a Transmission Control Protocol (TCP)" required "operate on one or more packets whose outermost header is a TCP header"). Appx29–34.

Sandvine did not assert disclaimer, but the Court construed these terms based on various statements made in the prosecution and reexamination histories. Appx23–34. Based on these statements, the Court concluded that the Patents' single-copy embodiment fell outside the scope of the claims. Appx27, *see also* Appx67 ('683 Patent, at 14:10–16) (disclosing "single copy" embodiment). Notwithstanding that disclosure, the Court concluded that "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into

a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." Appx27.

Because the Claim Construction Opinion was issued by a Magistrate Judge, Implicit timely objected to the Opinion. Appx1050. The Court overruled Implicit's objection. Appx1057.

### C. The Stipulated Judgment of Noninfringement

Sandinve moved for summary judgment of noninfringement based on the "execute" and "convert" limitations, Appx1109, which the Court denied, Appx2120–2121. This case was consolidated with a proceeding against NetScout Systems, and Implict's claims against NetScout were tried to a jury in December, 2019. Appx160. After a verdict in NetScout's favor, Implicit and Sandvine entered into a stipulated judgment of noninfringement based on both the "sequence of [two or more] routines" terms and the "execute" and "convert" terms. Appx2247–2248, Appx4099–4102. The stipulation allowed a challenge of those constructions before this Court. This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court erred when it construed the "sequence [of two or more] routines" and "execute" and "convert" terms. These terms have well-understood meanings that the District Court departed from. This departure enabled two claim-

construction-based noninfringement defenses that contradict the teachings of the Implicit Patents and basic computer science: (1) that a device with pre-created "source code" did not infringe the claims because the device simply selects software that was created before the first packet arrived; and (2) that a pointer (or reference) could not define the "outermost header" of a packet in the TCP routines—even though C-based network systems make heavy use of pointers. Both positions read the Implicit Patents to cover no real-world devices, including those that Implicit's predecessor (BeComm) designed. For these reasons, and those below, Implicit respectfully requests that this Court reverse the judgment of noninfringement and remand these cases for a trial on the merits.

## STANDARD OF REVIEW

The District Court's construction was based solely on intrinsic evidence. In this instance, this Court reviews claim construction *de novo*. *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 795 (Fed. Cir. 2019).

## ARGUMENT

### I. The District Court Erred in its Construction of the "Sequence of [Two or More] Routines" Terms

#### A. Implicit's Proposed Construction—Supported By Two Other District Courts—is Correct

This term is related to the claimed "path" and how the network device "creates" that "path." Implicit's proposal captures the basic concept in the claims

that the network device creates the "path" after the device receives the first packet of a message, *i.e.*, the path was not preconfigured in the device before the first packet arrives. Implicit's proposal was virtually identical in substance to the construction that Judge Gilstrap in the Eastern District of Texas and Judge Illston in the Northern District of California arrived at when addressing this issue in a number of prior Implicit cases (*F5 Networks I*, *F5 Networks II*, and *Trend Micro*).[3] The parties even agreed to that construction in the *Palo Alto Networks* case, and the Court adopted the agreement. Appx541. These constructions were based on the same record in this case, including the prosecution history concerning Mosberger. The District Court in this case should have adopted it.

The issue here relates to the nature of the "path" in these claims: what is a "path" and when does the network device "create . . . a path?" The claims themselves answer these questions. The "path" in claim 1 of the '683 Patent includes a data

---

[3] The following are each of the Claim Construction Opinions that have addressed the "sequence of [two or more] routine" terms and similar terms. *Implicit, LLC v. NetScout, Inc.*, No. 2:18-CV-00053, Dkt. 111 (E.D. Tex. Apr. 15, 2019) (Payne, M.J.) ("*NetScout*") (Appx1–36); *Implicit, LLC v. Huawei Techs. USA, Inc.*, No. 6:17-CV-182, Dkt. No. 101 (E.D. Tex. Mar. 6, 2018) (Gilstrap, J.) ("*Palo Alto Networks*") (Appx534–563); *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80, Dkt. No. 115, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017) (Gilstrap, J.) ("*Trend Micro*") (Appx487–532); *Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:14-CV-2856, Dkt. No. 57, 2015 U.S. Dist. LEXIS 60197 (N.D. Cal. May 6, 2015) (Illston, J.) ("*F5 Networks II*") (Appx565–588); *Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:10- CV-3365, Dkt. No. 93, 2012 U.S. Dist. LEXIS 27238 (N.D. Cal. Feb. 29, 2012) (Illston, J.) ("*F5 Networks I*") (Appx590–603).

structure, and that data structure indicates the "sequence of routines for processing packets in a message," such as a video, email, or image. *E.g.*, Appx67. The claims also speak to ***when*** the device creates the path: ***after*** the network device receives the first packet of a message. This logically flows from the language in claim 1 of the '683 Patent: the device creates the path "based on an identification of information in a received packet of a message." ***Before*** receiving the first packet in the message, there is no completed path in a data structure for that message; it is only ***after*** the network device receives the first packet in the message that it creates the path. That data structure indicates the sequence of routines for processing subsequent packets.

The specification of the Implicit Patents supports the plain language. The Patents teach that existing network computer systems "typically use[d] predefined configuration information to load the correct combination of conversion routines for processing data." Appx61 ('683 Patent, at 1:48–59). In these systems, the path for each type of message was pre-created ***before*** the packets arrived; they did not create any part of the path data structure ***after*** receiving the first packet of a message.

The main problem with these prior approaches is that they consumed resources or were too static in their processing to be useful for anything except specific-purpose-built devices (*e.g.*, remote controls or cameras). The potential combinations required to process each possible type of message a system may encounter (*e.g.*, each type of email, video, or other flow of related packets) increases

exponentially as the number of message types increases due to the stacked nature of network protocols and applications (*e.g.*, Facebook runs on top of HTTP, which runs on top of TCP, which runs on top of IP, which runs on top of Ethernet). Similarly, while a system could attempt to inspect every packet and determine for each packet which branches in the source code to take, this model would become computationally prohibitive as well. This is because the number of branches would grow with the number of applications. The end-result, as the Patents recognize, is that "[t]he overhead of statically providing each possible series of conversion routines is very high." Appx61 ('683 Patent, at 1:48–59). This was a significant problem because state-of-the-art computers in the 1990s had less resources available than a modern-day smartphone.

The Implicit Patents solved this problem by creating the path after receiving the first packet of a message—and to do so based on information in the packet. While common sense dictates that the system includes the software routines and the ways they could be connected together beforehand (that is how all computers work), the software does not create the actual path in the data structure until after it receives and processes the first packet of a message. This allows the software to discover early in the demultiplexing process which routines are needed to process the data and then store the identification of these routines in a data structure so subsequent

packets can benefit from these branching decisions without having to make them again. The path is the manifestation of those branching decisions.

The prosecution history supports Implicit's construction. The SCOUT operating system, as Implicit discussed it, creates all of the possible path data structures ***before*** the packets associated with those paths were received. *See* Appx11–13, Appx687–691, Appx694–695, Appx711–714. A SCOUT programmer could pre-configure a particular device to handle the expected traffic (*e.g.*, configure a path for MPEG video delivered to a set-top box or configure a path to handle JPEG images sent from a camera). In other words, SCOUT loaded a configuration that codified all the branching decisions that the device would need to make to handle the expected traffic.

SCOUT then used that configuration to create all the possible path data structures ***before*** the packets associated with those paths were received. In this way, SCOUT allowed the branching decisions to be avoided, but it did so by statically defining and limiting the number of those decisions that could be made by the system. The Implicit system, in contrast, is intended for general network devices (such as switches, gateways, and firewalls) whose purpose is to handle many different types of traffic and applications and demultiplex all of that traffic.

Figure 3.6 from SCOUT supports Implicit's position. The figure shows with green lines (p1, p2, p3, p4, and p5) the pre-created "paths" in one implementation,

namely a device that handles traffic based on certain types of lower-level protocols (*e.g.*, Ethernet, ARP, IP, UDP, and TCP) (Appx2503 (color version of Appx11)):




Figure 3.6: Paths Versus Classifiers

In this diagram, the green lines reflect the "paths," not the gray lines. Those green "paths" are preconfigured in the system prior to SCOUT receiving the first packet of a message. *See* Appx11–13. Then, as the packets arrive, SCOUT identifies which of those pre-stored green paths (p1, p2, p3, p4, or p5) to use to handle the traffic. *See id.*. SCOUT does not create any paths after receiving the first packet. SCOUT identifies (i.e., configures) the ordered arrangement of routines prior to receiving a first packet of a message.

Implicit's proposed construction captures the essence of the invention. This essence is reflected in both the Patents and in Implicit's discussion in connection with SCOUT: the ordered arrangement of routines in the path data structure is not "identified (i.e., configured) prior to receiving a first packet of a message."

### B. The Claimed "Path" that Indicates the "Sequence of [Two or More] Routines" is a Data Structure—Not the Source Code

The central issue for this term is what cannot exist prior to receipt of the first packet of the message and what must then come into existence after receiving the first packet? It is the "data structure." Prior to receiving the first packet, "data structure" that indicates the sequence of routines cannot exist. After receiving the first packet, the device then creates the data structure. This flows from the claims themselves. *See, e.g.*, Appx67 ('683 Patent, claim 1) ("***create***, ***based on*** an identification of ***information in a received packet*** of a message, a path that includes one or more ***data structures that indicate a sequence of routines*** for processing packets in the message") (emphases added).

The software routines can exist prior to receiving the first packet. And how the software may invoke those routines may also exist. But based on the claim language, the "data structure" that identifies (or configures) the ordered arrangement of routines to process packets in the message cannot exist prior to the apparatus receiving a packet. This is necessarily the case, because the claims require that the "data structure" be "create[d], based on … information in a received packet of a message." The *F5 Networks I* Court, entering the construction Implicit proposed here, recognized that distinction: "Implicit did not disclaim the ability to create a sequence of conversion routines by relying in some part on predefined 'configuration information,' but only the use of pre-configured paths." Appx595.

The claimed "path" is a "data structure"—and the disclaimer only extends to pre-configured path data structures.

SCOUT is that type of preconfigured system. Implicit's Patents are different. And Implicit's proposed construction captures this concept by using the term "identified" or "configured," which ties the pre-configured "path" to the "data structure" as the claims require and the F5 Networks I Court recognized.

### C. The Court's Construction Was Twisted Into An Improper the "Source Code" is the "Path" Defense

The District Court erred because it changed the construction "***identified (i.e., configured) before*** receiving a first packet of the message"—which ties the liability analysis to the path data structure—to "***selected from a set of arrangements created before*** receiving a first packet of the message." Sandvine twisted the construction into an improper focus to the source code, despite the Court's finding that Implicit "did not disclaim the *existence* of software routines prior to receiving a first packet of the message." Appx13 (emphasis in original). That was in error.

The term "identified" reflects what the path data structure does—it indicates the sequence of routines. Implicit's construction also speaks to when that structure must come into existence: after the first packet arrives. That is exactly what prior courts concluded. But replacing that understandable analysis with "selected from a set of arrangement created before" raised a potential ambiguity to exploit: what does

the "selecting" and what "creates" the "set of arrangements"? Is it the data structure of the claims or the source code?

Sandvine's answer was the source code. If a software developer "created" the source code routines before the first packet arrives and the source code simply "selected" which routines to use, Sandvine asserted the claims were not met. That is what Sandvine's counsel repeatedly asserted to the jury on behalf of NetScout in the *NetScout* trial (Appx3018):

> So the key question: Is NetScout sitting back in their cubicles writing the software that they pre-install to process packets on their devices, which is what the evidence will show. If that's the case, we're not doing Mr. Balassanian's invention. It's that simple.

Sandvine's counsel asserted that the claim required the "path" to be the "source code" based on the Court's erroneous claim construction (Appx4065):

> Why do we say it's the source code where the path has to be? Just look at it. It is the routines that create the path. It is the arrangement of the routines that form the path. The routines are what we need to be looking at. That's why we bring people in one after another to say our software is pre-created. Our paths are in the software. They exist. We can show them to you. We did show them to you.

Sandvine's counsel even asserted that Implicit's position—based in the claim language—that the "[t]he path is the flow table entry [data structure]; it's not the source code" was "baloney." Appx4043, Appx4065.

The shift that Sandvine latched onto flowed from the Court's change in verbiage, and it was significant. It conflicts with the intrinsic record. And it excluded the embodiments of the Implicit Patents, a highly disfavored result. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1320 (Fed. Cir. 2005) ("A claim construction that does not encompass a disclosed embodiment is... rarely, if ever, correct.") (alteration in original) (internal quotation marks and citation omitted). All computer systems are programmed before they operate.

Neither Implicit's prosecution history statements concerning SCOUT nor the SCOUT disclosure itself disclaims the existence of software routines prior to receiving the first packet of a message. Nor do Implicit's statements disclaim systems in which the source code indicates how the branching decisions in the source code might indicate the sequence of processing steps to process packets within a message. Finding disclaimer would lead to absurd result of excluding virtually every networked computer as a practical matter.

Implicit respectfully requests that the Court reverse the District Court's construction, which allowed a source-code-based claim-construction defense that conflicts with the intrinsic record. It allowed an argument for the fact-finder to resolve a technical dispute about the scope of the claims. *See O2 Micro v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise

an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

The source code is not the "path"—the "path" is the actual data structure created and stored to indicate the sequence of routines to process subsequent packets of a message. While the source code might include many branching decisions, these decisions are not known until the apparatus running the software inspects a particular packet. Only after this inspection does the apparatus described and claimed in the Implicit Patents "create" a data structure capturing these branching decisions—and the claims require that it do so "based on information … in a received packet." Using that path data structure, subsequent packets of the message will be processed without having to make these branching decisions again.

The "source code is the path" position reduces to a nonsensical reading of the entire claim to require that the source code running on the network device be written "based on information" in a packet received by the device. Implicit's proposed construction—the construction adopted by the courts and parties in the earlier cases—stays true to the inventions described in the intrinsic evidence. It also forecloses a technically impossible "chicken and egg" claim-construction argument that will confuse the fact-finder.

The source code running on the apparatus is not the "path"; the data structure storing the results of the processing decisions through the source code is the claimed

"path." Implicit's proposed construction captures that concept by requiring that the data structure that identifies the sequence of routines does not come into existence until after receiving the first packet of a message. Implicit respectfully requests that the Court adopt this construction and reverse the District Court's judgment.

### D. Under the Correct Construction, There is At Least an Issue for Trial

Under Implicit's proposed constructions for these sets of claim terms, it is undisputed that there at least an issue for trial in this case. Implicit proposes here the same constructions for the "sequence of [two or more] routines" that it proposed below:

- **"sequence of [two or more] routines"**: "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of a message"
- **"list of conversion routines"**: "an ordered arrangement of software routines for changing the form of data and that was not identified (i.e., configured) prior to receiving a first packet of a message"

As described above regarding the PTS, it was undisputed that the Sandvine creates new data structures after receiving the first packet of a message for use in processing subsequent packets of the message. Appx1237–1249 (PTS), Appx1265–1279 (PacketLogic), Appx1293–1297 (NAVL). This raises at least a triable issue under the proper construction of the "sequence of [two or more] routines" terms.

For that reason, Implicit respectfully requests that the Court reverse the District Court's constructions, vacate the judgment of noninfringement, and remand.

## II. The District Court Erred in its Construction of the "Execute" and "Convert" Terms

The District Court erred in construing the "execute" and "convert" terms. The Court did not construe any of the technical terms in this phrase, *viz.*, the Court did not provide a definition for "protocol" or "Transmission Control Protocol" or the other technical terms. The Court instead construed the term "format" of the packet as the "outermost header structure" and required that any conversion required that the device "convert the outermost structure." Appx23–34. The Court then, as a matter of claim construction, concluded that advancing a reference—which the patent describes—falls outside the scope of the claims. Appx27. These holdings were in error, and Implicit respectfully requests that this Court reverse them. Implicit respectfully requests that the Court afford these terms their plain-and-ordinary meanings—which lack the limitations that the District Court imposed.

### A. The Plain-and-Ordinary Meaning of These Terms Do Not Require the District Court's "Outermost Header" Limitation

Implicit proposed that these claim terms should be afforded their plain and ordinary meaning as would have been understood by those skilled in the art. Executing a protocol and converting a packet from one format to another refers to processing packets up and down the protocol stack, typically from the transport layer (such as the TCP layer) to another layer in the protocol stack, such as the application layer. *See* Appx1145–1152 (discussing layered "stack" of protocols). Those skilled

in the art would have understood that the ordinary meaning of a "format" of a packet in connection with network processing refers to which layer of the packet is being processed. Thus, "converting" packets from one format to another format would be understood by those skilled in the art as processing the packet from one layer in the protocol stack to another layer in in the protocol stack, *e.g.*, from the TCP layer to the application layer. These concepts flow from the claim language, which contains well-understood terms such as "execute," "convert," and "format." The language does not restrict *how* that conversion occurs—whether through the use of pointers (which was commonplace), using packet copies, other structures, or other ways.

Rather than afford those terms their plain meaning, the District Court replaced those terms with the more complicated concepts of an "outermost header" and "outermost header structure" of a packet. The claims themselves show that adding these concepts to all of the claims is, at most, unnecessary. "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms," and the presence of a dependent claim that adds a particular limitation "gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005) (en banc).

Here, some claims of the Implicit Patents already recite the concept of an "outermost header," while other claims—including an independent claim—lack that limitation. *Compare, e.g.*, Appx68 ('683 Patent, claim 16) (reciting "a particular

routine that is used to execute a protocol to ***convert packets from an input format to an output format***") *with* Appx68 ('683 Patent, at claim 20 (reciting the invention of claim 16 "wherein the particular routine is executable to ***convert packets by removing an outermost header of the packets***") (emphases added); *see also* Appx68 ('683 Patent, at claim 24) ("***removing an outermost header*** of a given packet using a first routine corresponding to a protocol in a first layer and by ***removing the resulting outermost header*** using a second routine corresponding to a different protocol in a different layer") (emphases added). In fact, very few of the claims of the Implicit Patents include the term "outermost header."

This difference among the claims strongly suggests that it was improper to import the "outermost header" concept into all of the claims—including those that expressly omit that concept. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254–55 (Fed. Cir. 2011) (declining to import a "split" modifier for a metal adaptor where some claims expressly recited "split"-related limitations and other claims omitted those limitations on the adapter). In addition, the "outermost header" language does not appear in the specification of the Implicit Patents, nor is it depicted in the figures. And none of the claims in 2 out of the 3 Implicit Patents here even recite an "outermost header." This further weighs against importing this concept into all of the claims of all Implicit Patents—especially when the patentee

knew how to direct claims to the outermost header of packets and did so in only certain claims of the '683 Patent.

The District Court did not look to these differences in the claims on the basis that "claim differentiation" did not apply because "Claim 20, as a dependent claim, includes all of the limitations of Claim 16." Appx28. That holding was incorrect. The claims show that Implicit knew how to include an "outermost header" concept into the claims—because it did so in a small subset of the claims—and omitted that concept in others. This is consistent with the written description, which never uses the term "outermost header" and generally discuses converting packets from one format to another. *See, e.g.*, Appx61–62 ('683 Patent, at 2:42–3:12). The Court's inclusion of the "outermost header" limitation departs from the plain language of these claim terms and should not have been included.

### B. The District Court's Construction Improperly Excluded Advancing References From the Scope of the Claims

The District Court also improperly excluded advancing a reference from the scope of the claims. A pointer to a header can determine the "format" of a packet, including by identifying the "outermost header" of the packet. At the time the Implicit Patents were filed, using pointers was the common way that operating systems determined the format of the packet to process it up the protocol stack. One of ordinary skill in the art would thus have understood that the claims of the Implicit Patents encompassed using pointers to determine the format of a packet at each layer

in the protocol stack. *See, e.g.*, Appx2487–2488 (showing Decasper prior art reference, in which "the outermost header is always IP," defined the packet header with a pointer to the IP header (`*ip`), reflected in the C programming language `struct ipv6 *ip` source code).[4] Nothing in the intrinsic record excludes from the scope of the Implicit Patents using a pointer to determine the format of packet.

The Implicit Patents are consistent with this established knowledge. The Patents disclose a single-copy embodiment that uses references to process packets up and down the protocol stack. In this embodiment "a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine." Appx67 ('683 Patent, at 14:10–11). Thus, a reference to the packet—and not a copy of the packet—is passed into the routine. This is consistent with the knowledge a skilled artisan using C-based programming languages would have understood at the time. *See, e.g.*, Appx2488 (showing C source code for `struct mbuf *packet`, which passes into the routine a pointer to the packet (`*packet`)).

---

[4] Programming languages like C make heavy use of pointers, and network devices written in C-based languages use pointers to traverse the network stack (such as Decasper). Decasper is based on FreeBSD, which like Linux and other systems, uses pointers to access packet headers from a data structure via pointers to process packets up the protocol stack. *See, e.g.*, http://www.skbuff.net/images/skbuff.png (depicting `sk_buff()` Linux packet structure accessed via pointers); http://www.skbuff.net/skbbasic.html (showing Linux packet processing based on incrementing and decrementing pointers to "push" and "pull" headers to traverse the protocol stack).

With access to the packet through a reference, the conversion routines can "can advance the reference past the header information for the protocol so that the reference is positioned at the next header." Appx67 ('683 Patent, at 14:12–14). For example, the first conversion routine (*e.g.*, the Ethernet routine) can place the reference to the Ethernet header, shown in (1) below.




Appx880

The routine can then advance that reference to the IP header, which is at point (2) in the example above. The conversion routine will have converted the packet from an Ethernet format to an IP format per this embodiment. Those of skill in the art would also understand that the outermost header, defined by the pointer, will now be the outermost header of the packet at this stage in these routines. *See, e.g.*, Appx2487–2488 (showing `*ip` pointer in source code).

The next conversion routine (*e.g.*, the IP routine) can then advance the reference to the TCP header, which is at point (3) in the example above. The conversion routine will have converted the packet from an IP format to a TCP

format. Those of skill in the art would also understand that the outermost header, defined by the pointer, will now be TCP.

The Patents teach that this process can perform the "demux process"—which is the processing and conversion required to separate one message (*e.g.*, a Gmail email) from another message (*e.g.*, an Instagram image). Appx67 ('683 Patent, at 14:14–16). After this process, the software can reset the reference to "point to the first header for processing by the conversion routines in sequence." Appx67 ('683 Patent, at 14:14–16). Those of skill in the art would have understood that this disclosure shows that the claims encompass using references to "execute" and "convert" up the protocol stack.

The District Court excluded this disclosure from the scope of the claims because it "relates to an operation that 'may perform no conversion of the message.'" Appx27 (quoting Appx67 ('683 Patent, at 14:4–16)). But the full passage shows that this finding was not correct (Appx67 ('683 Patent, at 14:4–16)):

> Modification within the spirit of the invention will be apparent to those skilled in the art. ***For example, a conversion routine may be used for routing a message and may perform no conversion of the message. Also, a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine***. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence.

There is no evidence that the single-copy embodiment relates to "routing a message" at all—let alone ***only*** relating to routing a reference and not format conversion. And the conversion routines are also the ***only*** routines in the Patent that perform conversion, even if they do not perform conversion in certain instances.

The disclosure also shows that the advancing of the reference is part of the "demux process"—which is the claimed invention to demultiplex one message from another. The Patent also states that the software can reset the references to the "first header for processing by the conversion routines in sequence." Appx67 ('683 Patent, at 14:6–16). This teaches that the single-copy embodiment operates for ***both*** the "demux" process and any subsequent "processing by the conversion routines in sequence." *Id.* There is otherwise be no reason to reset the reference "to point to the first header" for the conversion process. *Id.*

The District Court also erred when it found that this embodiment fell outside the scope of the claims based on Implicit's statements in the file history that "the format of a packet is determined by its outermost header." Appx27, Appx25–27 (reproducing statements). The prosecution history actually supports Implicit's position that the claims do not exclude the ability to advance references—with the "outermost header" language or not.

In a reexamination of a patent related to the Implicit Patents, U.S. Patent No. 7,711,8507, Dr. Ng (Implicit's expert) submitted a declaration related to a reference

known as Decasper. Appx811. Decasper disclosed software functionality for a router. *Id.* In Dr. Ng's declaration describing Decasper, he explained that "the outermost header is always IP" in Decasper. *Id.*; *see also* Appx2487–2488. Implicit made similar statements regarding Decasper. Appx25–27.

None of these statements demonstrate a clear intent to exclude from the scope of the claims the Patents' disclosure of advancing a reference to convert a packet from one format to another. They do not demonstrate a clear intent to exclude advancing a reference from identifying the "outermost header" of a packet. They do not limit the claims, as Sandvine asserted, to "removing an outermost header" to process up the protocol stack—a concept that the *Palo Alto Networks* Court found does not appear anywhere in the written description. Appx559 ("[T]he specification does not appear to include any relevant usage of 'removing' outside of the claims.").

The actual Decasper source code also shows that Dr. Ng's (and Implicit's) statements are consistent with the single-copy embodiment disclosure. The source code shows that the "outermost header" that Dr. Ng (and Implicit) referred to was defined by a pointer to the IP header. The code creates a pointer (`*ip`) to the IP header structure, exemplified by the declaration below for IPv6 traffic:

```
struct ipv6 *ip;
```

Appx2488

This code shows that the "outermost header"—here the IP header—may be determined by a pointer to a header within the packet.

All of this evidence shows that those skilled in the art understood that a reference pointer may—and oftentimes does—determine the format of a packet as a routine processes that packet. The Implicit Patents focus on the processing that occurs within the software routine: "a ***routine*** that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format." Appx68 ('683 Patent, at claim 1) (emphasis added). The question per the claims is what is the role of the relevant headers in the TCP processing routines. *See* Appx2120–2121. It is not what is the "outermost header" of a drawing of a "packet." The evidence shows that the claimed "convert" limitations, which reflect converting a packet from one format (*e.g.*, TCP) to another format (*e.g.*, an application format), are met using pointers to travel up and down the protocol stack for a message. The Implicit Patents do not exclude this common, basic network-processing functionality—in fact, they expressly include it.

The District Court's restrictions are unrelated to the inventions of the Implicit Patents. The Implicit Patents provide a path-based architecture that can inspect and demultiplex traffic at the application level—regardless of how the source code describes how the system converts from one layer to another (*e.g.*, from TCP to an application layer). It was well understood in the art and described in Implicit's

Patents that one way to get to the TCP and application layers is to use pointers, including advancing a reference from one header to the next as a reference to the message is passed from one conversion routine to the next. Appx67 ('683 Patent, at 14:10–14). Another way is to copy or move the packet data from one structure to another as the packet is processed up the protocol stack. The claims cover at least each of these. And how the software gets to the TCP and application layers is a source-code implementation detail; it is not a claim limitation. The District Court's construction was thus in error.

### C. The Court's Erroneous Construction Was Twisted Into a Baseless "Outermost Header" Defense

The District Court's erroneous construction was not innocuous. Sandvine twisted the construction into a baseless "outermost header" defense. Sandvine interpreted the "outermost header" limitations as "the furthest one out" on a drawn "packet," as its counsel asserted in the *NetScout* trial (Appx2437 (truncated), Appx3021 (emphasis added)):




> Let me show you an actual packet here. Okay. We've got payload on the right-hand side, we've got headers on the left-hand side. TCP header, IP header, ethernet header.

> Which of these is the outermost? Slightly rhetorical, but this is going to be something you get to answer on Friday, ***which is the outermost. Not hard. It's ethernet, it's the furthest one out. This is an ethernet packet***.

The District Court's "outermost header" construction allowed for this baseless defense, which ignored the actual TCP processing routines and the role of the TCP header in those routines (versus lower-level headers, such as Ethernet). This interpretation of the "outermost header" language has nothing to do with the Implicit Patents or their underlying technology. And in denying Sandvine's summary judgment motion on this issue, the Court actually recognized that the focus of the claims is the role of the various headers at each protocol layer: "[T]here is a live factual dispute as to how these products function, ***what's the role of the ethernet header, if any, when the TCP header is being processed***." Appx2120 (emphasis added). A plain-and-ordinary meaning construction would have encompassed that concept and foreclosed the jury from considering this improper claim-construction defense. *See O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."). The Court should remove "the "outermost header" concept from the construction based on its ability to mislead the fact finder.

### D. The District Court Improperly Limited This Claim When It Was Undisputed That the Intrinsic Record Lacked Lexicography or Disclaimer

Lastly, the District Court reached this construction through a fundamental

legal error. The Court elevated statements from the reexamination file history of different (but related patents) over the Implicit Patent claims and the written description. Critically, the Court did not find—and Sandvine did not argue at claim construction—that Implicit disclaimed any subject matter. Appx23–28. Disclaimer is a high bar, and the District Court did not find it in this case. *See, e.g.*, *Thorner v. Sony Comp. Ent't Am., LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012) ("To constitute disclaimer, there must be a clear and unmistakable disclaimer.").

The District Court instead started with the file history to divine the plain-and-ordinary meaning of the "execute," "convert," and "format" terms—instead of starting with the plain claim language and the written description. The Court then held that the contrary evidence in the claims and written description could not overrule the file history. That included the contrary disclosure in the claims and the single-copy embodiment in the written description. This approach erroneously read the single-copy embodiment out of the Patent.

The Court's approach turned *Phillips* on its head. Before relying on the file history, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The written description also plays a larger role: "it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996)). The prosecution history is "less useful for claim construction purposes"

than the written description. *Id.* at 1317. That is especially the case when relying on the reexamination history of ***other*** patents in a patent family to limit the claims.

In the absence of a clear and unmistakable disclaimer, the file history cannot overrule what the claims and specification show encompasses the plain-and-ordinary meaning of the claim terms. *See GE Lighting Sol'ns, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The District Court elevated the prosecution history over what the claims and specification show falls within the ordinary meaning of these terms. Implicit respectfully requests that this Court reverse the District Court's constructions, vacate the judgment of noninfringement, and remand this case.

### E. Under the Correct Constructions, There is At Least an Issue for Trial

Under Implicit's proposed constructions for these sets of claim terms, it is undisputed that there at least an issue for trial in this case. Implicit proposes the following constructions for the "execute" and "convert" terms:

| **Claim Term** | **Implicit's Construction** |
|---|---|
| "convert one or more packets having a TCP format into a different format" | Plain and ordinary meaning. No construction necessary. |
| "convert one of the packets of the message into a different format" | Plain and ordinary meaning. No construction necessary. |
| "convert one of the packets of the message into a different format" | Plain and ordinary meaning. No construction necessary. |

| | |
|---|---|
| "convert one or more packets in a transport layer format into a different format" | Plain and ordinary meaning. No construction necessary. |
| "convert one of the packets of the message into a different format" | Plain and ordinary meaning. No construction necessary. |
| "convert packets of the different format into another format" | Plain and ordinary meaning. No construction necessary. |
| "execute a Transmission Control Protocol (TCP)" | Plain and ordinary meaning. No construction necessary. |
| "executable to perform a Transmission Control Protocol (TCP)" | Plain and ordinary meaning. No construction necessary. |
| "execute a second, different protocol" | Plain and ordinary meaning. No construction necessary. |
| "execute a third, different protocol" | Plain and ordinary meaning. No construction necessary. |
| "execute a Transmission Control Protocol (TCP) to process packets having a TCP format" | Plain and ordinary meaning. No construction necessary. |
| "execute TCP to process at least one of the subsequent packets having a TCP format" | Plain and ordinary meaning. No construction necessary. |
| "execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol" | Plain and ordinary meaning. No construction necessary. |

Sandvine's products, as described above, use pointers to process packets at various layers in the protocol stack, including the transport layer (*e.g.*, TCP) and application layers (*e.g.*, HTTP or Facebook). *See* Appx1111, Appx2111–2114, Appx1248–1257 (PTS), Appx1280–1284 (PacketLogic), Appx1296–1299 (NAVL), *see also* Appx1154–1156 (discussing pointers in C programming language). For that reason, Implicit respectfully requests that the Court reverse the District Court's

constructions, vacate the judgment of noninfringement, and remand.

## CONCLUSION

Implicit respectfully requests that the Court provide the relief requested above, including reversing the District Court's judgment, overruling the District Court's claim constructions, entering Implicit's proposed constructions, and remanding this case for further proceedings.

Dated: May 18, 2020

Respectfully submitted,

By: /s/Christian John Hurt
Christian John Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
**The Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Appellant***
***Implicit, LLC***

# ADDENDUM

Case: 20-1362 Document: 17 Page: 53 Filed: 05/18/2020

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:18-CV-53-JRG |
| | § | |
| NETSCOUT SYSTEMS, INC., et al. | § | |
| | § | |

**CLAIM CONSTRUCTION**
**MEMORANDUM AND ORDER**

Before the Court is the Opening Claim Construction Brief (Dkt. No. 89) filed by Plaintiff Implicit, LLC ("Plaintiff" or "Implicit"). Also before the Court are Defendants NetScout Systems, Inc. and Sandvine Corp.'s ("Defendants'") Responsive Claim Construction Brief (Dkt. No. 93) and Plaintiff's reply (Dkt. No. 96).

The Court held a claim construction hearing on April 11, 2019.

Table of Contents

**I. BACKGROUND** ........ **2**
**II. LEGAL PRINCIPLES** ........ **3**
**III. AGREED TERMS** ........ **7**
**IV. DISPUTED TERMS** ........ **8**
A. "sequence of [two or more] routines" ........ 8
B. "list of conversion routines" ........ 14
C. "state information" ........ 15
D. "process subsequent packets in the message using the sequence of routines indicated in the stored path" and Related Terms ........ 19
E. "the packet of the message" ........ 20
F. "convert one or more packets having a TCP format into a different format" and Related Terms ........ 23
G. "execute a Transmission Control Protocol (TCP)" and Related Terms ........ 29
**V. CONCLUSION** ........ **36**

Case: 20-1362 Document: 17 Page: 54 Filed: 05/18/2020

## I. BACKGROUND

Plaintiff has alleged infringement of United States Patents No. 8,694,683 ("the '683 Patent"), 9,270,790 ("the '790 Patent"), and 9,591,104 ("the '104 Patent") (collectively referred to as "the patents-in-suit," "the Balassanian Patents," or "the Demulitplexing Patents"). (*See* Dkt. No. 89, Exs. 1–3.) Plaintiff submits that the patents-in-suit relate to computer networking. (*See* Dkt. No. 89, at 1–2.)

The '683 Patent, for example, titled "Method and System for Data Demultiplexing," issued on April 8, 2014, and bears an earliest priority date of December 29, 1999. The '790 Patent is a continuation of the '683 Patent. The '104 Patent, in turn, is a continuation of the '790 Patent. These patents therefore share a common specification. The Abstract of the '683 Patent states:

> A method and system for demultiplexing packets of a message is provided. The demultiplexing system receives packets of a message, identifies a sequence of message handlers for processing the message, identifies state information associated with the message for each message handler, and invokes the message handlers passing the message and the associated state information. The system identifies the message handlers based on the initial data type of the message and a target data type. The identified message handlers effect the conversion of the data to the target data type through various intermediate data types.

The Court previously construed terms in the '683 Patent, the '790 Patent, and the '740 Patent in *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80, Dkt. No. 115, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017) (Gilstrap, J.) ("*Trend Micro*") and in *Implicit, LLC v. Huawei Technologies USA, Inc., et al.*, 6:17-CV-182, 2018 WL 1169137 (E.D. Tex. Mar. 6, 2018) (Gilstrap, J.) ("*Huawei*," sometimes referred to as "*PAN*," which is an acronym for Palo Alto Networks, Inc., the only remaining defendant in the *Huawei* case at the time of the claim construction hearing).

The ’683 Patent has also been the subject of claim construction in the Northern District of California in *Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:14-CV-2856, Dkt. No. 57, 2015 WL 2194627 (N.D. Cal. May 6, 2015) (Illston, J.) (“*F5 Networks II*”). Further, the Northern District of California construed terms in an ancestor patent, United States Patent No. 6,629,163 (“the ’163 Patent”),[1] in *Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:10-CV-3365, Dkt. No. 93, 2012 WL 669861 (N.D. Cal. Feb. 29, 2012) (Illston, J.) (“*F5 Networks I*”). Defendants also submit that the ’163 Patent was the subject of *ex parte* Reexamination No. 90/010,356 (“’163 *ex parte* Reexam”) and *inter partes* Reexamination No. 95/000,659 (“’163 *inter partes* Reexam”).

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties’ arguments and facilitating discussion. Those preliminary constructions are noted below within the discussion for each term.

## II. LEGAL PRINCIPLES

It is understood that “[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention.” *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff’d*, 517 U.S. 370 (1996).

“In some cases, however, the district court will need to look beyond the patent’s intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period.” *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). “In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that

[1] The patents-in-suit all resulted from continuations of the ’163 Patent.

extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In

particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314–17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim

Case: 20-1362 Document: 17 Page: 58 Filed: 05/18/2020

> language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323–25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

In general, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (Davis, J.); *see TQP Development, LLC v. Intuit Inc.*, No. 2:12-CV-180, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J.) ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so."); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839–40 (2015) ("prior cases will sometimes be binding because of issue preclusion and sometimes will serve as persuasive authority") (citation omitted); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (noting "the importance of uniformity in the treatment of a given patent") (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996)).

## III. AGREED TERMS

The parties have submitted the following agreed-upon construction (Dkt. No. 85, at p. 2 of 5; Dkt. No. 89, at 4), which the Court adopts:

| Term | Construction |
|---|---|
| "message" | "a collection of data that is related in some way, such as a stream of video or audio data or an email message" |

## IV. DISPUTED TERMS

### A. "sequence of [two or more] routines"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of a message"[2] | "an ordered arrangement of two or more software routines that was not selected (or found or picked) from a finite set of possible arrangements which were created before receiving a first packet of the message" |

(Dkt. No. 85, Ex. B, at p. 2 of 35; Dkt. No. 89, at 5; Dkt. No. 93, at 1; Dkt. No. 103, Ex. A, at 1.) The parties submit that this term appears in Claims 1, 4, 5, 8, 9, and 24 of the '683 Patent, Claims 1, 3, 4, 5, 8, 10, 12, 15, 17, and 18 of the '790 Patent, and Claims 1, 3, 5, 10, 12, 13, and 16 of the '104 Patent. (Dkt. No. 103, Ex. A, at 1–10.)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary construction: "an ordered arrangement of [two or more] software routines that was not configured before receiving a first packet of a message."

(1) The Parties' Positions

Plaintiff submits that the proper construction for this term has been thoroughly addressed in prior litigation and, moreover, "NetScout and Sandvine seek to limit the claims to an impossibility." (Dkt. No. 89, at 5.)

[2] Plaintiff previously proposed: "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of *the* message." (Dkt. No. 85, Ex. A, at 1.)

Defendants respond that "[t]his term is limited in scope by a disclaimer in the prosecution history." (Dkt. No. 93, at 1.) Defendants argue that "Implicit's interpretation of the *F5* [*Networks*] *II* construction seeks to recapture the same claim scope it clearly and unambiguously disclaimed – i.e., selecting from pre-configured paths – and should not be adopted." (*Id.*, at 5.) Defendants also submit that "Defendants are amenable to removing the word 'possible' from [their] proposal to remove any redundancy." (*Id.*, at 10.)[3]

Plaintiff replies that "[f]our prior courts have limited the . . . disclaimer to only the single embodiment that stored pre-configured sequences of routines." (Dkt. No. 96, at 1.) Plaintiff also submits that "Implicit perceives no meaningful distinction between Defendants' use of the word 'selected' and the Court's use of the phrase 'identified (i.e., configured).'" (*Id.*, at 2.) Plaintiff argues that "Defendants have cobbled together a construction that lacks clarity, results in impossible scenarios, and is internally inconsistent." (*Id.*, at 3.)

At the April 11, 2019 hearing, Defendants expressed concern that the word "configured" in the Court's preliminary construction might be misinterpreted as allowing for identifying pre-existing paths. Plaintiff responded that the word "configured" is sufficiently clear, and Plaintiff argued that Defendants' concerns relate to questions of fact regarding infringement rather than any legal question for claim construction.

<u>(2) Analysis</u>

The Background section of the specification provides context by stating: "A computer system in certain situations . . . can be expected to receive data and to provide data in many

---

[3] Defendants have also cited Rule 30(b)(6) testimony by one of the named inventors (*see* Dkt. No. 93, Ex. 11, June 5, 2018 Balassanian dep. at 71:13–23, 72:12–73:10 & 74:6–77:5; *see also id.* at 47:13–48:18, 72:8–25 & 94:15–18), but this testimony does not significantly affect the Court's analysis in these claim construction proceedings. *Cf. Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346–47 (Fed. Cir. 2008) (noting that inventor testimony is "limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application").

different formats that may not be known until the data is received. The overhead of statically providing each possible series of conversion routines is very high." '683 Patent at 1:54–59. Claim 1 of the '683 Patent, for example, recites (emphasis added):

> 1. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
> a processing unit; and
> a memory storing instructions executable by the processing unit to:
> create, based on an identification of information in a received packet of a message, a path that includes one or more data structures that indicate a *sequence of routines* for processing packets in the message;
> store the created path; and
> process subsequent packets in the message using the *sequence of routines* indicated in the stored path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.

In *F5 Networks II*, the Northern District of California construed "sequence of routines" to mean a "sequence of software routines that was not identified (i.e., configured) prior to receiving a first packet of the message." *F5 Networks II* at 17–24.

In *Trend Micro*, the Court construed "sequence of routines" to mean "an ordered arrangement of software routines that was not identified (i.e., configured) prior to receiving a first packet of the message" and similarly construed "sequence of two or more routines" to mean "an ordered arrangement of two or more software routines that was not identified (i.e., configured) prior to receiving a first packet of the message." *Trend Micro* at 13–20.

In *Huawei*, the parties there agreed that "sequence of [two or more] routines" means "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of the message." *Huawei* at 8.

Those prior constructions focused on the patentee's statements regarding the "Mosberger" reference during reexamination of the '163 Patent.[4] The parties here agree that the patentee's statements amount to a disclaimer, but the parties dispute how that disclaimer should be given effect in the Court's construction.

In particular, the parties dispute the meaning of the phrase "identified (i.e., configured)" in the prior constructions. When distinguishing Mosberger, the patentee argued:

> The following discussion of Mosberger will assist the Examiner in understanding the patentable distinctions, including those distinctions that arise because the Mosberger system configures paths (formed from a sequence of components) *before* receiving the "first packet of the message." As shown below, the quoted claim language is directed to a much different system that configures paths at run-time (*i.e., after* the first packet is received).
>
> * * *
>
> Because Mosberger teaches to configure paths that define the sequence of software modules used to process particular types of data prior to "build-time," the only decision made at runtime is the determination of which pre-configured path should begin processing the incoming data. Once the path is chosen, it is instantiated (what Mosberger refers to as "path creation"). The process of recognizing which preconfigured paths to use is illustrated in Figure 3.6 of Mosberger, reproduced below.
>
> 
> 
>
> As seen in Figure 3.6 above (cited by the Examiner), there are a number of pathways (p1-p5) for the data to travel, but the selection of modules for each path is configured before receipt of the message packets. The beginning point for the

[4] *F5 Networks I* and *F5 Networks II* identified the "Mosberger" reference as: "David Mosberger, 'Scout: A Path-Based Operating System,' Doctoral Dissertation Submitted to the University of Arizona." *F5 Networks I* at 3; *F5 Networks II* at 3.

> paths in this example is with the Ethernet module ("ETH"). The ETH module "employs a classifier to decide whether a packet should be processed using path p1, p2, or p3." (Mosberger, page 87). The only variation in Mosberger is which path through the predefined sequence will be taken. In this example, the ETH module selects the initial pathway (*i.e.*, pathway p1, p2, or p3) based on the protocol header in the first packet of the message. (Mosberger, pages 88-89). If the protocol header is completely intact and suggests that the packet is UDP, then the packet classification process will result in the selection of pre-configured path 1. If, however, the packet has been fragmented by IP and does not include higher level headers, then the classification process will result in selection of pre-configured path 2. (Mosberger, page 87). At that point, after the packet has been reassembled, the IP module's packet classifier will determine whether the packet is a UDP or TCP packet and route the packet accordingly (*i.e.*, down preconfigured path 4 or pre-configured path 5). (Mosberger, page 87). Importantly, however, those sequences of IP-UDP via pathway p4 and IP-TCP via pathway p5 have also been identified prior to run-time. In other words, the p2/p4 path and the p2/p5 path are pre-configured at build time. Again, the only question resolved at run time is which preconfigured path – with predetermined sequences of modules – should be selected.
>
> * * *
>
> As one skilled in the art will appreciate, the [Mosberger] pseudo-code shows that the possible list of software modules is already predetermined for the example module [i.e., software routine] and that the only choice for the example module is to select from amongst several possible pre-defined paths. Thus, dynamic routing, as described in the context of the 'paths' in Mosberger, is essentially a series of 'If...Then...' computer instructions coded into the modules at build time that control the selection of the predefined paths through a series of predefined software modules that a developer has arranged in a module graph in such a way as to ensure their interface compatibility.

(Dkt. No. 93, Ex. 12, Sept. 1, 2009 Amendment and Response to Office Action Mailed July 7, 2009, at 11 & 14–15; *see id.* at 20 ("During operation (*i.e.*, at 'run time'), Mosberger simply recognizes which of the predefined pathways will be used to process the data packets") & 28 ("a routing decision in Mosberger is merely a selection between multiple predefined pathways").)

In a subsequent Interview Summary, the patentee stated:

> By selecting the sequence of components that form the path at build-time (*i.e.*, before receiving a packet), Mosberger does exactly the opposite of what is claimed, namely, affirmatively selecting the sequence of components after receiving a packet. This is the difference between a dynamic system (the '163 invention) and

a static, inflexible system (Mosberger) that merely selects – at run-time – previously created paths. In response to a question by Examiner Ferris, Implict's counsel pointed out that Mosberger's selection of pre-configured paths after receiving a packet is not covered by the claims because, by definition, Mosberger has already identified the sequence of components at that point, and therefore, does not perform the claimed "identifying" after receiving the packet.

(*Id.*, Ex. 14, Oct. 23, 2009 Interview Summary, at 3.)

The patentee later similarly stated:

Importantly, this set of paths is finite; Mosberger does not teach to create new paths after initialization. Further, this set of paths is created before any message/packet is received.

* * *

Thus, paths in Mosberger are not dynamically created based on the receipt of a message. Rather, Mosberger teaches that when a message is received, a path is selected (or "found") from a set of possible paths, which were created and predefined before the message was even received.

(*Id.*, Ex. 15, Feb. 8, 2019 Amendment, at 16 (citations omitted).)

During prosecution of the '683 Patent, the patentee likewise stated:

[T]his set of paths is finite; Mosberger does not teach creation of new paths after initialization.

* * *

. . . Mosberger teaches that when a message is received, a path is selected (or "found" or "picked") from a set of possible paths, which were created *before* the message was received.

(*Id.*, Ex. 13, June 6, 2013 Preliminary Amendment, at 11 & 12.)

The parties essentially agree as to the substantive effect of the patentee's statements regarding Mosberger. The patentee did not disclaim the *existence* of software routines prior to receiving a first packet of the message. The patentee explained that the claimed invention uses software routine *arrangements* that *were not created prior* to receiving a first packet of the message. The construction of "sequence of [two or more] routines" can be refined to avoid the

potential confusion that might arise from the phrase "identified (i.e., configured)" and to more clearly reflect the patentee's statements regarding Mosberger. Although the specification frequently uses the words "identify," "identifies," and "identified,"[5] using the word "created" will more clearly reflect the patentee's statements regarding Mosberger and will be more readily understandable in the context of the claims.

The Court therefore hereby construes **"sequence of [two or more] routines"** to mean **"an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message."**

**B. "list of conversion routines"**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| "an ordered arrangement of software routines for changing the form of data and that was not identified (i.e., configured) prior to receiving a first packet of a message"[6] | "an ordered arrangement of two or more software conversion routines that was not selected (or found or picked) from a finite set of possible arrangements which were created before receiving a first packet of the message" |

(Dkt. No. 85, Ex. B, at p. 2 of 35; Dkt. No. 89, at 8; Dkt. No. 103, Ex. A, at 10.) The parties submit that this term appears in Claim 10 of the '683 Patent. (*Id.*)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary construction: "an ordered arrangement of software routines that is for changing the form of data and that was not configured before receiving a first packet of the message."

[5] *See, e.g.,* '683 Patent at 4:15–17 ("The demux routine may in tu[rn] invoke the label map get routine 104 to *identify* a sequence of conversion routines for processing the packet.") (emphasis added); *id.* at 8:38–44 ("The routine loops identifying the next binding (edge and protocol) that is to process the message and 'nailing' the binding to a session for the message, if not already nailed."); *id.* at 10:42–51 ("If there is no next binding, then the routine invokes the routine label map get to identify the list of edges ('trails') that will map the output label to the target label.").

[6] Plaintiff previously proposed: "an ordered arrangement of software routines for changing the form of data that was not identified (i.e., configured) prior to receiving a first packet of *the* message." (Dkt. No. 85, Ex. A, at 1.)

(1) The Parties' Positions

Plaintiff states that it "is willing to agree to the NetScout/Sandvine language 'software conversion routines.'" (Dkt. No. 89, at 8.) Plaintiff submits that the other disputes regarding this term will be resolved by construction of the "sequence of [two or more] routines" term addressed above. (*Id.*)

Defendants respond as to this term together with the term "sequence of [two or more] routines" (addressed above). (*See* Dkt. No. 93, at 1–11.)

(2) Analysis

The parties have presented substantially the same dispute for the term "list of conversion routines" as for the term "sequence of [two or more] routines," which is addressed above.

The Court therefore hereby construes **"list of conversion routines"** to mean **"an ordered arrangement of software conversion routines that was not selected from a set of arrangements created before receiving a first packet of the message."**

**C. "state information"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "information specific to a software routine for a specific message that is not information related to an overall path"[7] | "information specific to a software routine for a specific message *that is maintained for all packets of the message and* that is not information related to an overall path" |

(Dkt. No. 85, Ex. A, at 3; *id.*, Ex. B, at p. 33 of 35; Dkt. No. 93, at 23 (emphasis Defendants'); Dkt. No. 103, Ex. A, at 11.) The parties submit that this term appears in Claim 5 of the '683 Patent and Claims 1, 10, and 16 of the '104 Patent. (*Id.*, at 11–14.)

[7] Plaintiff previously proposed: "Plain and ordinary meaning. No construction necessary." (Dkt. No. 85, Ex. A, at 3.)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary construction: "information specific to a software routine for a specific message that is not information related to an overall path."

(1) The Parties' Positions

Plaintiff argues that "[n]othing in the language of the claims themselves requires that state information be maintained for all packets of the message," and "the specification does not contain a definitional statement or clear intent to limit 'state information' to information maintained for all packets of the message." (Dkt. No. 89, at 9.) Further, Plaintiff argues that "[t]he prosecution history and extrinsic evidence identified by Defendants for their construction likewise fail to provide the clear and unmistakable support necessary to limit the claims as they suggest." (*Id.*, at 10.)

Defendants respond that "the Court was not presented with Implicit's clear and unequivocal disclaimers from the '163 *inter partes* Reexam in [the *Huawei*] case." (Dkt. No. 93, at 23.)

Plaintiff replies that "none of the citations Defendants proffer as evidence of a 'clear and unequivocal' disclaimer expressly address whether state information must be maintained for all packets of the message." (Dkt. No. 96, at 4.)

(2) Analysis

Plaintiff proposes the construction that the Court reached in *Huawei*, which is the same as the construction reached in *F5 Networks I*. *See Huawei* at 16–23; *see also F5 Networks I* at 13–14.

Claim 1 of the '104 Patent, for example, recites (emphasis added):

1. An apparatus, comprising:
   a processing unit; and

a memory storing instructions executable by the processing unit to:
receive one or more packets of a message;
determine a key value using information in the one or more packets;
identify, using the key value, a sequence of two or more routines, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format;
create a path that includes one or more data structures that indicate the identified sequence of two or more routines, wherein the path is usable to store *state information* associated with the message; and
process subsequent packets in the message using the sequence of two or more routines indicated in the path.

The specification discloses:

> [S]ince the conversion routines may need to retain *state information* between the receipt of one packet of a message and the next packet of that message, the conversion system maintains *state information* as an instance or session of the conversion routine. The conversion system routes *all packets* for a message through the same session of each conversion routine so that the same state or instance information can be used by *all packets* of the message.

’683 Patent at 3:1–9 (emphasis added).

Likewise, during reexamination of the ’163 Patent, the patentee cited similar disclosure in the ’163 Patent and stated that “the specification is abundantly clear that *all packets* are required to form a message.” (Dkt. No. 93, Ex. 20, Comments to ACP, at 18.) Further, again citing this disclosure, the patentee submitted that “state information is essential for a message-centric system that depends on state information being available for the processing of each packet in the message.” (*Id.*, at 13–14.) The patentee also explained that “[a] message-based technology fundamentally differs from a packet-based technology in that it is concerned with not just the processing of individual packets, but with the processing of a message as a whole, i.e., processing *all the packets of the message*.” (*Id.*, at 2 (emphasis modified); *see id.*, at 10–11 (“using state information across

Case: 20-1362 Document: 17 Page: 70 Filed: 05/18/2020

the packets of a message") (emphasis omitted); *see also id.*, at 11, 13–14 (contrasting "hard state" with "soft state"), 26–28 & 38–39.)

Defendants have not shown that handling all packets of a particular message necessarily requires maintaining state information "for" all packets of the message, which is what Defendants' proposed construction might be interpreted as requiring. That is, the above-cited evidence can be fairly read as relating to state information for a message but not necessarily state information specific to every packet of the message. (*See, e.g., id.*, at 27 ("use *message-specific* state information for every packet of a message"); *id.*, at 28 ("the '163 claims require *per-message* state that is persistent across the lifetime of an entire message—in other words, state that is collected and maintained for *all packets* of a message") & 38 ("collect, retain and apply state information from packet-to-packet for the entire message").) To whatever extent the specification can be read as disclosing such a feature, this disclosure relates to "one embodiment" and should not be imported into the claims. *See* '683 Patent at 3:7–9; *see also id.* at 2:45 ("in one embodiment").[8]

At the April 11, 2019 hearing, Defendants urged that state information must be maintained in the sense that it cannot be "flushed" until all packets of a message have been processed. In addition to the above-cited evidence, Defendants emphasized the patentee's statements, during reexamination of the '163 Patent, regarding "hard state" and "soft state." Defendants argued that the patentee disclaimed "soft state" and explained that the claimed invention is limited to "hard state":

> The message-specific claim limitations also highlight the *type* of state that the '163 Patent technology uses: *hard state*. Hard state is required for correct function and cannot be flushed randomly without regard to the processing of the entire message.

[8] Defendants have also cited Plaintiff's claim construction arguments in *F5 Networks I*. (*See, e.g.,* Dkt. No. 93, Ex. 25, at 10 ("In flow-based processing, a 'session' is created to ensure that all packets of a flow are treated similarly.").) Even assuming that these statements are probative, Defendants have not shown that these statements are binding on Plaintiff in the present case. Defendants' reliance on these statements is unpersuasive.

In other words, it is inextricably intertwined with the message and must be maintained for the duration of the entire message. If it is discarded before the entire message is processed, all mid-message processing would fall apart, and the system would be useless. In contrast, IP routers do not use this kind of hard state, since hard state is tied to the processing of entire messages and routers are not guaranteed to see all packets of entire messages. In short, because routers do not process entire messages, they also cannot use the hard state that is used to process entire messages. Instead, routers use soft state-state that can be discarded, regenerated or replaced as needed, as further explained below.

(Dkt. No. 93, Ex. 20, Comments to ACP, at 11.)

The patentee thus distinguished routers, which can "discard[], regenerate[] or replace[]" the state because routers do not necessarily operate on entire messages. The patentee's statements in this regard are consistent with disclosure in the specification of the patents-in-suit that "the same state or instance information *can be used* by *all* packets of the message." '683 Patent at 3:1–9 (emphasis added).

The Court therefore hereby construes **"state information"** to mean **"information that is specific to a software routine for a specific message, that can be used for all packets of the message, and that is not information related to an overall path."**

**D. "process subsequent packets in the message using the sequence of routines indicated in the stored path" and Related Terms**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "apply[ing] one or more routines to a packet, where at least one such routine is a conversion routine" | These claim phrases do not include a system that avoids applying the same processing steps to subsequent packets of a message. |

(Dkt. No. 85, Ex. A, at 4; *id.*, Ex. B, at pp. 31–32 of 35; Dkt. No. 93, at 26; Dkt. No. 103, Ex. A, at 15–16.) The parties submit that these terms appear in Claims 1, 10, and 24 of the '683 Patent, Claims 1, 8, and 15 of the '790 Patent, and Claims 1, 10, and 16 of the '104 Patent. (*Id.*, at 15–23.)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary construction: "process/processing . . . packets" means "apply/applying one or more routines to a packet, where at least one such routine is a conversion routine."

At the April 11, 2019 hearing, the parties reached agreement that these terms should be given their plain meaning.

The Court therefore hereby construes "process subsequent packets in the message using the sequence of routines indicated in the stored path" ('683 Patent, Claim 1), "process subsequent packets of the message using sessions specified in the created path" ('683 Patent, Claim 10), "process subsequent packets of the message using the sequence of routines referenced by the one or more data structures" ('683 Patent, Claim 24), "process the one or more received packets using the sequence of routines indicated in the identified path" ('790 Patent, Claims 1, 15), "process the one or more received packets using the identified sequence of routines" ('790 Patent, Claim 8), "process subsequent packets in the message using the sequence of two or more routines indicated in the path" ('104 Patent, Claim 1), "process subsequent packets in the message using the identified sequence of two or more routines" ('104 Patent, Claim 10), and "processing . . . subsequent packets in the message using the particular sequence" ('104 Patent, Claim 16) to have their **plain meaning**.

**E. "the packet of the message"**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| Plain and ordinary meaning. No construction necessary.<br><br>Alternatively, should the Court decide that this term should be construed:<br>"the one or more received packets of the message used to create a path" | "the received packet of the message that was used to create the path" |

(Dkt. No. 85, Ex. A, at 5; *id.*, Ex. B, at p. 33 of 35; Dkt. No. 89, at 15; Dkt. No. 93, at 24–25; Dkt. No. 103, Ex. A, at 14.) The parties submit that this term appears in Claim 9 of the '683 Patent. (*Id.*)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary construction: "the one or more received message packets used to create a path."

(1) The Parties' Positions

Plaintiff "respectfully requests that the Court apply black letter to [*sic*] law to Claims 1 and 9 and hold that 'a received packet of a message' in Claim 1 and the 'the packet of the message' in Claim 9 (whose antecedent basis is Claim 1) includes 'one or more' packets of a message by virtue of Claim 1's use of the article 'a.'" (Dkt. No. 89, at 16.)

Defendants respond that "[f]or there to be a discernable point where 'subsequent packets' begins, there must be a singular packet of the message that was used to create the path." (Dkt. No. 93, at 26.)

Plaintiff replies that "[t]here is no need to limit the packet that creates the path to a *single* packet to know where in the transmission the 'subsequent packets' begin." (Dkt. No. 96, at 6.)

(2) Analysis

Claims 1, 8, and 9 of the '683 Patent recite (emphasis added):

1. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
 a processing unit; and
 a memory storing instructions executable by the processing unit to:
  create, based on an identification of information in *a received packet of a message*, a path that includes one or more data structures that indicate a sequence of routines for processing packets in the message;
  store the created path; and

> process subsequent packets in the message using the sequence of routines indicated in the stored path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.

> 8. The first apparatus of claim 1, wherein the memory stores instructions executable by the processing unit to identify an address associated with the information, wherein the address indicates the routines in the sequence of routines of the created path.

> 9. The first apparatus of claim 8, wherein the memory stores instructions executable by the processing unit to use the address to select the sequence of routines from a plurality of sequences of routines that are stored by the first apparatus prior to *receiving the packet of the message.*

In *Trend Micro,* the Court construed "the packet of the message" to mean "the received packet of the message that was used to create the path." *See Trend Micro* at 24–27.

In the present case, the parties do not dispute the antecedent basis but rather dispute whether "the packet of the message" must be singular, that is, must be one single packet.

"[A]n indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016) (citation and internal quotation marks omitted).

> That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must evince[ ] a clear intent to limit "a" or "an" to "one." The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. An exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008) (citations and internal quotation marks omitted).

On balance, Defendants have failed to demonstrate that the claim language "necessitate[s] a departure from the rule." *Id.* at 1343. For example, Defendants have not persuasively supported their assertion that "[t]he structure of the claims require a singular packet that allows the system to create the 'path' such that 'subsequent packets' are processed using the created 'sequence of routines.'" (Dkt. No. 93, at 26.) Defendants' reliance on the analysis in *Trend Micro*, which did not address this issue, is unavailing. *See Trend Micro* at 26. The Court thus rejects Defendants' argument that "the packet" is limited to a single packet.

The Court therefore hereby construes **"the packet of the message"** to mean **"the one or more received message packets used to create a path."**

**F. "convert one or more packets having a TCP format into a different format" and Related Terms**

| **"convert one or more packets having a TCP format into a different format"** ('683 Patent, Claim 1; '790 Patent, Claims 1, 15)<br><br>**"convert one of the packets of the message into a different format"** ('790 Patent, Claim 8) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "convert the packet(s) outermost header structure from TCP to another type of header structure" |

| **"convert one or more packets in a transport layer format into a different format"** ('683 Patent, Claim 10) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "convert the packet(s) outermost header structure from a transport layer protocol header to another type of header structure" |

| **"convert packets of the different format into another format"**<br>('683 Patent, Claim 2; '790 Patent, Claim 3) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "convert each packet's outermost header structure from the different protocol header into another type of header structure" |

(Dkt. No. 85, Ex. A, at 8–9; *id.*, Ex. B, at p. 20 of 35; Dkt. No. 89, at 16 & n.4; Dkt. No. 93, at 9 & n.11; Dkt. No. 103, Ex. A, at 31–36.)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with the following preliminary constructions: "convert the outermost header structure of the packet(s) from TCP to another type of header structure"; "convert the outermost header structure of the packet(s) from a transport layer protocol header to another type of header structure"; and "convert each packet's outermost header structure from the different protocol header into another type of header structure."

(1) The Parties' Positions

Plaintiff argues that "[t]here is no requirement that the header of interest for a particular packet must be the 'outermost' header of the packet." (Dkt. No. 89, at 17.)

Defendants respond that "the '*format*' of a packet is its outermost header structure." (Dkt. No. 93, at 11.) Defendants have cited disclosures in the specification as well as statements by the patentee during reexamination of the ancestor '163 Patent. (*Id.*, at 11–12.)[9]

[9] Defendants have also cited Rule 30(b)(6) testimony by one of the named inventors (*see* Dkt. No. 93, Ex. 11, June 5, 2018 Balassanian dep. at 58:3–14; *see also id.*, Ex. 22, May 31, 2012 Balassanian dep. at 298:19–22), but this testimony does not significantly affect the Court's analysis in these claim construction proceedings. *Cf. Howmedica*, 540 F.3d at 1346–47 (noting that inventor testimony is "limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application").

Plaintiff replies that "the claims use the terms 'outermost header' and 'format' separately, and if the patentee wanted to limit converting a 'format' to converting the 'outermost header,' he knew how to do so, as in claim 20 [of the '683 Patent]." (Dkt. No. 96, at 8.)

(2) Analysis

Claim 1 of the '683 Patent, for example, recites (emphasis added):

> 1. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
> a processing unit; and
> a memory storing instructions executable by the processing unit to:
> create, based on an identification of information in a received packet of a message, a path that includes one or more data structures that indicate a sequence of routines for processing packets in the message;
> store the created path; and
> process subsequent packets in the message using the sequence of routines indicated in the stored path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to *convert one or more packets having a TCP format into a different format.*

Plaintiff has noted that dependent Claim 20 of the '683 Patent recites "wherein the particular routine is executable to convert packets by removing an outermost header of the packets," but Claim 20 does not depend from any of the claims here at issue. Further, as Defendants have argued, Claim 20 is limited to removing an outermost header, as opposed to perhaps merely modifying an outermost header. Plaintiff's argument as to Claim 24 of the '683 Patent similarly fails. Plaintiff has not shown how Claim 20 or Claim 24 purportedly demonstrates that "format" is necessarily broader than the outermost header.

During *inter partes* reexamination of the '163 Patent, the patentee explained that the format of a packet is defined by its header structure: "Whether a packet is an IP format is determined by the structure of its header." (Dkt. No. 93, Ex. 20, Comments to ACP, at 12.) The patentee

reinforced this principle by asserting that "[t]he format of the IP packet is not changed unless the actual structure of the header itself is changed from that shown in Figure 2 to a different type of header (*e.g.*, a TCP header)." (*Id.*, at 24; *see id.*, at 12 (Fig. 2).) The patents-in-suit resulted from continuations of the '163 Patent, and these statements as to the meaning of "format," which is a term used extensively in the specification that is common to all of these patents, are probative as to the patents-in-suit. *See, e.g., Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1372 (Fed. Cir. 2003).

During *inter partes* reexamination of related United States Patent No. 7,711,857, the patentee submitted an expert declaration opining that "only the structure of the outermost header determines whether the packet is an IPv4 packet or whether it employs some other protocol." (*Id.*, Ex. 21, Ng Decl., at ¶ 6.) The '857 Patent, like the patents-in-suit, resulted from continuations of the '163 Patent, and this statement as to the meaning of "format" is probative as to the patents-in-suit. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349–50 (Fed. Cir. 2004) (considering statements by patentee during prosecution of related patent); *see also SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015).

Also, although Defendants have not shown or asserted that Plaintiff's positions in prior litigation are binding here, it is nonetheless noteworthy that Plaintiff stated in *F5 Networks II* that "[e]ach message packet can include different layers in different data formats" and, for example, "software routines associated with an Ethernet protocol will process the packet first, as the outermost layer of the packet is in an Ethernet format." (Dkt. No. 93, Ex. 18, *F5 Networks II*, Dkt. No. 43, Implicit's Patent Local Rule 4-5 Opening Claim Construction Brief, at 4–5.) Plaintiff thus evidently understood that the relevant "format" of a packet is determined by its outermost header.

Plaintiff has cited disclosure in the specification regarding advancing a reference past a header:

> Although the conversion system has been described in terms of various embodiments, the invention is not limited to these embodiments. Modification within the spirit of the invention will be apparent to those skilled in the art. For example, a conversion routine may be used for routing a message and may perform no conversion of the message. Also, a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence.

'683 Patent at 14:4–16. This disclosure of "advanc[ing] the reference past the header information for the protocol so that the reference is positioned at the next header" suggests that a packet could be handled in a manner that is at least somewhat independent of its outermost header.

Yet, this disclosure relates to an operation that "may perform no conversion of the message." *Id.* Plaintiff has failed to demonstrate that anything in this disclosure is inconsistent with the patentee's understanding, as apparent in the above-discussed evidence, that the format of a packet is determined by its outermost header. To whatever extent Plaintiff contends that the terms "convert one or more packets having a TCP format into a different format," "convert one or more packets in a transport layer format into a different format," and "convert packets of the different format into another format" encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record.

For example, at least some of the prosecution history of the '683 Patent, cited by Defendants, implies that "converting" requires modifying headers:

> Assuming *arguendo* that Decasper's plugins or flows correspond to the "sequence of routines" of claim 26 (which Applicant does not concede), Decasper does not teach or suggest that any of the plugins operates on "packets having a TCP *format*" let alone "*convert*[*ing*]" such packets "into a different *format*," as recited in that

> claim. Rather, as discussed at length above, Decasper's packet classification scheme relies on *IP headers remaining with packets* throughout the IP core.

(*See* Dkt. No. 93, Ex. 13, June 6, 2013 Preliminary Amendment, at 19 (emphasis added).)

Likewise, to whatever extent Plaintiff continues to rely on dependent Claim 20 of the '683 Patent (reciting "wherein the particular routine is executable to convert packets by removing an outermost header of the packets"), Plaintiff has not demonstrated the applicability of claim differentiation or any other relevant doctrine. *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, *and that limitation is the only meaningful difference between the two claims.*") (emphasis added). Plaintiff has not demonstrated any inconsistency between Defendants' proposed constructions and the recitals of "format" in Claim 16 and "outermost header" in Claim 20.[10]

Finally, Defendants have submitted an extrinsic technical treatise that is consistent with their proposed constructions:

> Layer 3 decides which of the outgoing lines to use and passes the packets to layer 2. Layer 2 adds not only a header to each piece, but also a trailer, and gives the resulting unit to layer 1 for physical transmission. At the receiving machine the message moves upward, from layer to layer, with headers being stripped off as it progresses. None of the headers for layers below n are passed up to layer n.

(Dkt. No. 93, Ex. 23, Andrew S. Tanenbaum, *Computer Networks* 20 (3d ed. 1996).)

The Court therefore hereby construes the disputed terms as set forth in the following chart:

---

[10] Plaintiff argues that the Court in *Huawei* necessarily found that Claim 16 of the '683 Patent encompasses moving a reference. (Dkt. No. 96, at 8.) This argument fails. *Huawei* found that the limitation of "convert packets by removing an outermost header of the packets" in Claim 20 "involves modifying the packets rather than merely moving a reference" because Claim 16, from which Claim 20 depends, recites "convert packets from an input format to an output format." *Huawei* at 26. In other words, the *Huawei* analysis did not rely on claim differentiation, as Plaintiff has suggested here. (Dkt. No. 96, at 8.) Rather, *Huawei* read Claim 20 in light of the limitations recited in Claim 16 because Claim 20, as a dependent claim, includes all of the limitations of Claim 16. *See Huawei* at 26.

| Term | Construction |
| --- | --- |
| **"convert one or more packets having a TCP format into a different format"**<br>('683 Patent, Cl. 1; '790 Patent, Cls. 1, 15)<br><br>**"convert one of the packets of the message into a different format"**<br>('790 Patent, Cl. 8) | **"convert the outermost header structure of the packet(s) from TCP to another type of header structure"** |
| **"convert one or more packets in a transport layer format into a different format"**<br>('683 Patent, Cl. 10) | **"convert the outermost header structure of the packet(s) from a transport layer protocol header to another type of header structure"** |
| **"convert packets of the different format into another format"**<br>('683 Patent, Cl. 2; '790 Patent, Cl. 3) | **"convert each packet's outermost header structure from the different protocol header into another type of header structure"** |

### G. "execute a Transmission Control Protocol (TCP)" and Related Terms

| **"execute a Transmission Control Protocol (TCP)"**<br>('683 Patent, Claim 1; '790 Patent, Claim 1, 15)<br><br>**"executable to perform a Transmission Control Protocol (TCP)"**<br>('790 Patent, Claim 8) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "operate on one or more packets whose outermost header is a TCP header at the endpoint of a connection" |

Case: 20-1362 Document: 17 Page: 82 Filed: 05/18/2020

| **"execute a second, different protocol"** ('683 Patent, Claim 2; '790 Patent, Claim 3)<br><br>**"execute a third, different protocol"** ('683 Patent, Claim 2) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "operate on packets whose outermost header is a [second/third], different protocol header" |

| **"execute a Transmission Control Protocol (TCP) to process packets having a TCP format"** ('104 Patent, Claims 1, 16)<br><br>**"execute TCP to process at least one of the subsequent packets having a TCP format"** ('104 Patent, Claim 10) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "operate on one or more packets whose outermost header is a TCP header at the endpoint of a connection"[11] |

| **"execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol"** ('104 Patent, Claim 3) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "operate on packets whose outermost header is an application-level protocol"[12] |

[11] Defendants previously proposed: "'operate on [packets/at least one of the subsequent packets] whose outermost header is a TCP header at the endpoint of a connection to implement at least the minimum requirements of TCP as specified in RFC 793 at pp.44-50 (including the Open (causes a connection to be established), Send (causes data in a specified buffer to be sent on an indicated connection), Receive (allocates a receiving buffer associated with a specified connection), Close (causes a connection specified to be closed), and Abort (causes all pending send and received commands to be aborted) commands received from a user program)' / Alternatively, Indefinite." (Dkt. No. 85, Ex. B, at p. 26 of 35.)

[12] Defendants previously proposed: "'operate on packets whose outermost header is an application-level protocol to perform the minimum requirements of the application-level protocol as specified in the RFC defining the application-level protocol' / Alternatively, Indefinite." (Dkt. No. 85, Ex. B, at pp. 26–27 of 35.)

| **"another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format"** ('683 Patent, Claim 10) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. No construction necessary. | "operate on packets whose outermost header is a protocol different from the transport layer protocol"[13] |

(Dkt. No. 85, Ex. A, at 6–7 & 10–12; *id.*, Ex. B, at pp. 14–19 & 26–27 of 35; Dkt. No. 89, at 16 & n.4; Dkt. No. 93, at 15 & 22; Dkt. No. 103, Ex. A, at 23–31.)

Shortly before the start of the April 11, 2019 hearing, the Court provided the parties with preliminary constructions as set forth in the following chart:

| Term | Preliminary Construction |
|---|---|
| G.(1a) "execute a Transmission Control Protocol (TCP)" ('683 Pat., Cl. 1; '790 Pat., Cl. 1, 15) | "operate on one or more packets whose outermost header is a TCP header" |
| G.(1b) "executable to perform a Transmission Control Protocol (TCP)" ('790 Pat., Cl. 8) | "operable on one or more packets whose outermost header is a TCP header" |
| G.(2) "execute a second, different protocol" ('683 Pat., Cl. 2; '790 Pat., Cl. 3)<br><br>"execute a third, different protocol" ('683 Pat., Cl. 2) | "operate on packets whose outermost header is a [second/third], different protocol header" |

[13] Defendants previously proposed: "'operate on packets whose outermost header is a protocol different from the transport layer protocol to perform the minimum requirements of the different protocol as specified in the RFC defining the different protocol' / Alternatively, Indefinite." (Dkt. No. 85, Ex. B, at p. 27 of 35.)

| | |
|---|---|
| G.(3) "execute a Transmission Control Protocol (TCP) to process packets having a TCP format" ('104 Pat., Cls. 1, 16)<br><br>"execute TCP to process at least one of the subsequent packets having a TCP format" ('104 Pat., Cl. 10) | "operate on one or more packets whose outermost header is a TCP header" |
| G.(4) "execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol" ('104 Pat., Cl. 3) | "execute a second protocol to operate on packets whose outermost header is other than a TCP header, wherein the second protocol is an application-level protocol" |
| G.(5) "another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format" ('683 Pat., Cl. 10) | Plain meaning |

(1) The Parties' Positions

Plaintiff argues that "a protocol typically refers to a set of rules or procedures for transmitting data between electronic devices, and that protocol may or may not be standardized in an RFC," and Plaintiff argues that the Court properly rejected arguments regarding "endpoint of a connection" in *Huawei*. (Dkt. No. 89, at 19 & 23.)

Defendants respond that "the overwhelming weight of the intrinsic and extrinsic evidence points to the same conclusion that these two concepts—outermost header being a TCP header and operation occurring at the endpoint of a connection—are precisely what it means to 'execute a TCP.'" (Dkt. No. 93, at 16.)[14]

[14] Defendants have also cited Rule 30(b)(6) testimony by one of the named inventors (*see* Dkt. No. 93, Ex. 11, June 5, 2018 Balassanian dep. at 162:11–164:1), but this testimony does not significantly affect the Court's analysis in these claim construction proceedings. *Cf. Howmedica*, 540 F.3d at 1346–47 (noting that inventor testimony is "limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application").

Plaintiff replies that "[i]t is undisputed that the term 'endpoint' does not appear in the Patents," and "while a TCP connection may be between endpoints, the functionality of executing TCP to convert packets having a TCP format into a different format can happen at any device through which packets of the connection flow—not only the endpoints." (Dkt. No. 96, at 10.)

(2) Analysis

Claim 1 of the '683 Patent, for example, recites (emphasis added):

> 1. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
> a processing unit; and
> a memory storing instructions executable by the processing unit to:
> create, based on an identification of information in a received packet of a message, a path that includes one or more data structures that indicate a sequence of routines for processing packets in the message;
> store the created path; and
> process subsequent packets in the message using the sequence of routines indicated in the stored path, wherein the sequence includes a routine that is used to *execute a Transmission Control Protocol (TCP)* to convert one or more packets having a TCP format into a different format.

First, the dispute as to Defendants' proposals that the "outermost header is a TCP header" presents substantially the same dispute that the parties have presented as to the terms "convert one or more packets having a TCP format into a different format," "convert one or more packets in a transport layer format into a different format," and "convert packets of the different format into another format," which are addressed above. As further support for the present disputed terms, Defendants also note the patentee's statements during prosecution of the '683 Patent. (*See* Dkt.

No. 93, Ex. 13, June 6, 2013 Preliminary Amendment, at 19 n.4 ("executes the TCP protocol (i.e., operates on a packet whose outermost header is a TCP header)").)[15]

Second, Defendants have failed to persuasively support their proposal of referring to an "endpoint of a connection." The parties agree that "Transmission Control Protocol" ("TCP") is a standard protocol for network communications. *See Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1336–37 (Fed. Cir. 2010) (construing claims in light of the MPEG-2 digital television standard). Also, Defendants have submitted that the Background section of the specification frames the claimed invention in the context of "when data is generated on one computer system and is transmitted to another computer system to be displayed . . . ." '683 Patent at 1:27–29.

Yet, no "endpoint" limitation is recited or implied in the claim language, no disclosure in this regard appears in the specification, and Defendants have not demonstrated that Transmission Control Protocol (TCP) is relevant only at endpoints of a connection. Even the portions of the TCP standard cited by Defendants do not persuasively support Defendants' proposal of limiting the disputed terms to endpoints. (*See* Dkt. No. 93, Ex. 24, RFC 793, Transmission Control Protocol at § 1 ("The Transmission Control Protocol (TCP) is *intended* for use as a highly reliable host-to-host protocol between hosts[16] in packet-switched computer communication networks, and in interconnected systems of such networks.") (emphasis added); *see also id.*, Ex. 23, Andrew S. Tanenbaum, *Computer Networks* 521 (3d ed. 1996) ("TCP (Transmission Control Protocol) was

---

[15] Defendants have not shown, however, how their arguments in this regard are applicable to the final disputed term, namely "another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format" ('683 Patent, Claim 10). At the April 11, 2019 hearing, Defendants withdrew their proposed construction for this term. As set forth below, the Court construes this term to have its plain meaning.

[16] (*See id.*, at p. 80 (defining "host" as: "A computer. In particular a source or destination of messages from the point of view of the communication network.").)

specifically *designed* to provide a reliable end-to-end byte stream over an unreliable internetwork.") (emphasis added).)

Defendants have emphasized a statement by the patentee during prosecution of the '683 Patent that "it is well known that the Transmission Control Protocol (TCP) is implemented at the endpoints of a connection." (Dkt. No. 93, Ex. 13, June 6, 2013 Preliminary Amendment, at 19 n.4; *see id.*, at 19; *see also id.*, at 14 n.3 ("Decasper's EISR [(Extended Integrated Services Router)] architecture is not focused on communication 'end-systems' that implement protocols such as TCP.").) Also, during *inter partes* reexamination of the ancestor '163 Patent, the patentee stated that "the '163 Patent technology functions at the end-point level." (*Id.*, Ex. 20, Comments to ACP, at 12.) These statements that TCP is implemented at endpoints, however, do not preclude TCP from functioning elsewhere. On balance, no relevant disclaimer is apparent as to the disputed terms, and to whatever extent an endpoint of a connection is necessitated by a particular limitation in a particular claim by virtue of using TCP, Defendants' proposal of "endpoint of a connection" is unnecessary.

The Court therefore hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"execute a Transmission Control Protocol (TCP)"**<br>('683 Patent, Cl. 1; '790 Patent, Cl. 1, 15) | **"operate on one or more packets whose outermost header is a TCP header"** |
| **"executable to perform a Transmission Control Protocol (TCP)"**<br>('790 Patent, Cl. 8) | **"operable on one or more packets whose outermost header is a TCP header"** |
| **"execute a second, different protocol"**<br>('683 Patent, Cl. 2; '790 Patent, Cl. 3)<br><br>**"execute a third, different protocol"**<br>('683 Patent, Cl. 2) | **"operate on packets whose outermost header is a [second/third], different protocol header"** |

| | |
|---|---|
| **"execute a Transmission Control Protocol (TCP) to process packets having a TCP format"**<br>('104 Patent, Cls. 1, 16)<br><br>**"execute TCP to process at least one of the subsequent packets having a TCP format"**<br>('104 Patent, Cl. 10) | **"operate on one or more packets whose outermost header is a TCP header"** |
| **"execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol"**<br>('104 Patent, Cl. 3) | **"execute a second protocol to operate on packets whose outermost header is other than a TCP header, wherein the second protocol is an application-level protocol"** |
| **"another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format"**<br>('683 Patent, Cl. 10) | **Plain meaning** |

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit, and in reaching conclusions the Court has considered extrinsic evidence. The Court's constructions thus include subsidiary findings of fact based upon the extrinsic evidence presented by the parties in these claim construction proceedings. *See Teva*, 135 S. Ct. at 841.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 3rd day of January, 2012.**

**SIGNED this 15th day of April, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

US008694683B2

(12) **United States Patent**
**Balassanian**

(10) **Patent No.:** **US 8,694,683 B2**
(45) **Date of Patent:** ***Apr. 8, 2014**

(54) **METHOD AND SYSTEM FOR DATA DEMULTIPLEXING**

(71) Applicant: **Implicit Networks, Inc.**, Bellevue, WA (US)

(72) Inventor: **Edward Balassanian**, Seattle, WA (US)

(73) Assignee: **Implicit Networks, Inc.**, Bellevue, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **13/911,324**

(22) Filed: **Jun. 6, 2013**

(65) **Prior Publication Data**

US 2013/0266025 A1 Oct. 10, 2013

**Related U.S. Application Data**

(63) Continuation of application No. 13/236,090, filed on Sep. 19, 2011, now abandoned, which is a continuation of application No. 10/636,314, filed on Aug. 6, 2003, now Pat. No. 8,055,786, which is a continuation of application No. 09/474,664, filed on Dec. 29, 1999, now Pat. No. 6,629,163.

(51) **Int. Cl.**
***G06F 15/16*** (2006.01)

(52) **U.S. Cl.**
USPC ............................ **709/246**; 709/238; 370/466

(58) **Field of Classification Search**
USPC ............... 709/230, 228, 246, 238; 370/395.1, 370/469, 231, 466; 379/207.02, 229; 710/33
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,298,674 | A | 3/1994 | Yun |
| 5,414,833 | A | 5/1995 | Hershey et al. |
| 5,627,997 | A | 5/1997 | Pearson et al. |
| 5,761,651 | A | 6/1998 | Hasebe |
| 5,826,027 | A | 10/1998 | Pedersen et al. |
| 5,835,726 | A | 11/1998 | Shwed et al. |
| 5,848,233 | A | 12/1998 | Radia et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0817031 | 1/1998 |

OTHER PUBLICATIONS

RFC: 791, Internet Protocol: DARPA Internet Program Protocol Specification, Sep. 1981, prepared for Defense Advanced Research Projects Agency Information Processing Techniques Office by Information Sciences Institute University of Southern California, 52 pages.

(Continued)

*Primary Examiner* — Jungwon Chang
(74) *Attorney, Agent, or Firm* — Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C.

(57) **ABSTRACT**

A method and system for demultiplexing packets of a message is provided. The demultiplexing system receives packets of a message, identifies a sequence of message handlers for processing the message, identifies state information associated with the message for each message handler, and invokes the message handlers passing the message and the associated state information. The system identifies the message handlers based on the initial data type of the message and a target data type. The identified message handlers effect the conversion of the data to the target data type through various intermediate data types.

**30 Claims, 16 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,848,415 | A | 12/1998 | Guck | |
| 5,854,899 | A | 12/1998 | Callon et al. | |
| 5,898,830 | A | 4/1999 | Wesinger, Jr. et al. | |
| 6,091,725 | A | 7/2000 | Cheriton et al. | |
| 6,104,500 | A | 8/2000 | Alam et al. | |
| 6,115,393 | A * | 9/2000 | Engel et al. | 370/469 |
| 6,119,236 | A | 9/2000 | Shipley | |
| 6,141,749 | A | 10/2000 | Coss et al. | |
| 6,151,390 | A * | 11/2000 | Volftsun et al. | 379/229 |
| 6,226,267 | B1 | 5/2001 | Spinney et al. | |
| 6,243,667 | B1 | 6/2001 | Kerr et al. | |
| 6,259,781 | B1 * | 7/2001 | Crouch et al. | 379/207.02 |
| 6,356,529 | B1 * | 3/2002 | Zarom | 370/231 |
| 6,401,132 | B1 | 6/2002 | Bellwood et al. | |
| 6,426,943 | B1 | 7/2002 | Spinney et al. | |
| 6,519,636 | B2 | 2/2003 | Engel et al. | |
| 6,598,034 | B1 | 7/2003 | Kloth | |
| 6,629,163 | B1 * | 9/2003 | Balassanian | 710/33 |
| 6,651,099 | B1 | 11/2003 | Dietz et al. | |
| 6,678,518 | B2 | 1/2004 | Eerola | |
| 6,680,922 | B1 | 1/2004 | Jorgensen | |
| 6,701,432 | B1 | 3/2004 | Deng et al. | |
| 6,711,166 | B1 * | 3/2004 | Amir et al. | 370/395.1 |
| 6,785,730 | B1 * | 8/2004 | Taylor | 709/230 |
| 6,871,179 | B1 | 3/2005 | Kist et al. | |
| 6,889,181 | B2 | 5/2005 | Kerr et al. | |
| 7,383,341 | B1 * | 6/2008 | Saito et al. | 709/228 |

OTHER PUBLICATIONS

Alexander, D. et al., "The SwitchWare Active Network Architecture", Jun. 6, 1998, IEEE.

Antoniazzi, S. et al., "An Open Software Architecture for Multimedia Consumer Terminals", Central Research Labs, Italy; Alcatel SEL Research Centre, Germany, ECMAST 1997.

Arbanowski, Stefan, "Generic Description of Telecommunication Services and Dynamic Resource Selection in Intelligent Communication Environments", Thesis, Technische Universitat Berlin, Oct. 9, 1996 (3 documents).

Arbanowski, S., et al., Service Personalization for Unified Messaging Systems, Jul. 6-8, 1999, The Fourth IEEE Symposium on Computers and Communications, ISCC '99, Red Sea, Egypt.

Atkinson, R., "Security Architecture for the Internet Protocol", Aug. 1995, Naval Research Laboratory.

Atkinson, R., "IP Authentication Header", Aug. 1995, Naval Research Laboratory.

Atkinson, R., "IP Encapsulating Security Payload (ESP)", Aug. 1995, Naval Research Laboratory.

Back, G., et al., Java Operating Systems: Design and Implementation, Aug. 1998, Technical Report UUCS-98-015, University of Utah.

Baker, Dr. Sean, "CORBA Implementation Issues", 1994, IONA Technologies, O'Reilly Institute Dublin, Ireland.

Barrett, R., et al., "Intermediaries: New Places for Producing and Manipulating Web Content", 1998, IBM Almaden Research Center, Elsevier Science.

Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the Des Modes of Operation", Aug. 15, 1997, Dept. of Computer Science and Engineering, University of California, San Diego.

Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the DES Modes of Operation", Aug. 15, 1997, IEEE.

Bellare, M., et al., "XOR MACs: New Methods for Message Authentication Using Finite Pseudorandom Functions", 1995, CRYPTO '95, LNCS 963, pp. 15-28, Springer-Verlag Berlin Heidelberg.

Bellissard, L., et al., "Dynamic Reconfiguration of Agent-Based Applications", Third European Research Seminar on Advances in Distributed Systems, (ERSADS '99) Madeira Island.

Bolding, Darren, "Network Security, Filters and Firewalls", 1995, www.acm.org/crossroads/xrds2-1/security.html.

Booch, G., et al., "Software Engineering with ADA", 1994, Third Edition, the Benjamin/Cummings Publishing Company, Inc. (2 documents).

Breugst, et al., "Mobile Agents—Enabling Technology for Active Intelligent Network Implementation", May/Jun. 1998, IEEE Network.

"C Library Functions", AUTH(3) Sep. 17, 1993, Solbourne Computer, Inc.

Chapman, D., et al., "Building Internet Firewalls", Sep. 1995, O'Reilly & Associates, Inc.

CheckPoint FireWall-1 Technical White Paper, Jul. 18, 1994, CheckPoint Software Technologies, Ltd.

CheckPoint FireWall-1 White Paper, Sep. 1995, Version 2.0, CheckPoint Software Technologies, Ltd.

Command Line Interface Guide P/N 093-0011-000 Rev C Version 2.5, 2000-2001, NetScreen Technologies, Inc.

Coulson, G. et al., "A CORBA Compliant Real-Time Multimedia Platform for Broadband Networks", Lecture Notes in Computer Science, 1996, Trends in Distributed Systems CORBA and Beyond.

Cox, Brad, "SuperDistribution, Objects as Property on the Electronic Frontier", 1996, Addison-Wesley Publishing Company.

Cranes, et al., "A Configurable Protocol Architecture for CORBA Environments", Autonomous Decentralized Systems 1997 Proceedings ISADS, Third International Symposium Apr. 9-11, 1997.

Curran, K., et al., "CORBA Lacks Venom", University of Ulster, Northern Ireland, UK 2000.

Dannert, Andreas, "Call Logic Service for a Personal Communication Supporting System", Thesis, Jan. 20, 1998, Technische Universitat Berlin.

DARPA Internet Program Protocol Specification, "Transmission Control Protocol", Sep. 1981, Information Sciences Institute, California.

DARPA Internet Program Protocol Specification, "Internet Protocol", Sep. 1981, Information Sciences Institute, California.

Decasper, D., et al., "Crossbow: A Toolkit for Integrated Services over Cell Switched IPv6", 1997, Computer Engineering and Networks Laboratory, ETH Zurich, Switzerland.

Decasper, D., et al., "Router Plugins A Software Architecture for Next Generation Routers", 1998, Proceedings of ACM SIGCONM '98.

Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1998, Nokia, The Internet Society.

Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1995, Network Working Group, RFC 1883.

Dutton, et al, "Asynchronous Transfer Mode Technical Overview (ATM)", Second Edition; IBM, Oct. 1995, 2nd Edition, Prentice Hall PTR, USA.

Eckardt, T., et al., "Application of X.500 and X.700 Standards for Supporting Personal Communications in Distributed Computing Environments", 1995, IEEE.

Eckardt, T., et al., "Personal Communications Support based on TMN and TINA Concepts", 1996, IEEE Intelligent Network Workshop (IN '96), Apr. 21-24, Melbourne, Australia.

Eckardt, T., et al., "Beyond IN and UPT—A Personal Communications Support System Based on TMN Concepts", Sep. 1997, IEEE Journal on Selected Areas in Communications, vol. 15, No. 7.

Egevang, K., et al., "The IP Network Address Translator (NAT)", May 1994, Network Working Group, RFC 1631.

Estrin, D., et al., "Visa Protocols for Controlling Inter-Organizational Datagram Flow", Dec. 1998, Computer Science Department, University of Southern California and Digital Equipment Corporation.

Faupel, M., "Java Distribution and Deployment", Oct. 9, 1997, APM Ltd., United Kingdom.

Felber, P., "The CORBA Object Group Service: A Service Approach to Object Groups in CORBA", Thesis, 1998, Ecole Polytechnique Federale de Lausanne, Switzerland.

Fish, R., et al., "DRoPS: Kernel Support for Runtime Adaptable Protocols", Aug. 25-27, 1998, IEEE 24th Euromicro Conference, Sweden.

Fiuczynski, M., et al., "An Extensible Protocol Architecture for Application-Specific Networking", 1996, Department of Computer Science and Engineering, University of Washington.

(56) **References Cited**

OTHER PUBLICATIONS

Franz, Stefan, "Job and Stream Control in Heterogeneous Hardware and Software Architectures", Apr. 1998, Technische Universitat, Berlin (2 documents).
Fraser, T., "DTE Firewalls: Phase Two Measurement and Evaluation Report", Jul. 22, 1997, Trusted Information Systems, USA.
Gazis, V., et al., "A Survey of Dynamically Adaptable Protocol Stacks", first Quarter 2010, IEEE Communications Surveys & Tutorials, vol. 12, No. 1, 1st Quarter.
Gokhale, A., et al., "Evaluating the Performance of Demultiplexing Strategies for Real-Time CORBA", Nov. 1997, GLOBECOM.
Gokhale, A., et al., "Measuring and Optimizing CORBA Latency and Scalability Over High-Speed Networks", Apr. 1998, IEEE Transaction on Computers, vol. 47, No. 4; Proceedings of the International Conference on Distributed Computing Systems (ICDCS '97) May 27-30, 1997.
Gokhale, A., et al., "Operating System Support for High-Performance, Real-Time CORBA", 1996.
Gokhale, A., et al., "Principles for Optimizing CORBA Internet Inter-ORB Protocol Performance", Jan. 9, 1998, Proceedings of the HICSS Conference, Hawaii.
Gong, Li, "Java Security: Present and Near Future", May/Jun. 1997, IEEE Micro.
Gong, Li, "New Security Architectural Directions for Java (Extended Abstract)", Dec. 19, 1996, IEEE.
Gong, Li, "Secure Java Class Loading", Nov./Dec. 1998, IEEE Internet.
Goos, G., et al., "Lecture Notes in Computer Science: Mobile Agents and Security", 1998, Springer-Verlag Berlin Heidelberg.
Goralski, W., "Introduction to ATM Networking", 1995, McGraw-Hill Series on Computer Communications, USA.
Hamzeh, K., et al., Layer Two Tunneling Protocol "L2TP", Jan. 1998, PPP Working Group, Internet Draft.
Harrison, T., et al., "The Design and Performance of a Real-Time CORBA Event Service", Aug. 8, 1997,Proceedings of the OOPSLA '97 Conference, Atlanta, Georgia in Oct. 1997.
Huitema, Christian, "IPv6 The New Internet Protocol", 1997 Prentice Hall, Second Edition.
Hutchins, J., et al., "Enhanced Internet Firewall Design Using Stateful Filters Final Report", Aug. 1997, Sandia Report; Sandia National Laboratories.
IBM, Local Area Network Concepts and Products: Routers and Gateways, May 1996.
Juniper Networks Press Release, Juniper Networks Announces Junos, First Routing Operating System for High-Growth Internet Backbone Networks, Jul. 1, 1998, Juniper Networks.
Juniper Networks Press Release, Juniper Networks Ships the Industry's First Internet Backbone Router Delivering Unrivaled Scalability, Control and Performance, Sep. 16, 1998, Juniper Networks.
Karn, P., et al., "The ESP DES-CBC Transform", Aug. 1995, Network Working Group, RFC 1829.
Kelsey, J. et al., "Authenticating Outputs of Computer Software Using a Cryptographic Coprocessor", Sep. 1996, CARDIS.
Krieger, D., et al., "The Emergence of Distributed Component Platforms", Mar. 1998, IEEE.
Krupczak, B., et al., "Implementing Communication Protocols in Java", Oct. 1998, IEEE Communications Magazine.
Krupczak, B., et al., "Implementing Protocols in Java: The Price of Portability", 1998, IEEE.
Lawson, Stephen, "Cisco NetFlow Switching Speeds Traffic Routing", Jul. 7, 1997, Infoworld.
Li, S., et al., "Active Gateway: A Facility for Video Conferencing Traffic Control", Feb. 1, 1997, Purdue University; Purdue e-Pubs; Computer Science Technical Reports.
Magedanz, T., et al., "Intelligent Agents: An Emerging Technology for Next Generation Telecommunications?", 1996, IEEE.
Mills, H., et al., "Principles of Information Systems Analysis and Design", 1986, Academic Press, Inc. (2 documents).
Mosberger, David, "*Scout: A Path-Based Operating System*", Doctoral Dissertation Submitted to the University of Arizona, 1997 (3 documents).
Muhugusa, M., et al., "ComScript: An Environment for the Implementation of Protocol Stacks and their Dynamic Reconfiguration", Dec. 1994.
Nelson, M., et al., The Data Compression Book, 2nd Edition, 1996, M&T Books, A division of MIS Press, Inc.
NetRanger User's Guide, 1996, WheelGroup Corporation.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 Rev A, NetScreen Technologies, Inc., USA.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 NetScreen Technologies, Inc., USA.
NetScreen Concepts and Examples ScreenOS Reference Guide, 1998-2001, Version 2.5 P/N 093-0039-000 Rev. A, NetScreen Technologies, Inc.
NetScreen Products Webpage, wysiwyg://body_bottom.3/http://www...een.com/products/products.html 1998-1999, NetScreen Technologies, Inc.
NetScreen WebUI, Reference Guide, Version 2.5.0 P/N 093-0040-000 Rev. A, 2000-2001, NetScreen Technologies, Inc.
NetStalker Installation and User's Guide, 1996, Version 1.0.2, Haystack Labs, Inc.
Niculescu, Dragos, "Survey of Active Network Research", Jul. 14, 1999, Rutgers University.
Nortel Northern Telecom, "ISDN Primary Rate User-Network Interface Specification", Aug. 1998.
Nygren, Erik, "The Design and Implementation of a High-Performance Active Network Node", Thesis, Feb. 1998, MIT.
Osbourne, E., "Morningstar Technologies SecureConnect Dynamic Firewall Filter User's Guide", Jun. 14, 1995, V. 1.4, Morning Star Technologies, Inc.
Padovano, Michael, "Networking Applications on UNIX System V Release 4," 1993 Prentice Hall, USA (2 documents).
Pfeifer, T., "Automatic Conversion of Communication Media", 2000, GMD Research Series, Germany.
Pfeifer, T., "Automatic Conversion of Communication Media", Thesis, 1999, Technischen Universitat Berlin, Berlin.
Pfeifer, T., et al., "Applying Quality-of-Service Parametrization for Medium-to-Medium Conversion", Aug. 25-28, 1996, 8th IEEE Workshop on Local and Metropolitan Area Networks, Potsdam, Germany.
Pfeifer, T., "Micronet Machines—New Architectural Approaches for Multimedia End-Systems", 1993 Technical University of Berlin.
Pfeifer, T., "On the Convergence of Distributed Computing and Telecommunications in the Field of Personal Communications", 1995, KiVS, Berlin.
Pfeifer, T., "Speech Synthesis in the Intelligent Personal Communication Support System (IPCSS)", Nov. 2-3, 1995, 2nd 'Speak!' Workshop on Speech Generation in Multimodal Information Systems and Practical Applications.
Pfeifer, T., et al., "Generic Conversion of Communication Media for Supporting Personal Mobility", Nov. 25-27, 1996, Proc. of the Third COST 237 Workshop: Multimedia Telecommunications and Applications.
Pfeifer, T., et al., "Intelligent Handling of Communication Media", Oct. 29-31, 1997, 6th IEEE Workshop on Future Trends of Distributed Computing Systems (FTDCS) Tunis.
Pfeifer, T., et al., "Resource Selection in Heterogeneous Communication Environments using the Teleservice Descriptor", Dec. 15-19, 1997, Proceedings from the 4th COST 237 Workshop: From Multimedia Services to Network Services, Lisboa.
Pfeifer, T., et al., Mobile Guide—Location-Aware Applications from the Lab to the Market, 1998, IDMS '98, LNCS 1483, pp. 15-28.
Pfeifer, T., et al., "The Active Store providing Quality Enhanced Unified Messaging", Oct. 20-22, 1998, 5th Conference on computer Communications, AFRICOM-CCDC '98, Tunis.
Pfeifer, T.,, et al., "*A Modular Location-Aware Service and Application Platform*", 1999, Technical University of Berlin.
Plagemann, T., et al., "*Evaluating Crucial Performance Issues of Protocol Configuration in DaCaPo*", 1994, University of Oslo.
Psounis, Konstantinos, "*Active Networks: Applications, Security, Safety, and Architectures*", First Quarter 1999, IEEE Communications Surveys.

(56) **References Cited**

OTHER PUBLICATIONS

Rabiner, Lawrence, "*Applications of Speech Recognition in the Area of Telecommunications*", 1997, IEEE.
Raman, Suchitra, et al, "*A Model, Analysis, and Protocol Framework for Soft State-based Communications*", Department of EECS, University of California, Berkeley.
Rogaway, Phillip, "*Bucket Hashing and its Application to Fast Message Authentication*", Oct. 13, 1997, Department of Computer Science, University of California.
Schneier, B., et al., "*Remote Auditing of Software Outputs Using a Trusted CoProcessor*", 1997, Elsevier Paper Reprint 1999.
Tennenhouse, D., et al., "*From Internet to ActiveNet*", Laboratory of Computer Science, MIT, 1996.
Tudor, P., "*Tutorial MPEG-2 Video Compression*", Dec. 1995, Electronics & Communication Engineering Journal.
US Copyright Webpage of Copyright Title, "*IPv6: the New Internet Protocol*", by Christian Huitema, 1998 Prentice Hall.
Van der Meer, et al., "*An Approach for a 4th Generation Messaging System*", Mar. 21-23, 1999, The Fourth International Symposium on Autonomous Decentralized Systems ISADS '99, Tokyo.
Van der Meer, Sven, "*Dynamic Configuration Management of the Equipment in Distributed Communication Environments*", Thesis, Oct. 6, 1996, Berlin (3 documents).
Van Renesse, R. et al., "*Building Adaptive Systems Using Ensemble*", Cornell University Jul. 1997.
Venkatesan, R., et al., "*Threat-Adaptive Security Policy*", 1997, IEEE.
Wetherall, D., et al., "*The Active IP Option*", Sep. 1996, Proceedings of the 7th ACM SIGOPS European Workshop, Connemara, Ireland.
Welch, Terry, "*A Technique for High-Performance Data Compression*", 1984, Sperry Research Center, IEEE.
Zeletin, R. et al., "*Applying Location-Aware Computing for Electronic Commerce: Mobile Guide*", Oct. 20-22, 1998, 5th Conference on Computer Communications, AFRICOM-CCDC '98, Tunis.
Zell, Markus, "*Selection of Converter Chains by Means of Quality of Service Analysis*", Thesis, Feb. 12, 1998, Technische Universitat Berlin.
Feb. 4, 2008 Plaintiff's Original Complaint.
Aug. 26, 2008 Defendant NVIDIA Corporation's Answer to Complaint.
Aug. 26, 2008 Defendant Sun Microsystems, Inc.'s Answer to Complaint.
Aug. 27, 2008 Defendant Advanced Micro Devices, Inc.'s Answer to Complaint for Patent Infringement.
Aug. 27, 2008 RealNetworks, Inc.'s Answer to Implicit Networks, Inc.'s Original Complaint for Patent Infringement, Affirmative Defenses, and Counterclaims.
Aug. 27, 2008 Intel Corp.'s Answer, Defenses and Counterclaims.
Aug. 27, 2008 Defendant RMI Corporation's Answer to Plaintiff's Original Complaint.
Sep. 15, 2008 Plaintiff's Reply to NVIDIA Corporation's Counterclaims.
Sep. 15, 2008 Plaintiff's Reply to Sun Microsystems Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiff's Reply to RealNetworks, Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiff's Reply to Intel Corp.'s Counterclaims.
Dec. 10, 2008 Order granting Stipulated Motion for Dismissal with Prejudice re NVIDIA Corporation, Inc.
Dec. 16, 2008 Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Dec. 29, 2008 Order granting Stipulated Motion for Dismissal without Prejudice of Claims re Sun Microsystems, Inc.
Jan. 5, 2009 Plaintiff's Opposition to Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending Reexamination and Exhibit A.
Jan. 9, 2009 Reply of Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Feb. 9, 2009 Order Granting Stay Pending the United States Patent and Trademark Office's Reexamination of U.S. Patent No. 6,629,163.
Feb. 17, 2009 Order Granting Stipulated Motion for Dismissal of Advanced Micro Devices, Inc. with Prejudice.
May 14, 2009 Order Granting Stipulated Motion for Dismissal of RMI Corporation with Prejudice.
Oct. 13, 2009 Order Granting Stipulated Motion for Dismissal of Claims Against and Counterclaims by Intel Corporation.
Oct. 30, 2009 Executed Order for Stipulated Motion for Dismissal of Claims Against and Counterclaims by RealNetworks, Inc.
Nov. 30, 2009 Plaintiff's Original Complaint, *Implicit* v *Microsoft*, Case No. 09-5628.
Jan. 22, 2010 Order Dismissing Case, *Implicit* v *Microsoft*, Case No. 09-5628.
Aug. 16, 2010 Plaintiff's Original Complaint, *Implicit* v *Cisco*, Case No. 10-3606.
Nov. 22, 2010 Defendant Cisco Systems, Inc's Answer and Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Dec. 13, 2010 Plaintiff, Implicit Networks, Inc.'s, Answer to Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Oct. 4, 2011 Order of Dismissal With Prejudice, *Implicit* v *Cisco*, Case No. 10-3606.
Aug. 24, 2010 Plaintiff's Original Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Dec. 1, 2010 Plaintiff's First Amended Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Jan. 14, 2011 Defendant Citrix Systems, Inc.'s Answer, Defenses and Counter-complaint for Declaratory Judgment, *Implicit* v *Citrix*, Case No. 10-3766.
Feb. 18, 2011 Plaintiff, Implicit Networks, Inc.'s, Answer to Defendants Counterclaims, *Implicit* v *Citrix*, Case No. 10-3766.
May 2, 2011 Order of Dismissal, *Implicit* v *Citrix*, Case No. 10-3766.
Jul. 30, 2010 Plaintiff's Original Complaint, *Implicit* v *F5*, Case No. 10-3365.
Oct. 13, 2010 Defendants' Answer and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Nov. 3, 2010 Plaintiff's Answer to Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Dec. 10, 2010 Plaintiff's First Amended Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jan. 14, 2011 Defendants' Answer to 1st Amended Complaint and Counterclaim, *Implicit* v *F5*, Case No. 10-3365.
Feb. 18, 2011 Plaintiff's Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Apr. 18, 2011 Defendants' Amended Answer to 1st Amended Complaint and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
May 5, 2011 Plaintiff's Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (31 documents).
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit B, *Implicit* v *F5*, Case No. 10-3365.
Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3), *Implicit* v *F5*, Case No. 10-3365.
Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3) Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (2 documents).
Nov. 28, 2011 Plaintiff's Opening Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing Statement, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing, Exhibit A, *Implicit* v *F5*, Case No. 10-3365.
Dec. 12, 2011 Defendants' Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Dec. 19, 2011 Plaintiff's Reply to Defendants' (F5, HP, Juniper) Responsive Claim Construction Brief (4-5), *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 17, 2012; *Implicit* v *F5*, Case No. 10-3365.

(56) **References Cited**

OTHER PUBLICATIONS

Jan. 27, 2012 Transcript of Proceeding Held on Jan. 18, 2012; *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 19, 2012; *Implicit* v *F5*, Case No. 10-3365.
Feb. 29, 2012 Claim Construction Order.
Aug. 15, 2012 Storer Invalidity Report.
Sep. 10, 2012 Implicit's Expert Report of Scott M. Nettles.
Mar. 13, 2013 Order Granting Defendants' Motion for Summary Judgment.
Apr. 9, 2013 Notice of Appeal to the Federal Circuit.
Aug. 23, 2010 Plaintiff's Original Complaint, *Implicit* v *HP*, Case No. 10-3746.
Nov. 23, 2010 Plaintiff's First Amended Complaint, *Implicit* v *HP*, Case No. 10-3746.
Jan. 14, 2011 Defendant HP's Answer and Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
Feb. 18, 2011 Implicit Networks, Inc.'s Answer to HP Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
May 10, 2011 Plaintiff's Amended Disclosure of Asserted Claims and Infringement Contentions, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, A1-14, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, B1-21, *Implicit* v *HP*, Case No. 10-3746.
Sep. 20, 2010 Plaintiff's Original Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 12, 2010 Juniper Network's Motion to Dismiss for Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 2, 2010 Juniper Network's Request for Judicial Notice in Support of its Motion to Dismiss for Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 1, 2010 First Amended Complaint; *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 18, 2011 Juniper Networks, Inc.'s Answer and Affirmative Defenses to 1st Amended Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 18, 2011 Plaintiff's Answer to Defendant's Counterclaims, *Implicit* v *Juniper*, Case No. 10-4234.
May 23, 2011 Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 15, 2011 Plaintiff's Amended Disclosure of Asserted Claim and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief), *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit E, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit J, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit K, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibits M-O, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit B, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit F, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit N, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Q, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit S., *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit U, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit V, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit W, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit X, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Z, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiff's Reply Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiff's Reply Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 10, 2012 Plaintiff's Jan. 10, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A1, *Implicit* v *Juniper*, Case No. 10-234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A2, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A3, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A4, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit B1, *Implicit* v *Juniper*, Case No. 10-4234.

(56) **References Cited**

OTHER PUBLICATIONS

Feb. 29, 2012 Plaintiff's Feb. 29, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 6, 2012 Plaintiff's Apr. 6, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 9, 2012 Plaintiff's Apr. 9, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Sep. 11, 2012 Implicit's Expert Report of Scott Nettles.
Nov. 9, 2012 Juniper's Notice of Motion and Memorandum of Law ISO Motion for Summary Judgment or, in the alternative, for Partial Summary Judgment, on the Issue of Invalidity.
Nov. 9, 2012 Exhibit 2 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Expert Report.
Nov. 9, 2012 Exhibit 3 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Supplemental Expert Report.
Nov. 26, 2012 Implicit Opposition to Juniper's and F5 Motion on Invalidity.
Nov. 26, 2012 Exhibit A to Hosie Declaration—Aug. 27, 2012 Excerpts from David Blaine deposition.
Nov. 26, 2012 Exhibit B to Hosie Declaration—Oct. 25, 2012 Excerpts from Kenneth Calvert Deposition.
Nov. 26, 2012 Exhibit C to Hosie Declaration—Aug. 15, 2012 Excerpts from Kenneth Calvert Expert Report.
Nov. 26, 2012 Exhibit D to Hosie Declaration—USPN 6,651,099 to Dietz et al.
Nov. 26, 2012 Exhibit E to Hosie Declaration—Understanding Packet-Based and Flow-Based Forwarding.
Nov. 26, 2012 Exhibit F to Hosie Declaration—Wikipedia on Soft State.
Nov. 26, 2012 Exhibit G to Hosie Declaration—Sprint Notes.
Nov. 26, 2012 Exhibit H to Hosie Declaration—Implicit's Supplemental Response to Juniper's 2nd Set of Interrogatories.
Nov. 26, 2012 Exhibit I to Hosie Declaration—USPN 7,650,634 (Zuk).
U.S. Appl. No. 11/933,022 Utility Application filed Oct. 31, 2007.
U.S. Appl. No. 11/933,022 Preliminary Amendment filed Feb. 19, 2008.
U.S. Appl. No. 11/933,022 Office Action mailed Jun. 24, 2009.
U.S. Appl. No. 11/933,022 Amendment filed Sep. 24, 2009.
U.S. Appl. No. 11/933,022 Office Action dated Dec. 11, 2009.
U.S. Appl. No. 11/933,022 Amendment and Response dated Jan. 29, 2010.
U.S. Appl. No. 11/933,022 Notice of Allowance dated Mar. 2, 2010.
U.S. Appl. No. 11/933,022 Issue Notification dated May 4, 2010.
U.S. Appl. No. 11/636,314 Utility Application filed Aug. 6, 2003.
U.S. Appl. No. 11/636,314 Office Action dated Apr. 7, 2008.
U.S. Appl. No. 11/636,314 Response to Restriction Requirement dated Aug. 5, 2008.
U.S. Appl. No. 11/636,314 Office Action dated Oct. 3, 2008.
U.S. Appl. No. 11/636,314 Response to Office Action dated Apr. 3, 2009.
U.S. Appl. No. 11/636,314 Notice of Non-Compliant Amendment dated May 4, 2009.
U.S. Appl. No. 11/636,314 Amendment to Office Action Response dated Jun. 4, 2009.
U.S. Appl. No. 11/636,314 Notice of Non-Compliant Amendment dated Jun. 12, 2009.
U.S. Appl. No. 11/636,314 Amendment to Office Action dated Jul. 10, 2009.
U.S. Appl. No. 11/636,314 Final Rejection Office Action dated Oct. 21, 2009.
U.S. Appl. No. 11/636,314 Amendment after Final Office Action dated Dec. 14, 2009.
U.S. Appl. No. 11/636,314 Advisory Action dated Jan. 11, 2010.
U.S. Appl. No. 11/636,314 Notice of Non-Compliant Amendment dated Jan. 11, 2010.
U.S. Appl. No. 11/636,314 Supplemental Amendment and Response dated Mar. 13, 2010.
U.S. Appl. No. 11/636,314 Office Action dated May 11, 2010.
U.S. Appl. No. 11/636,314 Amendment and Response dated Sep. 13, 2010.
U.S. Appl. No. 11/636,314 Final Rejection dated Nov. 24, 2010.
U.S. Appl. No. 11/636,314 Notice of Appeal dated May 19, 2011.
U.S. Appl. No. 11/636,314 Amendment and Request for Continued Examination dated Jul. 19, 2011.
U.S. Appl. No. 11/636,314 Notice of Allowance dated Sep. 13, 2011.
U.S. Appl. No. 11/636,314 Notice of Allowance dated Sep. 19, 2011.
U.S. Appl. No. 11/636,314 Issue Notification dated Oct. 19, 2011.
U.S. Appl. No. 19/474,664 Utility Application filed Dec. 29, 1999.
U.S. Appl. No. 19/474,664 Office Action dated Sep. 23, 2002.
U.S. Appl. No. 19/474,664 Amendment and Response dated Feb. 24, 2003.
U.S. Appl. No. 19/474,664 Notice of Allowance dated May 20, 2003.
U.S. Appl. No. 90/010,356 Request for Ex Parte Reexamination dated Dec. 15, 2008.
U.S. Appl. No. 90/010,356 Office Action Granting Reexamination dated Jan. 17, 2009.
U.S. Appl. No. 90/010,356 First Office Action dated Jul. 7, 2009.
U.S. Appl. No. 90/010,356 First Office Action Response dated Sep. 1, 2009.
U.S. Appl. No. 90/010,356 Patent Owner Interview Summary dated Oct. 23, 2009.
U.S. Appl. No. 90/010,356 Office Action Final dated Dec. 4, 2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Dec. 18, 2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Jan. 4, 2010.
U.S. Appl. No. 90/010,356 Advisory Action dated Jan. 21, 2010.
U.S. Appl. No. 90/010,356 Amendment and Response to Advisory Action dated Feb. 8, 2010.
U.S. Appl. No. 90/010,356 Notice of Intent to Issue a Reexam Certificate dated Mar. 2, 2010.
U.S. Appl. No. 90/010,356 Reexamination Certificate Issued dated Jun. 22, 2010.
U.S. Appl. No. 95/000,659 Inter Partes Reexam Request dated Feb. 13, 2012.
U.S. Appl. No. 95/000,659 Order Granting Reexamination dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action Response dated Jun. 4, 2012 (including Exhibits 1 & 2) (4 documents).
U.S. Appl. No. 95/000,659 Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012.
U.S. Appl. No. 95/000,659 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Declaration of Prof. Dr. Bernhard Plattner).
U.S. Appl. No. 95/000,659 Appendix R-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Prof. Dr. Bernhard Plattner CV).
U.S. Appl. No. 95/000,659 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).
U.S. Appl. No. 95/000,659 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012(Office Action Granting Reexamination in U.S. Appl. No. 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,659 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Office Action in U.S. Appl. No. 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,659 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc. USPN 6,629,163 Claims Chart).
U.S. Appl. No. 95/000,659 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).

(56) **References Cited**

OTHER PUBLICATIONS

U.S. Appl. No. 95/000,659 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).

U.S. Appl. No. 95/000,659 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Claim Construction Order dated Feb. 29, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. I of Edward Balassanian Deposition Transcript dated May 30, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. II of Edward Balassanian Deposition Transcript dated May 31, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. III of Edward Balassanian Deposition Transcript dated Jun. 7, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. IV of Edward Balassanian Deposition Transcript dated Jun. 8, 2012).

U.S. Appl. No. 95/000,659 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).

U.S. Appl. No. 95/000,659 Action Closing Prosecution dated Oct. 1, 2012.

U.S. Appl. No. 95/000,659 Petition to Withdraw and Reissue Action Closing Prosecution dated Nov. 20, 2012.

U.S. Appl. No. 95/000,659 Patent Owner Comments to Action Closing Prosecution dated Dec. 3, 2012.

U.S. Appl. No. 95/000,659 Opposition to Petition dated Dec. 17, 2012.

U.S. Appl. No. 95/000,659 Third Party Comments to Action Closing Prosecution dated Jan. 2, 2013.

U.S. Appl. No. 95/000,660 Inter Partes Reexam Request dated Mar. 2, 2012.

U.S. Appl. No. 95/000,660 Order Granting Reexamination dated May 10, 2012.

U.S. Appl. No. 95/000,660 Office Action dated May 10, 2012.

U.S. Appl. No. 95/000,660 Response to Office Action dated Jul. 10, 2012 (including Exhibits 1 and 2).

U.S. Appl. No. 95/000,660 Third Party Comments to Office After Patent Owner's Response dated Aug. 8, 2012 (including Revised Comments).

U.S. Appl. No. 95/000,660 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Declaration of Prof. Dr. Bernhard Plattner).

U.S. Appl. No. 95/000,660 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Prof. Dr. Bernhard Plattner CV).

U.S. Appl. No. 95/000,660 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).

U.S. Appl. No. 95/000,660 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Office Action Granting Reexamination in U.S. Appl. No. 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,660 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Office Action in U.S. Appl. No. 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,660 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Implicit Networks, Inc. USPN 6,629,163 Claims Chart).

U.S. Appl. No. 95/000,660 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).

U.S. Appl. No. 95/000,660 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).

U.S. Appl. No. 95/000,660 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Claim Construction Order dated Feb. 29, 2012).

U.S. Appl. No. 95/000,660 Appendix R-10 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (vol. I-IV of Edward Balassanian Deposition Transcript dated May 30, 2012).

U.S. Appl. No. 95/000,660 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 3173 Sep. 2001).

U.S. Appl. No. 95/000,660 Appendix R-12 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 2393 Dec. 1998).

U.S. Appl. No. 95/000,660 Appendix R-13 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 ('163 Pfeiffer Claim Chart).

U.S. Appl. No. 95/000,660 Appendix R-14 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Ylonen, T., "*SSH Transport Layer Protocol*", Network Working Group—Draft Feb. 22, 1999).

U.S. Appl. No. 95/000,660 Appendix R-15 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Dommety, G., "*Key and Sequence Number Extensions to GRE*", Network Working Group, RFC 2890 Sep. 2000).

U.S. Appl. No. 95/000,660 Appendix R-16 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Monsour, R., et al, "*Compression in IP Security*" Mar. 1997).

U.S. Appl. No. 95/000,660 Appendix R-17 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Friend, R., Internet Working Group RFC 3943 dated Nov. 2004 *Transport Layer Security Protocol Compression Using Lempel-Ziv-Stac*).

U.S. Appl. No. 95/000,660 Appendix R-18 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).

U.S. Appl. No. 95/000,660 Revised—Third Party Comments to Office After Patent Owner's Response dated Nov. 2, 2012.

U.S. Appl. No. 95/000,660 Action Closing Prosecution dated Dec. 21, 2012.

U.S. Appl. No. 95/000,660 Comments to Action Closing Prosecution dated Feb. 21, 2013 (including Dec of Dr. Ng).

U.S. Appl. No. 95/000,660 Third Party Comments to Action Closing Prosecution dated Mar. 25, 2013.

PCT/US00/33634—PCT application (WO 01/2077 A2—Jul. 12, 2001).

PCT/US00/33634—Written Opinion (WO 01/50277 A3—Feb. 14, 2002).

PCT/US00/33634—International Search Report (Oct. 9, 2001).

PCT/US00/33634—Response to Official Communication dated Dec. 7, 2001 (Mar. 21, 2002).

PCT/US00/33634—International Preliminary Examination Report (Apr. 8, 2002).

PCT/US00/33634—Official Communication (Jan. 24, 2003).

PCT/US00/33634—Response to Official Communication dated Jan. 24, 2003 (Mar. 12, 2003).

PCT/US00/33634—Official Communication (May 13, 2004).

PCT/US00/33634—Response to Summons to Attend Oral Proceeding dated May 13, 2004 (Oct. 9, 2004).

PCT/US00/33634—Decision to Refuse a European Patent application (Nov. 12, 2004).

PCT/US00/33634—Minutes of the oral proceedings before the Examining Division (Oct. 12, 2004).

Case: 20-1362 Document: 17 Page: 96 Filed: 05/18/2020



(56) **References Cited**

OTHER PUBLICATIONS

PCT/US00/33634—Closure of the procedure in respect to Application No. 00984234.5-2212 (Feb. 22, 2005).
May 3, 2013 Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Patent Nos. 6,877,006; 7,167,864; 7,720,861; and 8,082,268 (6 documents).
Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Patent No. 7,167,864 (3 documents).
"InfoReports User Guide: Version 3.3.1;" Platinum Technology, Publication No. PRO-X-331-UG00-00, printed Apr. 1998; pp. 1-430.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,659 issued Aug. 16, 2013, 107 pages.
Decision on Petition in Reexamination Control No. 951000,659 issued Aug. 19, 2013, 3 pages.
Response to Non-Final Office Action in Reexamination Control No. 95/000,659 mailed Oct. 2, 2013 including Exhibits A-C, 37 pages.
Decision on Petition in Reexamination Control No. 95/000,660 issued Jul. 30, 2013, 12 pages.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,660 issued Aug. 30, 2013, 23 pages.

* cited by examiner


101
102
103
104
150
DRIVER
MESSAGE SEND
DEMUX
LABELMAP GET
149
QUEUE
105
THREAD
106
151
MESSAGE SEND
107
152
MESSAGE SEND
108
153
MESSAGE SEND
109
110
111
MESSAGE SEND
DEMUX
LABELMAP GET
154
114
155
MESSAGE SEND

*Fig. 1*


P1
P2
P3
P4
D1
1
D2
D1
2
D3
D2
1
D5
D9
1
D12
D10
2
D13
D15
1
NULL

*Fig. 2*


300
MEMORY 303
304
DRIVERS
305
FORWARDING COMPONENT
306
DEMUX COMPONENT
307
LABEL MAP GET COMPONENT
308
PATH DATA STRUCTURES
309
CONVERSION ROUTINES
310
INSTANCE DATA
CPU 301
I/O 302

*Fig. 3*

Case: 20-1362 Document: 17 Page: 99 Filed: 05/18/2020






*Fig. 4*



Map
507
OutputLabel
TargetLabel
TargetKey
MessageQueue
502
505
PathEntry
pPath
pMap
multiplayList
pAddress
Member
MultiplayList
508
PATH
501
MessageQueue
StackList
pAddress
StackList
pPathEntry
503
PathEntry
505
Member
509
Binding
StackListEntry
PathListEntry
AddressEntry
Address
504
URL
Name
BindingList
CurrentBinding
BindingList
506
pBinding
Binding
510
pSession
Key
PathList
ActivePaths
pEdge
Binding
511


*Fig. 5*


session
601
Context
pProtocol
pBindingTable
pKey
BindingTable
602
pBinding
Binding
510
pSession
key
ActivePaths
PathList
pEdge
Binding
510
Binding
510
PathList
603
pPathEntry
PathEntry
505
PathEntry
505

*Fig. 6*


MessageSend
(Message, PathEntry)
701
list = PathEntry --> Multiplex List
YES
09
NO
702
PathEntry --> Member
NO
703
PatnEntry --> Path
YES
704
position = PathEntry --> Member --> StackListEntry
703A
nextEntry = List Head Data (pathEntry --> Path --> StackList)
NO
05
705
NextEntry = ListNextData (position)
YES
17
NO
706
retVal = nextEntry --> Member --> Binding --> Edge --> MessageHandler (Message, nextEntry)
List = Demux (Message, PathEntry --> Address, PathEntry
707
708
NO
list
YES
09
Return (retval)

Fig. 7A


09
710
Select next Candidate path in List
711
NextEntry
NO
Return (True)
YES
712
NextEntry = = PathEntry
YES
05
NO
713
Number of Candidate Path > 1
NO
17
YES
714
PathEntry --> MultiplayList
NO
715
PathEntry --> MultiplayList = List
YES
716
MessageSend (Message, nextEntry)

*Fig. 7B*


17
717
NextEntry --> Path
NO
YES
718
QueueMessage (Message, NextEntry)
Return

*Fig. 7C*


Demux
Message
Address
PathEntry
801
Initialize Demux
802
Status
NO
YES
803
Get Next Binding
804
return status
Break
multiple
binding
805
nailed
YES
NO
806
Get Key
807
return status
next binding
continued
808
Get Session
809
Nail Binding
810
return status
other
simplex
811
Find Path
812
Process Path Hopping
return

Fig. 8


Initialize Demux
Map PathEntry --> Map
901
message = Message path = null address Elem = null
902
savedStatus = 0 Status = demux Continue
903
PathEntry --> Path
904
YES
status = PathEntry --> Path --> Status
905
NO
Status
906
demux Extend
demux continue
demux End
pathAddress = Address
907
InitEnd
908
path Address = pathEntry --> Path --> Address
909
addressElem = pathAddress --> CurrentBinding = pathEntry --> Member --> AddressEntry
910
status = demux Continue binding List = pathAddress --> BindingList
911
CurrentBinding = &pathAddress --> CurrentBinding postpone = 0
912
traverse = ListDataNext session = Null
913
Return

*Fig. 9*

Case: 20-1362 Document: 17 Page: 106 Filed: 05/18/2020






*Fig. 10*


GetNext Binding
1101
binding = traverse (BindingList, currentBinding)
1102
binding
YES
Return (binding)
NO
1103
trailList = LabelMapGet (map --> Output Label, map --> Target Label)
1104
size of trailList
= 1
> 1
1105
currentBinding = ListTail (bindingList) Data
1106
tmpTrail = ListHeadRemove (trailList)
1107
Address Extend (pathAddress, tmpTrail)
1108
binding = ListTail Data (binding List)
1109
!binding -> Key && map -> Target key
NO
YES
1110
binding --> Key = map --> Target key
1111
map --> Target key = Null
1112
session
YES
NO
1113
returnList = Prepare Multicast Paths (trailList, map)
Return (multiple)
Return (break)

*Fig. 11*


Get Key
edge = binding --> Edge
Edge protocol = edge --> Protocol
1201
Status = edge --> DemuxKey (message, pathAddress, map)
1202
status
1203
remove
binding --> Flags 1 = Binding-Remove
1204
postpone
traverse = ListDataNext
postpone++
1205
Return (next binding)
other
postpone
1206
NO
YES
traverse = ListDataNext
1211
postpone --
traverse = ListDataPrev
1207
saved status
1212
NO
YES
status = saved status
savedstatus = 0
1213
savedStatus = Status
1209
saved status
1208
NO
YES
status = demux continue
1210
binding -> Flags & Binding Remove
1214
NO
Return (continue)
YES
Return (next binding)

Fig. 12


Get Session
session = TableGet (protocol -> SessionTable, & binding -> key)
1301
1302
session
YES
Return
NO
session = CreateSession (protocol)
1303
session --> key = LabelReference (binding --> key)
1304
Table Put (protocol -> sessionTable & session -> key session
1305
protocol --> CreateSession (session)
1306
Return

*Fig. 13*


Nail Binding
1401
session --> BindingTable [edge --> EdgeId]
NO
YES
1405
binding --> session = session
1406
binding --> key = Label Reference (session --> key)
1407
session --> BindingTable [edge --> EdgeId] = binding
1402
binding = session --> BindingTable [edge --> EdgeID]
1403
ListDataSet (*currentBinding, binding)
1404
binding -> flags = = simplex
YES
NO
Return (simplex)
return
1408
binding --> Edge --> CreateBinding (binding)
remove
1409
binding --> Flag 1 = Binding - Remove
continue
return

*Fig. 14*

Case: 20-1362 Document: 17 Page: 111 Filed: 05/18/2020






*Fig. 15*


Process Path Hopping
1601
PathEntry --> Path
NO
YES
1610
PathEntry -> Path = path
1611
entry = ListHeadData (path -> StackList)
1602
PathEntry -> Path = = path
YES
NO
1603
oldStack = PathEntry -> Path -> stacklist
1604
newStack = path -> StackList
1605
oldElm = ListNext (oldStack, Null)
1606
elem = ListNext (NewStack, Null)
1607
oldEntry = ListDataNext (oldstack, &oldelem) && entry = ListDataNext (newStack, & elem) && entry --> Member --> Binding == oldEntry Member --> Binding
YES
NO
1608
oldentry
YES
NO
1609
entry = ListDataPrev (newStack, & elem)
1612
ListHeadInsert (returnList, Entry)
Return (return list)

*Fig. 16*

# METHOD AND SYSTEM FOR DATA DEMULTIPLEXING

## CROSS REFERENCES TO RELATED APPLICATIONS

The present application is a continuation of U.S. application Ser. No. 13/236,090, filed Sep. 19, 2011, which is a continuation of U.S. application Ser. No. 10/636,314, filed Aug. 6, 2003 (now U.S. Pat. No. 8,055,786), which is a continuation of U.S. application Ser. No. 09/474,664, filed Dec. 29, 1999 (now U.S. Pat. No. 6,629,163); the disclosures of each of the above-referenced applications are incorporated by reference herein in their entireties.

## TECHNICAL FIELD

The present invention relates generally to a computer system for data demultiplexing.

## BACKGROUND

Computer systems, which are becoming increasingly pervasive, generate data in a wide variety of formats. The Internet is an example of interconnected computer systems that generate data in many different formats. Indeed, when data is generated on one computer system and is transmitted to another computer system to be displayed, the data may be converted in many different intermediate formats before it is eventually displayed. For example, the generating computer system may initially store the data in a bitmap format. To send the data to another computer system, the computer system may first compress the bitmap data and then encrypt the compressed data. The computer system may then convert that compressed data into a TCP format and then into an IP format. The IP formatted data may be converted into a transmission format, such as an ethernet format. The data in the transmission format is then sent to a receiving computer system. The receiving computer system would need to perform each of these conversions in reverse order to convert the data in the bitmap format. In addition, the receiving computer system may need to convert the bitmap data into a format that is appropriate for rendering on output device.

In order to process data in such a wide variety of formats, both sending and receiving computer systems need to have many conversion routines available to support the various formats. These computer systems typically use predefined configuration information to load the correct combination of conversion routines for processing data. These computer systems also use a process-oriented approach when processing data with these conversion routines. When using a process-oriented approach, a computer system may create a separate process for each conversion that needs to take place. A computer system in certain situations, however, can be expected to receive data and to provide data in many different formats that may not be known until the data is received. The overhead of statically providing each possible series of conversion routines is very high. For example, a computer system that serves as a central controller for data received within a home would be expected to process data received via telephone lines, cable TV lines, and satellite connections in many different formats. The central controller would be expected to output the data to computer displays, television displays, entertainment centers, speakers, recording devices, and so on in many different formats. Moreover, since the various conversion routines may be developed by different organizations, it may not be easy to identify that the output format of one conversion routine is compatible with the input format of another conversion routine.



It would be desirable to have a technique for dynamically identifying a series of conversion routines for processing data. In addition, it would be desirable to have a technique in which the output format of one conversion routine can be identified as being compatible with the input format of another conversion routine. It would also be desirable to store the identification of a series of conversion routines so that the series can be quickly identified when data is received.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a block diagram illustrating example processing of a message by the conversion system.

FIG. **2** is a block diagram illustrating a sequence of edges.

FIG. **3** is a block diagram illustrating components of the conversion system in one embodiment.

FIG. **4** is a block diagram illustrating example path data structures in one embodiment.

FIG. **5** is a block diagram that illustrates the interrelationship of the data structures of a path.

FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session.

FIGS. **7**A, **7**B, and **7**C comprise a flow diagram illustrating the processing of the message send routine.

FIG. **8** is a flow diagram of the demux routine.

FIG. **9** is a flow diagram of the initialize demux routine.

FIG. **10** is a flow diagram of the init end routine.

FIG. **11** is a flow diagram of a routine to get the next binding.

FIG. **12** is a flow diagram of the get key routine.

FIG. **13** is a flow diagram of the get session routine.

FIG. **14** is a flow diagram of the nail binding routine.

FIG. **15** is a flow diagram of the find path routine.

FIG. **16** is a flow diagram of the process of path hopping routine.

## DETAILED DESCRIPTION

A method and system for converting a message that may contain multiple packets from an source format into a target format. When a packet of a message is received, the conversion system in one embodiment searches for and identifies a sequence of conversion routines (or more generally message handlers) for processing the packets of the message by comparing the input and output formats of the conversion routines. (A message is a collection of data that is related in some way, such as stream of video or audio data or an email message.) The identified sequence of conversion routines is used to convert the message from the source format to the target format using various intermediate formats. The conversion system then queues the packet for processing by the identified sequence of conversion routines. The conversion system stores the identified sequence so that the sequence can be quickly found (without searching) when the next packet in the message is received. When subsequent packets of the message are received, the conversion system identifies the sequence and queues the packets for pressing by the sequence. Because the conversion system receives multiple messages with different source and target formats and identifies a sequence of conversion routines for each message, the conversion systems effectively "demultiplexes" the messages. That is, the conversion system demultiplexes the messages by receiving the message, identifying the sequence of conversion routines, and controlling the processing of each

message by the identified sequence. Moreover, since the conversion routines may need to retain state information between the receipt of one packet of a message and the next packet of that message, the conversion system maintains state information as an instance or session of the conversion routine. The conversion system routes all packets for a message through the same session of each conversion routine so that the same state or instance information can be used by all packets of the message. A sequence of sessions of conversion routines is referred to as a "path." In one embodiment, each path has a path thread associated with it for processing of each packet destined for that path.

In one embodiment, the packets of the messages are initially received by "drivers," such as an Ethernet driver. When a driver receives a packet, it forwards the packet to a forwarding component of the conversion system. The forwarding component is responsible for identifying the session of the conversion routine that should next process the packet and invoking that conversion routine. When invoked by a driver, the forwarding component may use a demultiplexing ("demux") component to identify the session of the first conversion routine of the path that is to process the packet and then queues the packet for processing by the path. A path thread is associated with each path. Each path thread is responsible for retrieving packets from the queue of its path and forwarding the packets to the forwarding component. When the forwarding component is invoked by a path thread, it initially invokes the first conversion routine in the path. That conversion routine processes the packet and forwards the processed packet to the forwarding component, which then invokes the second conversion routine in the path. The process of invoking the conversion routines and forwarding the processed packet to the next conversion routine continues until the last conversion routine in the path is invoked. A conversion routine may defer invocation of the forwarding component until it aggregates multiple packets or may invoke the forwarding component multiple times for a packet once for each sub-packet.

The forwarding component identifies the next conversion routine in the path using the demux component and stores that identification so that the forwarding component can quickly identify the conversion routine when subsequent packets of the same message are received. The demux component, searches for the conversion routine and session that is to next process a packet. The demux component then stores the identification of the session and conversion routine as part of a path data structure so that the conversion system does not need to search for the session and conversion routine when requested to demultiplex subsequent packets of the same message. When searching for the next conversion routine, the demux component invokes a label map get component that identifies the next conversion routine. Once the conversion routine is found, the demux component identifies the session associated with that message by, in one embodiment, invoking code associated with the conversion routine. In general, the code of the conversion routine determines what session should be associated with a message. In certain situations, multiple messages may share the same session. The demux component then extends the path for processing that packet to include that session and conversion routine. The sessions are identified so that each packet is associated with the appropriate state information. The dynamic identification of conversion routines is described in U.S. patent application Ser. No. 11,933,093, filed on Oct. 31, 2007 (now U.S. Pat. No. 7,730, 211), entitled "Method and System for Generating a Mapping Between Types of Data," which is hereby incorporated by reference.

FIG. **1** is a block diagram illustrating example processing of a message by the conversion system. The driver **101** receives the packets of the message from a network. The driver performs any appropriate processing of the packet and invokes a message send routine passing the processed packet along with a reference path entry **150**. The message send routine is an embodiment of the forwarding component. A path is represented by a series of path entries, which are represented by triangles. Each member path entry represents a session and conversion routine of the path, and a reference path entry represents the overall path. The passed reference path entry **150** indicates to the message send routine that it is being invoked by a driver. The message send routine invokes the demux routine **102** to search for and identify the path of sessions that is to process the packet. The demux routine may in tum invoke the label map get routine **104** to identify a sequence of conversion routines for processing the packet. In this example, the label map get routine identifies the first three conversion routines, and the demux routine creates the member path entries **151**, **152**, **153** of the path for these conversion routines. Each path entry identifies a session for a conversion routine, and the sequence of path entries **151-155** identifies a path. The message send routine then queues the packet on the queue **149** for the path that is to process the packets of the message. The path thread **105** for the path retrieves the packet from the queue and invokes the message send routine **106** passing the packet and an indication of the path. The message send routine determines that the next session and conversion routine as indicated by path entry **151** has already been found. The message send routine then invokes the instance of the conversion routine for the session. The conversion routine processes the packet and then invokes the message send routine **107**. This processing continues until the message send routine invokes the demux routine **110** after the packet is processed by the conversion routine represented by path entry **153**. The demux routine examines the path and determines that it has no more path entries. The demux routine then invokes the label map get routine **111** to identify the conversion routines for further processing of the packet. When the conversion routines are identified, the demux routine adds path entries **154**, **155** to the path. The messages send routine invokes the conversion routine associated with path entry **154**. Eventually, the conversion routine associated with path entry **155** performs the final processing for the path.

The label map get routine identifies a sequence of "edges" for converting data in one format into another format. Each edge corresponds to a conversion routine for converting data from one format to another. Each edge is part of a "protocol" (or more generally a component) that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has an input format and an output format. The label map get routine identifies a sequence of edges such that the output format of each edge is compatible with the input format of another edge in the sequence, except for the input format of the first edge in the sequence and the output format of the last edge in the sequence. FIG. **2** is a block diagram illustrating a sequence of edges. Protocol PI includes an edge for converting format D1 to format D2 and an edge for converting format D1 to format D3; protocol P2 includes an edge for converting format D2 to format D5, and so on. A 30 sequence for converting format D 1 to format D 15 is shown by the curved lines and is defined by the address "P1:I, P2:1, P3:2, P4:7." When a packet of data in format D I is processed by this sequence, it is converted to format DIS. During the process, the packet of data is sequentially converted to format D2, D5, and D13. The output format of protocol P2, edge 1

(i.e., P2:1) is format D5, but the input format of P3:2 is format D10. The label map get routine uses an aliasing mechanism by which two formats, such as D5 and D10 are identified as being compatible. The use of aliasing allows different names of the same format or compatible formats to be correlated.

FIG. **3** is a block diagram illustrating components of the conversion system in one embodiment. The conversion system **300** can operate on a computer system with a central processing unit **301**, I/O devices **302**, and memory **303**. The **110** devices may include an Internet connection, a connection to various output devices such as a television, and a connection to various input devices such as a television receiver. The media mapping system may be stored as instructions on a computer-readable medium, such as a disk drive, memory, or data transmission medium. The data structures of the media mapping system may also be stored on a computer-readable medium. The conversion system includes drivers **304**, a forwarding component **305**, a demux component **306**, a label map get component **307**, path data structures **308**, conversion routines **309**, and instance data **310**. Each driver receives data in a source format and forwards the data to the forwarding component. The forwarding component identifies the next conversion routine in the path and invokes that conversion routine to process a packet. The forwarding component may invoke the demux component to search for the next conversion routine and add that conversion routine to the path. The demux component may invoke the label map get component to identify the next conversion routine to process the packet. The demux component stores information defining the paths in the path structures. The conversion routines store their state information in the instance data.

FIG. **4** is a block diagram illustrating example path data structures in one embodiment. The demux component identifies a sequence of "edges" for converting data in one format into another format by invoking the label map get component. Each edge corresponds to a conversion routine for converting data from one format to another. As discussed above, each edge is part of a "protocol" that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has as an input format ("input label") and an output format ("output label"). Each rectangle represents a session **410**, **420**, **430**, **440**, **450** for a protocol. A session corresponds to an instance of a protocol. That is, the session includes the protocol and state information associated with that instance of the protocol. Session **410** corresponds to a session for an Ethernet protocol; session **420** corresponds to a session for an IP protocol; and sessions **430**, **440**, **450** correspond to sessions for a TCP protocol. FIG. **4** illustrates three paths **461**, **462**, **463**. Each path includes edges **411**, **421**, **431**. The paths share the same Ethernet session **410** and IP session **420**, but each path has a unique TCP session **430**, **440**, **450**. Thus, path **461** includes sessions **410**, **420**, and **430**; path **462** includes sessions **410**, **420**, and **440**; and path **463** includes sessions **410**, **420**, and **450**. The conversion system represents each path by a sequence of path entry structures. Each path entry structure is represented by a triangle. Thus, path **461** is represented by path entries **415**, **425**, and **433**. The conversion system represents the path entries of a path by a stack list. Each path also has a queue **471**, **472**, **473** associated with it. Each queue stores the messages that are to be processed by the conversion routines of the edges of the path. Each session includes a binding **412**, **422**, **432**, **442**, **452** that is represented by an oblong shape adjacent to the corresponding edge. A binding for an edge of a session represents those paths that include the edge. The binding **412** indicates that three paths are bound (or "nailed") to edge **411** of the Ethernet session **410**. The conversion system uses a path list to track the paths that are bound to a binding. The path list of binding **412** identifies path entries **413**, **414**, and **415**.

FIG. **5** is a block diagram that illustrates the interrelationship of the data structures of a path. Each path has a corresponding path structure **501** that contains status information and pointers to a message queue structure **502**, a stack list structure **503**, and a path address structure **504**. The status of a path can be extend, continue, or end. Each message handler returns a status for the path. The status of extend means that additional path entries should be added to the path. The status of end means that this path should end at this point and subsequent processing should continue at a new path. The status of continue means that the protocol does not care how the path is handled. In one embodiment, when a path has a status of continue, the system creates a copy of the path and extends the copy. The message queue structure identifies the messages (or packets of a message) that are queued up for processing by the path and identifies the path entry at where the processing should start. The stack list structure contains a list of pointers to the path entry structures **505** that comprise the path. Each path entry structure contains a pointer to the corresponding path data structure, a pointer to a map structure **507**, a pointer to a multiplex list **508**, a pointer to the corresponding path address structure, and a pointer to a member structure **509**. A map structure identifies the output label of the edge of the path entry and optionally a target label and a target key. A target key identifies the session associated with the protocol that converts the packet to the target label. (The terms "media," "label," and "format" are used interchangeably to refer to the output of a protocol.) The multiplex list is used during the demux process to track possible next edges when a path is being identified as having more than one next edge. The member structure indicates that the path entry represents an edge of a path and contains a pointer to a binding structure to which the path entry is associated (or "nailed"), a stack list entry is the position of the path entry within the associated stack list, a path list entry is the position of the path entry within the associated path list of a binding and an address entry is the position of the binding within the associated path address. A path address of a path identifies the bindings to which the path entries are bound. The path address structure contains a URL for the path, the name of the path identified by the address, a pointer to a binding list structure **506**, and the identification of the current binding within the binding list. The URL (e.g., "protocol://tcp(0)/ip(0)/eth(0)") identifies conversion routines (e.g., protocols and edges) of a path in a human-readable format. The URL (universal resource locator) includes a type field (e.g., "protocol") followed by a sequence of items (e.g.,"tcp(0)"). The type field specifies the format of the following information in the URL, that specifies that the type field is followed by a sequence of items. Each item identifies a protocol and an edge (e.g., the protocol is "tcp" and the edge is "0"). In one embodiment, the items of a URL may also contain an identifier of state information that is to be used when processing a message. These URLs can be used to illustrate to a user various paths that are available for processing a message. The current binding is the last binding in the path as the path is being built. The binding list structure contains a list of pointers to the binding structures associated with the path. Each binding structure **510** contains a pointer to a session structure, a pointer to an edge structure, a key, a path list structure, and a list of active paths through the binding. The key identifies the state information for a session of a protocol. A path list structure contains pointers to the path entry structures associated with the binding.

FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session. A session structure **601** contains the context for the session, a pointer to a protocol structure for the session, a pointer to a binding table structure **602** for the bindings associated with the session, and the key. The binding table structure contains a list of pointers to the binding structures **510** for the session. The binding structure is described above with reference to FIG. **5**. The path list structure **603** of the binding structure contains a list of pointers to path entry structures **505**. The path entry structures are described with reference to FIG. **5**.

FIGS. **7**A, **7**B, and **7**C comprise a flow diagram illustrating the processing of the message send routine. The message send routine is passed a message along with the path entry associated with the session that last processed the message. The message send routine invokes the message handler of the next edge in the path or queues the message for processing by a path. The message handler invokes the demux routine to identify the next path entry of the path. When a driver receives a message, it invokes the message send routine passing a reference path entry. The message send routine examines the passed path entry to determine (1) whether multiple paths branch from the path of the passed path entry, (2) whether the passed path entry is a reference with an associated path, or (3) whether the passed path entry is a member with a next path entry. If multiple paths branch from the path of the passed path entry, then the routine recursively invokes the message send routine for each path. If the path entry is a reference with an associated path, then the driver previously invoked the message send routine, which associated a path with the reference path entry, and the routine places the message on the queue for the path. If the passed path entry is a member with a next path entry, then the routine invokes the message handler (i.e., conversion routine of the edge) associated with the next path entry. If the passed path entry is a reference without an associated path or is a member without a next path entry, then the routine invokes the demux routine to identify the next path entry. The routine then recursively invokes the messages send routine passing that next path entry. In decision block **701**, if the passed path entry has a multiplex list, then the path branches off into multiple paths and the routine continues at block **709**, else the routine continues at block **702**. A packet may be processed by several different paths. For example, if a certain message is directed to two different output devices, then the message is processed by two different paths. Also, a message may need to be processed by multiple partial paths when searching for a complete path. In decision block **702**, if the passed path entry is a member, then either the next path entry indicates a nailed binding or the path needs to be extended and the routine continues at block **704**, else the routine continues at block **703**. A nailed binding is a binding (e.g., edge and protocol) is associated with a session. In decision block **703**, the passed path entry is a reference and if the passed path entry has an associated path, then the routine can queue the message for the associated path and the routine continues at block **703**A, else the routine needs to identify a path and the routine continues at block **707**. In block **703**A, the routine sets the entry to the first path entry in the path and continues at block **717**. In block **704**, the routine sets the variable position to the stack list entry of the passed path entry. In decision block **705**, the routine sets the variable next entry to the next path entry in the path. If there is a next entry in the path, then the next session and edge of the protocol have been identified and the routine continues at block **706**, else the routine continues at block **707**. In block **706**, the routine passes the message to the message handler of the edge associated with the next entry and then returns. In block **706**, the routine invokes the demux routine passing the passed message, the address of the passed path entry, and the passed path entry. The demux routine returns a list of candidate paths for processing of the message. In decision block **708**, if at least one candidate path is returned, then the routine continues at block **709**, else the routine returns.

Blocks **709-716** illustrate the processing of a list of candidate paths that extend from the passed path entry. In blocks **710-716**, the routine loops selecting each candidate path and sending the message to be process by each candidate path. In block **710**, the routine sets the next entry to the first path entry of the next candidate path. In decision block **711**, if all the candidate paths have not yet been processed, then the routine continues at block **712**, else the routine returns. In decision block **712**, if the next entry is equal to the passed path entry, then the path is to be extended and the routine continues at block **705**, else the routine continues at block **713**. The candidate paths include a first path entry that is a reference path entry for new paths or that is the last path entry of a path being extended. In decision block **713**, if the number of candidate paths is greater than one, then the routine continues at block **714**, else the routine continues at block **718**. In decision block **714**, if the passed path entry has a multiplex list associated with it, then the routine continues at block **716**, else the routine continues at block **715**. In block **715**, **11** the routine associates the list of candidate path with the multiplex list of the passed path entry and continues at block **716**. In block **716**, the routine sends the message to the next entry by recursively invoking the message send routine. The routine then loops to block **710** to select the next entry associated with the next candidate path.

Blocks **717-718** are performed when the passed path entry is a reference path entry that has a path associated with it. In block **717**, if there is a path associated with the next entry, then the routine continues at block **718**, else the routine returns. In block **718**, the routine queues the message for the path of the next entry and then returns.

FIG. **8** is a flow diagram of the demux routine. This routine is passed the packet (message) that is received, an address structure, and a path entry structure. The demux routine extends a path, creating one if necessary. The routine loops identifying the next binding (edge and protocol) that is to process the message and “nailing” the binding to a session for the message, if not already nailed. After identifying the nailed binding, the routine searches for the shortest path through the nailed binding, creating a path if none exists. In block **801**, the routine invokes the initialize demux routine. In blocks **802-810**, the routine loops identifying a path or portion of a path for processing the passed message. In decision block **802**, if there is a current status, which was returned by the demuxkey routine that was last invoked (e.g., continue, extend, end, or postpone), then the routine continues at block **803**, else the routine continues at block **811**. In block **803**, the routine invokes the get next binding routine. The get next binding routine returns the next binding in the path. The binding is the edge of a protocol. That routine extends the path as appropriate to include the binding. The routine returns a return status of break, binding, or multiple. The return status of binding indicates that the next binding in the path was found by extending the path as appropriate and the routine continues to “nail” the binding to a session as appropriate. The return status of multiple means that multiple trails (e.g., candidate paths) were identified as possible extensions of the path. In a decision block **804**, if the return status is break, then the routine continues at block **811**. If the return status is multiple, then the routine returns. If the return status is binding, then the routine continues at block **805**. In decision block **805**, if the

retrieved binding is nailed as indicated by being assigned to a session, then the routine loops to block **802**, else the routine continues at block **806**. In block **806**, the routine invokes the get key routine of the edge associated with the binding. The get key routine creates the key for the session associated with the message. If a key cannot be created until subsequent bindings are processed or because the current binding is to be removed, then the get key routine returns a next binding status, else it returns a continue status. In decision block **807**, if the return status of the get key routine is next binding, then the routine loops to block **802** to get the next binding, else the routine continues at block **808**. In block **808**, the routine invokes the routine get session. The routine get session returns the session associated with the key, creating a new session if necessary. In block **809**, the routine invokes the routine nail binding. The routine nail binding retrieves the binding if one is already nailed to the session. Otherwise, that routine nails the binding to the session. In decision block **810**, if the nail binding routine returns a status of simplex, then the routine continues at block **811** because only one path can use the session, else the routine loops to block **802**. Immediately upon return from the nail binding routine, the routine may invoke a set map routine of the edge passing the session and a map to allow the edge to set its map. In block **811**, the routine invokes the find path routine, which finds the shortest path through the binding list and creates a path if necessary. In block **812**, the routine invokes the process path hopping routine, which determines whether the identified path is part of a different path. Path hopping occurs when, for example, IP fragments are built up along separate paths, but once the fragments are built up they can be processed by the same subsequent path.

FIG. **9** is a flow diagram of the initialize demux routine. This routine is invoked to initialize the local data structures that are used in the demux process and to identify the initial binding. The demux routine finds the shortest path from the initial binding to the final binding. If the current status is demux extend, then the routine is to extend the path of the passed path entry by adding additional path entries. If the current status is demux end, then the demux routine is ending the current path. If the current status is demux continue, then the demux routine is in the process of continuing to extend or in the process of starting a path identified by the passed address. In block **901**, the routine sets the local map structure to the map structure in the passed path entry structure. The map structure identifies the output label, the target label, and the target key. In the block **902**, the routine initializes the local message structure to the passed message structure and initializes the pointers path and address element to null. In block **903**, the routine sets of the variable saved status to 0 and the variable status to demux continue. The variable saved status is used to track the status of the demux process when backtracking to nail a binding whose nail was postponed. In decision block **904**, if the passed path entry is associated with a path, then the routine continues at block **905**, else the routine continues at block **906**. In block **905**, the routine sets the variable status to the status of that path. In block **906**, if the variable status is demux continue, then the routine continues at block **907**. If the variable status is demux end, then the routine continues at block **908**. If the variable status is demux extend, then the routine continues at block **909**. In block **907**, the status is demux continue, and the routine sets the local pointer path address to the passed address and continues at block **911**. In block **908**, the status is demux end, and the routine invokes the init end routine and continues at block **911**. In block **909**, the status is demux extend, and the routine sets the local path address to the address of the path that contains the passed path entry. In block **910**, the routine sets the address element and the current binding of the path address pointed to by the local pointer path address to the address entry of the member structure of the passed path entry. In the block **911**, the routine sets the local variable status to demux continue and sets the local binding list structure to the binding list structure from the local path address structure. In block **912**, the routine sets the local pointer current binding to the address of the current binding pointed to by local pointer path address and sets the local variable postpone to 0. In block **913**, the routine sets the function traverse to the function that retrieves the next data in a list and sets the local pointer session to null. The routine then returns.

FIG. **10** is a flow diagram of the init end routine. If the path is simplex, then the routine creates a new path from where the other one ended, else the routine creates a copy of the path. In block **1001**, if the binding of the passed path entry is simplex (i.e., only one path can be bound to this binding), then the routine continues at block **1002**, else the routine continues at block **1003**. In block **1002**, the routine sets the local pointer path address to point to an address structure that is a copy of the address structure associated with the passed path entry structure with its current binding to the address entry associated with the passed path entry structure, and then returns. In block **1003**, the routine sets the local pointer path address to point to an address structure that contains the URL of the path that contains the passed path entry. In block **1004**, the routine sets the local pointer element to null to initialize the selection of the bindings. In blocks **1005** through **1007**, the routine loops adding all the bindings for the address of the passed path entry that include and are before the passed path entry to the address pointed to by the local path address. In block **1005**, the routine retrieves the next binding from the binding list starting with the first. If there is no such binding, then the routine returns, else the routine continues at block **1006**. In block **1006**, the routine adds the binding to the binding list of the local path address structure and sets the current binding of the local variable path address. In the block **1007**, if the local pointer element is equal to the address entry of the passed path entry, then the routine returns, else the routine loops to block **1005** to select the next binding.

FIG. **11** is a flow diagram of a routine to get the next binding. This routine returns the next binding from the local binding list. If there is no next binding, then the routine invokes the routine label map get to identify the list of edges ("trails") that will map the output label to the target label. If only one trail is identified, then the binding list of path address is extended by the edges of the trail. If multiple trails are identified, then a path is created for each trail and the routine returns so that the demux process can be invoked for each created path. In block **1101**, the routine sets the local pointer binding to point to the next or previous (as indicated by the traverse function) binding in the local binding list. In block **1102**, if a binding was found, then the routine returns an indication that a binding was found, else the routine continues at block **1103**. In block **1103**, the routine invokes the label map get function passing the output label and target label of the local map structure. The label map get function returns a trail list. A trail is a list of edges from the output label to the target label. In decision block **1104**, if the size of the trail list is one, then the routine continues at block **1105**, else the routine continues at block **1112**. In blocks **1105-1111**, the routine extends the binding list by adding a binding data structure for each edge in the trail. The routine then sets the local binding to the last binding in the binding list. In block **1108**, the routine sets the local pointer current binding to point to the last binding in the local binding list. In block

**1106**, the routine sets the local variable temp trail to the trail in the trail list. In block **1107**, the routine extends the binding list by temp trail by adding a binding for each edge in the trail. These bindings are not yet nailed. In block **1108**, the routine sets the local binding to point to the last binding in the local binding list. In decision block **1109**, if the local binding does not have a key for a session and the local map has a target key for a session, then the routine sets the key for the binding to the target key of the local map and continues at block **1110**, else the routine loops to block **1101** to retrieve the next binding in path. In block **1110**, the routine sets the key of the local binding to the target key of the local map. In block **1111**, the routine sets the target key of the local map to null and then loop to block **1101** to return the next binding. In decision block **1112**, if the local session is set, then the demultiplexing is already in progress and the routine returns a break status. In block **1113**, the routine invokes a prepare multicast paths routine to prepare a path entry for each trail in the trail list. The routine then returns a multiple status.

FIG. **12** is a flow diagram of the get key routine. The get key routine invokes an edge's demuxkey routine to retrieve a key for the session associated with the message. The key identifies the session of a protocol. The demux key routine creates the appropriate key for the message. The demux key routine returns a status of remove, postpone, or other. The status of remove indicates that the current binding should be removed from the path. The status of postpone indicates that the demux key routine cannot create the key because it needs information provided by subsequent protocols in the path. For example, a TCP session is defined by a combination of a remote and local port address and an IP address. Thus, the TCP protocol postpones the creating of a key until the IP protocol identifies the IP address. The get key routine returns a next binding status to continue at the next binding in the path. Otherwise, the routine returns a continue status. In block **1201**, the routine sets the local edge to the edge of the local binding (current binding) and sets the local protocol to the protocol of the local edge. In block **1202**, the routine invokes the demux key routine of the local edge passing the local message, local path address, and local map. The demux key routine sets the key in the local binding. In decision block **1203**, if the demux key routine returns a status of remove, then the routine continues at block **1204**. If the demux key routine returns a status of postpone, then the routine continues at block **1205**, else the routine continues at block **1206**. In block **1204**, the routine sets the flag of the local binding to indicate that the binding is to be removed and continues at block **1206**. In block **1205**, the routine sets the variable traverse to the function to list the next data, increments the variable postpone, and then returns a next binding status. In blocks **1206-1214**, the routine processes the postponing of the creating of a key. In blocks **1207-1210**, if the creating of a key has been postponed, then the routine indicates to backtrack on the path, save the demux status, and set the demux status to demux continue. In blocks **1211-1213**, if the creating of a key has not been postponed, then the routine indicates to continue forward in the path and to restore any saved demux status. The save demux status is the status associated by the binding where the backtrack started. In decision block **1206**, if the variable postpone is set, then the routine continues at block **1207**, else the routine continues at block **1211**. In block **1207**, the routine decrements the variable postpone and sets the variable traverse to the list previous data function. In decision block **1208**, if the variable saved status is set, then the routine continues at block **1210**, else the routine continues at block **1209**. The variable saved status contains the status of the demux process when the demux process started to backtrack. In block **1209**, the routine sets the variable saved status to the variable status. In block **1210**, the routine sets the variable status to demux continue and continues at block **1214**. In block **1211**, the routine sets the variable traverse to the list next data function. In decision block **1212**, if the variable saved status in set, then the routine continues at block **1213**, else the routine continues at block **1214**. In block **1213**, the routine sets the variable status to the variable saved status and sets the variable saved status to 0. In decision block **1214**, if the local binding indicates that it is to be removed, then the routine returns a next binding status, else the routine returns a continue status.

FIG. **13** is a flow diagram of the get session routine. This routine retrieves the session data structure, creating a data structure session if necessary, for the key indicated by the binding. In block **1301**, the routine retrieves the session from the session table of the local protocol indicated by the key of the local binding. Each protocol maintains a mapping from each key to the session associated with the key. In decision block **1302**, if there is no session, then the routine continues at block **1303**, else the routine returns. In block **1303**, the routine creates a session for the local protocol. In block **1304**, the routine initializes the key for the local session based on the key of the local binding. In block **1305**, the routine puts the session into the session table of the local protocol. In block **1306**, the routine invokes the create session function of the protocol to allow the protocol to initialize its context and then returns.

FIG. **14** is a flow diagram of the nail binding routine. This routine determines whether a binding is already associated with ("nailed to") the session. If so, the routine returns that binding. If not, the routine associates the binding with the session. The routine returns a status of simplex to indicate that only one path can extend through the nailed binding. In decision block **1401**, if the binding table of the session contains an entry for the edge, then the routine continues at block **1402**, else the routine continues at block **1405**. In block **1402**, the routine sets the binding to the entry from the binding table of the local session for the edge. In block **1403**, the routine sets the current binding to point to the binding from the session. In block **1404**, if the binding is simplex, then the routine returns a simplex status, else the routine returns. Blocks **1405** through **1410** are performed when there is no binding in the session for the edge. In block **1405**, the routine sets the session of the binding to the variable session. In block **1406**, the routine sets the key of the binding to the key from the session. In block **1407**, the routine sets the entry for the edge in the binding table of the local session to the binding. In block **1408**, the routine invokes the create binding function of the edge of the binding passing the binding so the edge can initialize the binding. If that function returns a status of remove, the routine continues at block **1409**. In block **1409**, the routine sets the binding to be removed and then returns.

FIG. **15** is a flow diagram of the find path routine. The find path routine identifies the shortest path through the binding list. If no such path exists, then the routine extends a path to include the binding list. In decision block **1501**, if the binding is simplex and a path already goes through this binding (returned as an entry), then the routine continues at block **1502**, else the routine continues at block **1503**. In block **1502**, the routine sets the path to the path of the entry and returns. In block **1503**, the routine initializes the pointers element and short entry to null. In block **1504**, the routine sets the path to the path of the passed path entry. If the local path is not null and its status is demux extend, then the routine continues at block **1509**, else the routine continues at block **1505**. In blocks **1505-1508**, the routine loops identifying the shortest

path through the bindings in the binding list. The routine loops selecting each path through the binding. The selected path is eligible if it starts at the first binding in the binding list and the path ends at the binding. The routine loops setting the short entry to the shortest eligible path found so far. In block **1505**, the routine sets the variable first binding to the first binding in the binding list of the path address. In block **1506**, the routine selects the next path (entry) in the path list of the binding starting with the first. If a path is selected (indicating that there are more paths in the binding), then the routine continues at block **1507**, else the routine continues at block **1509**. In block **1507**, the routine determines whether the selected path starts at the first binding in the binding list, whether the selected path ends at the last binding in the binding list, and whether the number of path entries in the selected path is less than the number of path entries in the shortest path selected so far. If these conditions are all satisfied, then the routine continues at block **1508**, else the routine loops to block **1506** to select the next path (entry). In block **1508**, the routine sets the shortest path (short entry) to the selected path and loops to block **1506** to select the next path through the binding. In block **1509**, the routine sets the selected path (entry) to the shortest path. In decision block **1510**, if a path has been found, then the routine continues at block **1511**, else the routine continues at block **1512**. In block **1511**, the routine sets the path to the path of the selected path entry and returns. Blocks **1512-1516** are performed when no paths have been found. In block **1512**, the routine sets the path to the path of the passed path entry. If the passed path entry has a path and its status is demux extend, then the routine continues at block **1515**, else the routine continues at block **1513**. In block **1513**, the routine creates a path for the path address. In block **1514**, the routine sets the variable element to null and sets the path entry to the first element in the stack list of the path. In block **1515**, the routine sets the variable element to be address entry of the member of the passed path entry and sets the path entry to the passed path entry. In block **1516**, the routine invokes the extend path routine to extend the path and then returns. The extend path routine creates a path through the bindings of the binding list and sets the path status to the current demux status.

FIG. **16** is a flow diagram of the process of path hopping routine. Path hopping occurs when the path through the binding list is not the same path as that of the passed path entry. In decision block **1601**, if the path of the passed path entry is set, then the routine continues at block **1602**, else the routine continues at block **1609**. In decision block **1602**, if the path of the passed path entry is equal to the local path, then the routine continues at **1612**, else path hopping is occurring and the routine continues at block **1603**. In blocks **1603-1607**, the routine loops positioning pointers at the first path entries of the paths that are not at the same binding. In block **1603**, the routine sets the variable old stack to the stack list of the path of the passed path entry. In block **1604**, the routine sets the variable new stack to the stack list of the local path. In block **1605**, the routine sets the variable old element to the next element in the old stack. In block **1606**, the routine sets the variable element to the next element in the new stack. In decision block **1607**, the routine loops until the path entry that is not in the same binding is located. In decision block **1608**, if the variable old entry is set, then the routine is not at the end of the hopped from path and the routine continues at block **1609**, else routine continues at block **1612**. In block **1609**, the routine sets the variable entry to the previous entry in the hopped-to path. In block **1610**, the routine sets the path of the passed path entry to the local path. In block **1611**, the routine sets the local entry to the first path entry of the stack list of the local path. In block **1612**, the routine inserts an entry into return list and then returns.

Although the conversion system has been described in terms of various embodiments, the invention is not limited to these embodiments. Modification within the spirit of the invention will be apparent to those skilled in the art. For example, a conversion routine may be used for routing a message and may perform no conversion of the message. Also, a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence. The scope of the invention is defined by the claims that follow.

What is claimed is:

**1**. A first apparatus for receiving data from a second apparatus, the first apparatus comprising:
- a processing unit; and
- a memory storing instructions executable by the processing unit to:
  - create, based on an identification of information in a received packet of a message, a path that includes one or more data structures that indicate a sequence of routines for processing packets in the message;
  - store the created path; and
  - process subsequent packets in the message using the sequence of routines indicated in the stored path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.

**2**. The first apparatus of claim **1**, wherein the sequence includes:
- a second routine that is used to execute a second, different protocol to convert packets of the different format into another format; and
- a third routine that is used to execute a third, different protocol to further convert the packets.

**3**. The first apparatus of claim **2**, wherein the second protocol is an Internet Protocol (IP) and the third protocol is an Ethernet Protocol.

**4**. The first apparatus of claim **1**, wherein the one or more data structures further indicate sessions corresponding to respective ones of the sequence of routines.

**5**. The first apparatus of claim **4**, wherein the sessions specify state information for one or more of the sequence of routines, and wherein the state information is specific to the message.

**6**. The first apparatus of claim **1**, wherein the sequence of routines includes a routine that is executable to process the packets without converting a format of the packets.

**7**. The first apparatus of claim **1**, wherein the routine is not executable to convert packets having the different format, and wherein the different format is an Internet Protocol (IP) format.

**8**. The first apparatus of claim **1**, wherein the memory stores instructions executable by the processing unit to identify an address associated with the information, wherein the address indicates the routines in the sequence of routines of the created path.

**9**. The first apparatus of claim **8**, wherein the memory stores instructions executable by the processing unit to use the address to select the sequence of routines from a plurality of

sequences of routines that are stored by the first apparatus prior to receiving the packet of the message.

**10**. A non-transitory, computer-readable medium comprising software instructions for processing a message, wherein the software instructions, when executed, cause a computer system to:
obtain information from a particular packet of the message, wherein the particular packet has been received by the computer system;
use the obtained information to identify an address specifying a list of conversion routines;
create a path that includes one or more data structures that specify a sequence of sessions, wherein sessions in the sequence correspond to respective ones of the conversion routines in the list;
store the created path; and
process subsequent packets of the message using sessions specified in the created path, including:
a session associated with a transport layer protocol that is executed to convert one or more packets in a transport layer format into a different format; and
another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format.

**11**. The medium of claim **10**, wherein one or more of the sessions specify state information for one or more of the conversion routines, and wherein the state information is specific to the message.

**12**. The medium of claim **11**, wherein the different protocol is associated with a layer selected from the group consisting of an application layer and a network layer.

**13**. The medium of claim **10**, wherein the transport layer protocol is a Transmission Control Protocol (TCP).

**14**. The medium of claim **13**, wherein the message comprises a stream of data.

**15**. The medium of claim **10**, wherein using the obtained information to identify the address includes determining a plurality of protocols by analyzing headers of the particular packet, and wherein the medium includes software instructions executable to determine protocols executable at the transport layer and at an application layer.

**16**. A first apparatus configured to receive data from a second apparatus, the first apparatus comprising:
a processing unit; and
memory storing instructions that are executable by the processing unit to:
obtain and analyze information from a received packet of a message;
identify an address based on the obtained information, wherein the address references a list of routines;
create one or more data structures that indicate state information corresponding to routines in the list;
store the one or more data structures; and
process subsequent packets of the message using the state information, including state information that corresponds to a particular routine that is used to execute a protocol to convert packets from an input format to an output format, wherein the particular routine is not executable to convert packets having the output format.

**17**. The first apparatus of claim **16**, wherein the state information used to process subsequent packets of the message includes state information that corresponds to a different routine that is used to execute a second, different protocol to convert packets from the output format to a different output format, and wherein the state information used to process subsequent packets of the message includes state information that corresponds to another routine that is used to execute a third, different protocol associated with the different output format.

**18**. The first apparatus of claim **17**, wherein the protocols include a Transmission Control Protocol (TCP), an Internet Protocol (IP), and an Ethernet Protocol.

**19**. The first apparatus of claim **16**, wherein at least one of the routines in the list is executable to process packets of the message without converting a format of the packets.

**20**. The first apparatus of claim **16**, wherein the particular routine is executable to convert packets by removing an outermost header of the packets.

**21**. The first apparatus of claim **16**, wherein the protocol is a transport layer protocol.

**22**. The first apparatus of claim **21**, wherein the transport layer protocol is a Transmission Control Protocol (TCP), and wherein the message comprises a stream of data.

**23**. The first apparatus of claim **16**, wherein the obtained information includes information from headers of the received packet that are associated with a network layer and a transport layer.

**24**. A non-transitory, computer-readable medium comprising program instructions executable by a computer system to:
identify information from different headers associated with various layers of a received packet of a message;
create, using the identified information, one or more data structures that reference a sequence of routines;
store the one or more data structures; and
process subsequent packets of the message using the sequence of routines referenced by the one or more data structures, including by removing an outermost header of a given packet using a first routine corresponding to a protocol in a first layer and by removing the resulting outermost header using a second routine corresponding to a different protocol in a different layer.

**25**. The medium of claim **24**, wherein the protocol in the first layer is a Transmission Control Protocol (TCP), and the message comprises a stream of data.

**26**. The medium of claim **24**, wherein the protocol in the first layer is a transport layer protocol and the different protocol in the different layer is an application layer protocol.

**27**. The medium of claim **24**, wherein processing subsequent packets of the message further includes using a third routine corresponding to another protocol in another layer to remove the outermost header resulting from use of the second routine, and wherein the layers include a network layer, a transport layer, and an application layer.

**28**. The medium of claim **24**, wherein at least one of the sequence of routines is not used to remove a header of the packets.

**29**. The medium of claim **24**, wherein the outermost header has a format that is incompatible with a format of the resulting outermost header, and wherein the outermost header is associated with a network layer protocol.

**30**. The medium of claim **24**, wherein the one or more data structures further reference state information for one or more of the routines in the sequence of routines.

* * * * *

US009270790B2

(12) **United States Patent**
**Balassanian**

(10) **Patent No.:** **US 9,270,790 B2**
(45) **Date of Patent:** **Feb. 23, 2016**

(54) **METHOD AND SYSTEM FOR DATA DEMULTIPLEXING**

(71) Applicant: **IMPLICIT, LLC**, Seattle, WA (US)

(72) Inventor: **Edward Balassanian**, Seattle, WA (US)

(73) Assignee: **Implicit, LLC**, Seattle, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 49 days.

(21) Appl. No.: **14/230,952**

(22) Filed: **Mar. 31, 2014**

(65) **Prior Publication Data**

US 2015/0009997 A1 Jan. 8, 2015

**Related U.S. Application Data**

(63) Continuation of application No. 13/911,324, filed on Jun. 6, 2013, now Pat. No. 8,694,683, which is a continuation of application No. 13/236,090, filed on Sep. 19, 2011, now abandoned, which is a continuation of application No. 10/636,314, filed on Aug. 6, 2003, now Pat. No. 8,055,786, which is a continuation of application No. 09/474,664, filed on Dec. 29, 1999, now Pat. No. 6,629,163.

(51) **Int. Cl.**
***H04L 29/06*** (2006.01)
***H04L 12/701*** (2013.01)
***H04L 29/08*** (2006.01)

(52) **U.S. Cl.**
CPC ................ ***H04L 69/08*** (2013.01); ***H04L 29/06*** (2013.01); ***H04L 45/00*** (2013.01); ***H04L 69/22*** (2013.01); ***H04L 69/32*** (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,298,674 | A | 3/1994 | Yun |
| 5,414,833 | A | 5/1995 | Hershey et al. |
| 5,627,997 | A | 5/1997 | Pearson et al. |
| 5,761,651 | A | 6/1998 | Hasebe |
| 5,826,027 | A | 10/1998 | Pedersen et al. |
| 5,835,726 | A | 11/1998 | Shwed et al. |
| 5,848,233 | A | 12/1998 | Radia et al. |
| 5,848,415 | A | 12/1998 | Guck |
| 5,854,899 | A | 12/1998 | Callon et al. |
| 5,898,830 | A | 4/1999 | Wesinger, Jr. et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0807347 | 11/1997 |
| EP | 0817031 | 1/1998 |

OTHER PUBLICATIONS

Alexander, D. et al., "The SwitchWare Active Network Architecture", Jun. 6, 1998, IEEE.

(Continued)

*Primary Examiner* — Duc Duong
(74) *Attorney, Agent, or Firm* — Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C.

(57) **ABSTRACT**

A method and system for demultiplexing packets of a message is provided. The demultiplexing system receives packets of a message, identifies a sequence of message handlers for processing the message, identifies state information associated with the message for each message handler, and invokes the message handlers passing the message and the associated state information. The system identifies the message handlers based on the initial data type of the message and a target data type. The identified message handlers effect the conversion of the data to the target data type through various intermediate data types.

**20 Claims, 16 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS


| | | | | |
|---|---|---|---|---|
| 6,091,725 | A | 7/2000 | Cheriton et al. | |
| 6,104,500 | A | 8/2000 | Alam et al. | |
| 6,115,393 | A | 9/2000 | Engel et al. | |
| 6,119,236 | A | 9/2000 | Shipley | |
| 6,141,749 | A | 10/2000 | Coss et al. | |
| 6,151,390 | A | 11/2000 | Volftsun et al. | |
| 6,226,267 | B1 | 5/2001 | Spinney et al. | |
| 6,243,667 | B1 | 6/2001 | Kerr et al. | |
| 6,259,781 | B1 | 7/2001 | Crouch et al. | |
| 6,356,529 | B1 | 3/2002 | Zarom | |
| 6,401,132 | B1 | 6/2002 | Bellwood et al. | |
| 6,426,943 | B1 | 7/2002 | Spinney et al. | |
| 6,519,636 | B2 | 2/2003 | Engel et al. | |
| 6,598,034 | B1 | 7/2003 | Kloth | |
| 6,629,163 | B1 * | 9/2003 | Balassanian | H04L 29/06 370/401 |
| 6,651,099 | B1 | 11/2003 | Dietz et al. | |
| 6,678,518 | B2 | 1/2004 | Eerola | |
| 6,680,922 | B1 | 1/2004 | Jorgensen | |
| 6,701,432 | B1 | 3/2004 | Deng et al. | |
| 6,711,166 | B1 | 3/2004 | Amir et al. | |
| 6,785,730 | B1 | 8/2004 | Taylor | |
| 6,871,179 | B1 | 3/2005 | Kist et al. | |
| 6,889,181 | B2 | 5/2005 | Kerr et al. | |
| 7,233,569 | B1 * | 6/2007 | Swallow | H04L 12/4633 370/225 |
| 7,281,036 | B1 * | 10/2007 | Lu | H04L 29/12028 709/220 |
| 7,383,341 | B1 | 6/2008 | Saito et al. | |
| 8,055,786 | B2 * | 11/2011 | Balassanian | H04L 29/06 370/351 |
| 8,694,683 | B2 * | 4/2014 | Balassanian | H04L 29/06 370/466 |
| 2008/0250045 | A1 * | 10/2008 | Balassanian | G06F 17/30569 |
| 2009/0265695 | A1 * | 10/2009 | Karino | G06F 11/3612 717/131 |

OTHER PUBLICATIONS

Antoniazzi, S. et al., "An Open Software Architecture for Multimedia Consumer Terminals", Central Research Labs, Italy; Alcatel SEL Research Centre, Germany, ECMAST 1997.
Arbanowski, Stefan, "Generic Description of Telecommunication Services and Dynamic Resource Selection in Intelligent Communication Environments", Thesis, Technische Universitat Berlin, Oct. 9, 1996. (3 documents).
Arbanowski, S., et al., Service Personalization for Unified Messaging Systems, Jul. 6-8, 1999, The Fourth IEEE Symposium on Computers and Communications, ISCC '99, Red Sea, Egypt.
Atkinson, R., "Security Architecture for the Internet Protocol", Aug. 1995, Naval Research Laboratory.
Atkinson, R., "IP Authentication Header", Aug. 1995, Naval Research Laboratory.
Atkinson, R., "IP Encapsulating Security Payload (ESP)", Aug. 1995, Naval Research Laboratory.
Back, G., et al., Java Operating Systems: Design and Implementation, Aug. 1998, Technical Report UUCS-98-015, University of Utah.
Baker, Dr. Sean, "CORBA Implementation Issues", 1994, IONA Technologies, O'Reilly Institute Dublin, Ireland.
Barrett, R., et al., "Intermediaries: New Places for Producing and Manipulating Web Content", 1998, IBM Almaden Research Center, Elsevier Science.
Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the DES Modes of Operation", Aug. 15, 1997, Dept. of Computer Science and Engineering, University of California, San Diego.
Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the DES Modes of Operation", Aug. 15, 1997, IEEE.
Bellare, M., et al., "XOR MACs: New Methods for Message Authentication Using Finite Pseudorandom Functions", 1995, CRYPTO '95, LNCS 963, pp. 15-28, Springer-Verlag Berlin Heidelberg.
Bellissard, L., et al., "Dynamic Reconfiguration of Agent-Based Applications", Third European Research Seminar on Advances in Distributed Systems, (ERSADS '99) Madeira Island.
Bolding, Darren, "Network Security, Filters and Firewalls", 1995, www.acm.org/crossroads/xrds2-1/security.html.
Booch, G., et al., "Software Engineering with ADA", 1994, Third Edition, The Benjamin/Cummings Publishing Company, Inc. (2 documents).
Breugst, et al., "Mobile Agents—Enabling Technology for Active Intelligent Network Implementation", May/Jun. 1998, IEEE Network.
"C Library Functions", AUTH(3) Sep. 17, 1993, Solbourne Computer, Inc.
Chapman, D., et al., "Building Internet Firewalls", Sep. 1995, O'Reilly & Associates, Inc.
CheckPoint FireWall-1 Technical White Paper, Jul. 18, 1994, CheckPoint Software Technologies, Ltd.
CheckPoint FireWall-1 White Paper, Sep. 1995, Version 2.0, CheckPoint Software Technologies, Ltd.
Command Line Interface Guide P/N 093-0011-000 Rev C Version 2.5, 2000-2001, NetScreen Technologies, Inc.
Coulson, G. et al., "A CORBA Compliant Real-Time Multimedia Platform for Broadband Networks", Lecture Notes in Computer Science, 1996, Trends in Distributed Systems CORBA and Beyond.
Cox, Brad, "SuperDistribution, Objects As Property on the Electronic Frontier", 1996, Addison-Wesley Publishing Company.
Cranes, et al., "A Configurable Protocol Architecture for CORBA Environments", Autonomous Decentralized Systems 1997 Proceedings ISADS, Third International Symposium Apr. 9-11, 1997.
Curran, K., et al., "CORBA Lacks Venom", University of Ulster, Northern Ireland, UK 2000.
Dannert, Andreas, "Call Logic Service for a Personal Communication Supporting System", Thesis, Jan. 20, 1998, Technische Universitat Berlin.
DARPA Internet Program Protocol Specification, "Transmission Control Protocol", Sep. 1981, Information Sciences Institute, California.
DARPA Internet Program Protocol Specification, "Internet Protocol", Sep. 1981, Information Sciences Institute, California.
Decasper, D., et al., "Crossbow: A Toolkit for Integrated Services over Cell Switched IPv6", 1997, Computer Engineering and Networks Laboratory, ETH Zurich, Switzerland.
Decasper, D., et al., "Router Plugins A Software Architecture for Next Generation Routers", 1998, Proceedings of ACM SIGCONM '98.
Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1998, Nokia, The Internet Society.
Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1995, Network Working Group, RFC 1883.
Dutton, et al, "Asynchronous Transfer Mode Technical Overview (ATM)", Second Edition; IBM, Oct. 1995, 2nd Edition, Prentice Hall PTR, USA.
Eckardt, T., et al., "Application of X.500 and X.700 Standards for Supporting Personal Communications in Distributed Computing Environments", 1995, IEEE.
Eckardt, T., et al., "Personal Communications Support based on TMN and TINA Concepts", 1996, IEEE Intelligent Network Workshop (IN '96), Apr. 21-24, Melbourne, Australia.
Eckardt, T., et al., "Beyond In and UPT—A Personal Communications Support System Based on TMN Concepts", Sep. 1997, IEEE Journal on Selected Areas in Communications, vol. 15, No. 7.
Egevang, K., et al., "The IP Network Address Translator (NAT)", May 1994, Network Working Group, RFC 1631.
Estrin, D., et al., "Visa Protocols for Controlling Inter-Organizational Datagram Flow", Dec. 1998, Computer Science Department, University of Southern California and Digital Equipment Corporation.
Faupel, M., "Java Distribution and Deployment", Oct. 9, 1997, APM Ltd., United Kingdom.
Felber, P., "The CORBA Object Group Service: A Service Approach to Object Groups in CORBA", Thesis, 1998, Ecole Polytechnique Federale de Lausanne, Switzerland.

(56) **References Cited**

OTHER PUBLICATIONS

Fish, R., et al., "DRoPS: Kernel Support for Runtime Adaptable Protocols", Aug. 25-27, 1998, IEEE 24th Euromicro Conference, Sweden.
Fiuczynski, M., et al., "An Extensible Protocol Architecture for Application-Specific Networking", 1996, Department of Computer Science and Engineering, University of Washington.
Franz, Stefan, "Job and Stream Control in Heterogeneous Hardware and Software Architectures", Apr. 1998, Technische Universitat, Berlin (2 documents).
Fraser, T., "DTE Firewalls: Phase Two Measurement and Evaluation Report", Jul. 22, 1997, Trusted Information Systems, USA.
Gazis, V., et al., "A Survey of Dynamically Adaptable Protocol Stacks", first Quarter 2010, IEEE Communications Surveys & Tutorials, vol. 12, No. 1, 1st Quarter.
Gokhale, A., et al., "Evaluating the Performance of Demultiplexing Strategies for Real-Time CORBA", Nov. 1997, GLOBECOM.
Gokhale, A., et al., "Measuring and Optimizing CORBA Latency and Scalability Over High-Speed Networks", Apr. 1998, IEEE Transaction on Computers, vol. 47, No. 4; Proceedings of the International Conference on Distributed Computing Systems (ICDCS '97) May 27-30, 1997.
Gokhale, A., et al., "Operating System Support for High-Performance, Real-Time CORBA", 1996.
Gokhale, A., et al., "Principles for Optimizing CORBA Internet Inter-ORB Protocol Performance", Jan. 9, 1998, Proceedings of the HICSS Conference, Hawaii.
Gong, Li, "Java Security: Present and Near Future", May/Jun. 1997, IEEE Micro.
Gong, Li, "New Security Architectural Directions for Java (Extended Abstract)", Dec. 19, 1996, IEEE.
Gong, Li, "Secure Java Class Loading", Nov./Dec. 1998, IEEE Internet.
Goos, G., et al., "Lecture Notes in Computer Science: Mobile Agents and Security", 1998, Springer-Verlag Berlin Heidelberg.
Goralski, W., "Introduction to ATM Networking", 1995, McGraw-Hill Series on Computer Communications, USA.
Hamzeh, K., et al., Layer Two Tunneling Protocol "L2TP", Jan. 1998, PPP Working Group, Internet Draft.
Harrison, T., et al., "The Design and Performance of a Real-Time CORBA Event Service", Aug. 8, 1997,Proceedings of the OOPSLA '97 Conference, Atlanta, Georgia in Oct. 1997.
Huitema, Christian, "IPv6 The New Internet Protocol", 1997 Prentice Hall, Second Edition.
Hutchins, J., et al., "Enhanced Internet Firewall Design Using Stateful Filters Final Report", Aug. 1997, Sandia Report; Sandia National Laboratories.
IBM, Local Area Network Concepts and Products: Routers and Gateways, May 1996.
Juniper Networks Press Release, Juniper Networks Announces Junos, First Routing Operating System for High-Growth Internet Backbone Networks, Jul. 1, 1998, Juniper Networks.
Juniper Networks Press Release, Juniper Networks Ships the Industry's First Internet Backbone Router Delivering Unrivaled Scalability, Control and Performance, Sep. 16, 1998, Juniper Networks.
Karn, P., et al., "The ESP DES-CBC Transform", Aug. 1995, Network Working Group, RFC 1829.
Kelsey, J. et al., "Authenticating Outputs of Computer Software Using a Cryptographic Coprocessor", Sep. 1996, CARDIS.
Krieger, D., et al., "The Emergence of Distributed Component Platforms", Mar. 1998, IEEE.
Krupczak, B., et al., "Implementing Communication Protocols in Java", Oct. 1998, IEEE Communications Magazine.
Krupczak, B., et al., "Implementing Protocols in Java: The Price of Portability", 1998, IEEE.
Lawson, Stephen, "Cisco NetFlow Switching Speeds Traffic Routing", Jul. 7, 1997, Infoworld.
Li, S., et al., "Active Gateway: A Facility for Video Conferencing Traffic Control", Feb. 1, 1997, Purdue University; Purdue e-Pubs; Computer Science Technical Reports.
Magedanz, T., et al., "Intelligent Agents: An Emerging Technology for Next Generation Telecommunications?", 1996, IEEE.
Mills, H., et al., "Principles of Information Systems Analysis and Design", 1986, Academic Press, Inc. (2 documents).
Mosberger, David, "*Scout: A Path-Based Operating System*", Doctoral Dissertation Submitted to the University of Arizona, 1997 (3 documents).
Muhugusa, M., et al., "ComScript : An Environment for the Implementation of Protocol Stacks and their Dynamic Reconfiguration", Dec. 1994.
Nelson, M., et al., The Data Compression Book, 2nd Edition, 1996, M&T Books, A division of MIS Press, Inc.
NetRanger User's Guide, 1996, WheelGroup Corporation.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 Rev A, NetScreen Technologies, Inc., USA.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 NetScreen Technologies, Inc., USA.
NetScreen Concepts and Examples ScreenOS Reference Guide, 1998-2001, Version 2.5 P/N 093-0039-000 Rev. A, NetScreen Technologies, Inc.
NetScreen Products Webpage, wysiwyg://body_bottom.3/http://www...een.com/products/products.html 1998-1999, NetScreen Technologies, Inc.
NetScreen WebUI, Reference Guide, Version 2.5.0 P/N 093-0040-000 Rev. A, 2000-2001, NetScreen Technologies, Inc.
NetStalker Installation and User's Guide, 1996, Version 1.0.2, Haystack Labs, Inc.
Niculescu, Dragos, "Survey of Active Network Research", Jul. 14, 1999, Rutgers University.
Nortel Northern Telecom, "ISDN Primary Rate User-Network Interface Specification", Aug. 1998.
Nygren, Erik, "The Design and Implementation of a High-Performance Active Network Node", Thesis, Feb. 1998, MIT.
Osbourne, E., "Morningstar Technologies SecureConnect Dynamic Firewall Filter User's Guide", Jun. 14, 1995, V. 1.4, Morning Star Technologies, Inc.
Padovano, Michael, "Networking Applications on UNIX System V Release 4," 1993 Prentice Hall, USA (2 documents).
Pfeifer, T., "Automatic Conversion of Communication Media", 2000, GMD Research Series, Germany.
Pfeifer, T., "Automatic Conversion of Communication Media", Thesis, 1999, Technischen Universitat Berlin, Berlin.
Pfeifer, T., et al., "Applying Quality-of-Service Parametrization for Medium-to-Medium Conversion", Aug. 25-28, 1996, 8th IEEE Workshop on Local and Metropolitan Area Networks, Potsdam, Germany.
Pfeifer, T., "Micronet Machines—New Architectural Approaches for Multimedia End-Systems", 1993 Technical University of Berlin.
Pfeifer, T., "On the Convergence of Distributed Computing and Telecommunications in the Field of Personal Communications", 1995, KiVS, Berlin.
Pfeifer, T., "Speech Synthesis in the Intelligent Personal Communication Support System (IPCSS)", Nov. 2-3, 1995, 2nd 'Speak!' Workshop on Speech Generation in Multimodal Information Systems and Practical Applications.
Pfeifer, T., et al., "Generic Conversion of Communication Media for Supporting Personal Mobility", Nov. 25-27, 1996, Proc. of the Third COST 237 Workshop: Multimedia Telecommunications and Applications.
Pfeifer, T., et al., "Intelligent Handling of Communication Media", Oct. 29-31, 1997, 6th IEEE Workshop on Future Trends of Distributed Computing Systems (FTDCS) Tunis.
Pfeifer, T., et al., "Resource Selection in Heterogeneous Communication Environments using the Teleservice Descriptor", Dec. 15-19, 1997, Proceedings from the 4th COST 237 Workshop: From Multimedia Services to Network Services, Lisboa.
Pfeifer, T., et al., Mobile Guide—Location-Aware Applications from the Lab to the Market, 1998, IDMS '98, LNCS 1483, pp. 15-28.
Pfeifer, T., et al., "The Active Store providing Quality Enhanced Unified Messaging", Oct. 20-22, 1998, 5th Conference on computer Communications, AFRICOM-CCDC '98, Tunis.
Pfeifer, T.,, et al., "*A Modular Location-Aware Service and Application Platform*", 1999, Technical University of Berlin.

(56) **References Cited**

OTHER PUBLICATIONS

Plagemann, T., et al., "*Evaluating Crucial Performance Issues of Protocol Configuration in DaCaPo*", 1994, University of Oslo.
Psounis, Konstantinos, "*Active Networks: Applications, Security, Safety, and Architectures*", First Quarter 1999, IEEE Communications Surveys.
Rabiner, Lawrence, "*Applications of Speech Recognition in the Area of Telecommunications*", 1997, IEEE.
Raman, Suchitra, et al, "*A Model, Analysis, and Protocol Framework for Soft State-based Communications*", Department of EECS, University of California, Berkeley.
Rogaway, Phillip, "*Bucket Hashing and its Application to Fast Message Authentication*", Oct. 13, 1997, Department of Computer Science, University of California.
Schneier, B., et al., "*Remote Auditing of Software Outputs Using a Trusted CoProcessor*", 1997, Elsevier Paper Reprint 1999.
Tennenhouse, D., et al., "*From Internet to ActiveNet*", Laboratory of Computer Science, MIT, 1996.
Tudor, P., "*Tutorial MPEG-2 Video Compression*", Dec. 1995, Electronics & Communication Engineering Journal.
US Copyright Webpage of Copyright Title, "*IPv6: the New Internet Protocol*", by Christian Huitema, 1998 Prentice Hall.
Van der Meer, et al., "*An Approach for a 4th Generation Messaging System*", Mar. 21-23, 1999, The Fourth International Symposium on Autonomous Decentralized Systems ISADS '99, Tokyo.
Van der Meer, Sven, "*Dynamic Configuration Management of the Equipment in Distributed Communication Environments*", Thesis, Oct. 6, 1996, Berlin (3 documents).
Van Renesse, R. et al., "*Building Adaptive Systems Using Ensemble*", Cornell University Jul. 1997.
Venkatesan, R., et al., "*Threat-Adaptive Security Policy*", 1997, IEEE.
Wetherall, D., et al., "*The Active IP Option*", Sep. 1996, Proceedings of the 7th ACM SIGOPS European Workshop, Connemara, Ireland.
Welch, Terry, "*A Technique for High-Performance Data Compression*", 1984, Sperry Research Center, IEEE.
Zeletin, R. et al., "*Applying Location-Aware Computing for Electronic Commerce: Mobile Guide*", Oct. 20-22, 1998, 5th Conference on Computer Communications, AFRICOM-CCDC '98, Tunis.
Zell, Markus, "*Selection of Converter Chains by Means of Quality of Service Analysis*", Thesis, Feb. 12, 1998, Technische Universitat Berlin.
*Implicit Networks, Inc.* v. *Advanced Micro Devices, Inc. et al.*; C08-0184 JLR; USDC for the Western District of Washington, Seattle Division.
Feb. 4, 2008 Plaintiff's Original Complaint.
Aug. 26, 2008 Defendant NVIDIA Corporation's Answer to Complaint.
Aug. 26, 2008 Defendant Sun Microsystems, Inc.'s Answer to Complaint.
Aug. 27, 2008 Defendant Advanced Micro Devices, Inc.'s Answer to Complaint for Patent Infringement.
Aug. 27, 2008 RealNetworks, Inc.'s Answer to Implicit Networks, Inc.'s Original Complaint for Patent Infringement, Affirmative Defenses, and Counterclaims.
Aug. 27, 2008 Intel Corp.'s Answer, Defenses and Counterclaims.
Aug. 27, 2008 Defendant RMI Corporation's Answer to Plaintiffs Original Complaint.
Sep. 15, 2008 Plaintiffs Reply to NVIDIA Corporation's Counterclaims.
Sep. 15, 2008 Plaintiffs Reply to Sun Microsystems Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiffs Reply to RealNetworks, Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiffs Reply to Intel Corp.'s Counterclaims.
Dec. 10, 2008 Order granting Stipulated Motion for Dismissal with Prejudice re NVIDIA Corporation, Inc.
Dec. 16, 2008 Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Dec. 29, 2008 Order granting Stipulated Motion for Dismissal without Prejudice of Claims re Sun Microsystems, Inc.
Jan. 5, 2009 Plaintiff's Opposition to Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending Reexamination and Exhibit A.
Jan. 9, 2009 Reply of Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Feb. 9, 2009 Order Granting Stay Pending the United States Patent and Trademark Office's Reexamination of U.S. Pat. No. 6,629,163.
Feb. 17, 2009 Order Granting Stipulated Motion for Dismissal of Advanced Micro Devices, Inc. with Prejudice.
May 14, 2009 Order Granting Stipulated Motion for Dismissal of RMI Corporation with Prejudice.
Oct. 13, 2009 Order Granting Stipulated Motion for Dismissal of Claims Against and Counterclaims by Intel Corporation.
Oct. 30, 2009 Executed Order for Stipulated Motion for Dismissal of Claims Against and Counterclaims by RealNetworks, Inc.
*Implicit Networks, Inc.* v. *Microsoft Corp.*, C09-5628 HLR; USDC for the Northern District of California, San Francisco Division.
Nov. 30, 2009 Plaintiffs Original Complaint, *Implicit* v *Microsoft*, Case No. 09-5628.
Jan. 22, 2010 Order Dismissing Case, *Implicit* v *Microsoft*, Case No. 09-5628.
*Implicit Networks, Inc.* v. *Cisco Systems, Inc.*, C10-3606 HRL; USDC for the Northern District of California, San Francisco Division.
Aug. 16, 2010 Plaintiffs Original Complaint, *Implicit* v *Cisco*, Case No. 10-3606.
Nov. 22, 2010 Defendant Cisco Systems, Inc.'s Answer and Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Dec. 13, 2010 Plaintiff, Implicit Networks, Inc.'s, Answer to Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Oct. 4, 2011 Order of Dismissal with Prejudice, *Implicit* v *Cisco*, Case No. 10-3606.
*Implicit Networks, Inc.* v. *Citrix Systems, Inc.*, C10-3766 JL; USDC for the Northern District of California, San Francisco Division.
Aug. 24, 2010 Plaintiffs Original Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Dec. 1, 2010 Plaintiff's First Amended Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Jan. 14, 2011 Defendant Citrix Systems, Inc.'s Answer, Defenses and Counter-complaint for Declaratory Judgment, *Implicit* v *Citrix*, Case No. 10-3766.
Feb. 18, 2011 Plaintiff, Implicit Networks, Inc.'s, Answer to Defendants Counterclaims, *Implicit* v *Citrix*, Case No. 10-3766.
May 2, 2011 Order of Dismissal, *Implicit* v *Citrix*, Case No. 10-3766.
*Implicit Networks, Inc.* v. *F5 Networks, Inc.*, C10-3365 JCS; USDC for the Northern District of California, San Francisco Division.
Jul. 30, 2010 Plaintiffs Original Complaint, *Implicit* v *F5*, Case No. 10-3365.
Oct. 13, 2010 Defendants' Answer and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Nov. 3, 2010 Plaintiff's Answer to Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Dec. 10, 2010 Plaintiff's First Amended Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jan. 14, 2011 Defendants' Answer to 1st Amended Complaint and Counterclaim, *Implicit* v *F5*, Case No. 10-3365.
Feb. 18, 2011 Plaintiffs Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Apr. 18, 2011 Defendants' Amended Answer to 1st Amended Complaint and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
May 5, 2011 Plaintiffs Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (31 documents).
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit B, *Implicit* v *F5*, Case No. 10-3365.
Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3), *Implicit* v *F5*, Case No. 10-3365.

(56) **References Cited**

OTHER PUBLICATIONS

Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3) Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (2 documents).
Nov. 28, 2011 Plaintiffs Opening Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing Statement, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing Statement, Exhibit A, *Implicit* v *F5*, Case No. 10-3365.
Dec. 12, 2011 Defendants' Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Dec. 19, 2011 Plaintiffs Reply to Defendants' (F5, HP, Juniper) Responsive Claim Construction Brief (4-5), *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 17, 2012; *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 18, 2012; *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 19, 2012; *Implicit* v *F5*, Case No. 10-3365.
Feb. 29, 2012 Claim Construction Order.
Aug. 15, 2012 Storer Invalidity Report.
Sep. 10, 2012 Implicit's Expert Report of Scott M. Nettles.
Mar. 13, 2013 Order Granting Defendants' Motion for Summary Judgment.
Apr. 9, 2013 Notice of Appeal to the Federal Circuit.
*Implicit Networks, Inc.* v. *Hewlett-Packard Company*, C10-3746 JCS: USDC for the Northern District of California, San Francisco Division.
Aug. 23, 2010 Plaintiffs Original Complaint, *Implicit* v *HP*, Case No. 10-3746.
Nov. 23, 2010 Plaintiff's First Amended Complaint, *Implicit* v *HP*, Case No. 10-3746.
Jan. 14, 2011 Defendant HP's Answer and Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
Feb. 18, 2011 Implicit Networks, Inc.'s Answer to HP Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
May 10, 2011 Plaintiff's Amended Disclosure of Asserted Claims and Infringement Contentions, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, A1-14, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, B1-21, *Implicit* v *HP*, Case No. 10-3746.
*Implicit Networks, Inc.* v. *Juniper Networks*, C10-4234 EDL: USDC for the Northern District of California, San Francisco Division.
Sep. 20, 2010 Plaintiff's Original Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 12, 2010 Juniper Network's Motion to Dismiss For Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 12, 2010 Juniper Network's Request for Judicial Notice in Support of its Motion to Dismiss For Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 1, 2010 First Amended Complaint; *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 18, 2011 Juniper Networks, Inc.'s Answer and Affirmative Defenses to 1st Amended Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 18, 2011 Plaintiffs Answer to Defendant's Counterclaims, *Implicit* v *Juniper*, Case No. 10-4234.
May 23, 2011 Plaintiffs Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 15, 2011 Plaintiffs Amended Disclosure of Asserted Claim and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiffs Opening Claim Construction Brief), *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiffs Opening Claim Construction Brief Exhibit E, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiffs Opening Claim Construction Brief Exhibit J, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiffs Opening Claim Construction Brief Exhibit K, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiffs Opening Claim Construction Brief Exhibits M-O, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit B, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit F, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit N, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Q, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit S., *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit U, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit V, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit W, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit X, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Z, *Implicit* v *Juniper*, Case No. 10-4234.

(56) **References Cited**

OTHER PUBLICATIONS

Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiff's Reply Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiffs Reply Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 10, 2012 Plaintiff's Jan. 10, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A1, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A2, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A3, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A4, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit B1, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 29, 2012 Plaintiff's Feb. 29, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 6, 2012 Plaintiff's Apr. 6, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 9, 2012 Plaintiff's Apr. 9, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Sep. 11, 2012 Implicit's Expert Report of Scott Nettles.
Nov. 9, 2012 Juniper's Notice of Motion and Memorandum of Law ISO Motion for Summary Judgment or, in the alternative, for Partial Summary Judgment, on the Issue of Invalidity.
Nov. 9, 2012 Exhibit 2 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Expert Report.
Nov. 9, 2012 Exhibit 3 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Supplemental Expert Report.
Nov. 26, 2012 Implicit Opposition to Juniper's and F5 Motion on Invalidity.
Nov. 26, 2012 Exhibit A to Hosie Declaration—Aug. 27, 2012 Excerpts from David Blaine deposition.
Nov. 26, 2012 Exhibit B to Hosie Declaration—Oct. 25, 2012 Excerpts from Kenneth Calvert Deposition.
Nov. 26, 2012 Exhibit C to Hosie Declaration—Aug. 15, 2012 Excerpts from Kenneth Calvert Expert Report.
Nov. 26, 2012 Exhibit D to Hosie Declaration—U.S. Pat. No. 6,651,099 to Dietz et al.
Nov. 26, 2012 Exhibit E to Hosie Declaration—Understanding Packet-Based and Flow-Based Forwarding.
Nov. 26, 2012 Exhibit F to Hosie Declaration—Wikipedia on Soft State.
Nov. 26, 2012 Exhibit G to Hosie Declaration—Sprint Notes.
Nov. 26, 2012 Exhibit H to Hosie Declaration—Implicit's Supplemental Response to Juniper's 2nd Set of Interrogatories.
Nov. 26, 2012 Exhibit I to Hosie Declaration—U.S. Pat. No. 7,650,634 (Zuk).
Other Implicit Networks, Inc. Prosecution Matters.
U.S. Appl. No. 11/933,022 Utility Application filed Oct. 31, 2007.
U.S. Appl. No. 11/933,022 Preliminary Amendment filed Feb. 19, 2008.
U.S. Appl. No. 11/933,022 Office Action mailed Jun. 24, 2009.
U.S. Appl. No. 11/933,022 Amendment filed Sep. 24, 2009.
U.S. Appl. No. 11/933,022 Office Action dated Dec. 11, 2009.
U.S. Appl. No. 11/933,022 Amendment and Response dated Jan. 29, 2010.
U.S. Appl. No. 11/933,022 Notice of Allowance dated Mar. 2, 2010.
U.S. Appl. No. 11/933,022 Issue Notification dated May 4, 2010.
U.S. Appl. No. 10/636,314 Utility Application filed Aug. 6, 2003.
U.S. Appl. No. 10/636,314 Office Action dated Apr. 7, 2008.
U.S. Appl. No. 10/636,314 Response to Restriction Requirement dated Aug. 5, 2008.
U.S. Appl. No. 10/636,314 Office Action dated Oct. 3, 2008.
U.S. Appl. No. 10/636,314 Response to Office Action dated Apr. 3, 2009.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated May 4, 2009.
U.S. Appl. No. 10/636,314 Amendment to Office Action Response dated Jun. 4, 2009.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated Jun. 12, 2009.
U.S. Appl. No. 10/636,314 Amendment to Office Action dated Jul. 10, 2009.
U.S. Appl. No. 10/636,314 Final Rejection Office Action dated Oct. 21, 2009.
U.S. Appl. No. 10/636,314 Amendment after Final Office Action dated Dec. 14, 2009.
U.S. Appl. No. 10/636,314 Advisory Action dated Jan. 11, 2010.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated Jan. 11, 2010.
U.S. Appl. No. 10/636,314 Supplemental Amendment and Response dated Mar. 13, 2010.
U.S. Appl. No. 10/636,314 Office Action dated May 11, 2010.
U.S. Appl. No. 10/636,314 Amendment and Response dated Sep. 13, 2010.
U.S. Appl. No. 10/636,314 Final Rejection dated Nov. 24, 2010.
U.S. Appl. No. 10/636,314 Notice of Appeal dated May 19, 2011.
U.S. Appl. No. 10/636,314 Amendment and Request for Continued Examination dated Jul. 19, 2011.
U.S. Appl. No. 10/636,314 Notice of Allowance dated Sep. 13, 2011.
U.S. Appl. No. 10/636,314 Notice of Allowance dated Sep. 19, 2011.
U.S. Appl. No. 10/636,314 Issue Notification dated Oct. 19, 2011.
U.S. Appl. No. 09/474,664 Utility Application filed Dec. 29, 1999.
U.S. Appl. No. 09/474,664 Office Action dated Sep. 23, 2002.
U.S. Appl. No. 09/474,664 Amendment and Response dated Feb. 24, 2003.
U.S. Appl. No. 09/474,664 Notice of Allowance dated May 20, 2003.
U.S. Appl. No. 90/010,356 Request for Ex Parte Reexamination dated Dec. 15, 2008.
U.S. Appl. No. 90/010,356 Office Action Granting Reexamination dated Jan. 17, 2009.
U.S. Appl. No. 90/010,356 First Office Action dated Jul. 7, 2009.
U.S. Appl. No. 90/010,356 First Office Action Response dated Sep. 1, 2009.
U.S. Appl. No. 90/010,356 Patent Owner Interview Summary dated Oct. 23, 2009.
U.S. Appl. No. 90/010,356 Office Action Final dated Dec. 4,2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Dec. 18, 2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Jan. 4, 2010.
U.S. Appl. No. 90/010,356 Advisory Action dated Jan. 21, 2010.
U.S. Appl. No. 90/010,356 Amendment and Response to Advisory Action dated Feb. 8, 2010.
U.S. Appl. No. 90/010,356 Notice of Intent to Issue a Reexam Certificate dated Mar. 2, 2010.
U.S. Appl. No. 90/010,356 Reexamination Certificate Issued dated Jun. 22, 2010.
U.S. Appl. No. 95/000,659 Inter Partes Reexam Request dated Feb. 13, 2012.
U.S. Appl. No. 95/000,659 Order Granting Reexamination dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action Response dated Jun. 4, 2012 (including Exhibits 1 & 2) (4 documents).
U.S. Appl. No. 95/000,659 Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012.
U.S. Appl. No. 95/000,659 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Declaration of Prof. Dr. Bernhard Plattner).

(56) **References Cited**

OTHER PUBLICATIONS


U.S. Appl. No. 95/000,659 Appendix R-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Prof. Dr. Bernhard Plattner CV).

U.S. Appl. No. 95/000,659 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).

U.S. Appl. No. 95/000,659 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012(Office Action Granting Reexamination in 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,659 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Office Action in 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,659 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc. U.S. Pat. No. 6,629,163 Claims Chart).

U.S. Appl. No. 95/000,659 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).

U.S. Appl. No. 95/000,659 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).

U.S. Appl. No. 95/000,659 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Claim Construction Order dated Feb. 29, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. I of Edward Balassanian Deposition Transcript dated May 30, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. II of Edward Balassanian Deposition Transcript dated May 31, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. III of Edward Balassanian Deposition Transcript dated Jun. 7, 2012).

U.S. Appl. No. 95/000,659 Appendix R-10-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. IV of Edward Balassanian Deposition Transcript dated Jun. 8, 2012).

U.S. Appl. No. 95/000,659 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).

U.S. Appl. No. 95/000,659 Action Closing Prosecution dated Oct. 1, 2012.

U.S. Appl. No. 95/000,659 Petition to Withdraw and Reissue Action Closing Prosecution dated Nov. 20, 2012.

U.S. Appl. No. 95/000,659 Patent Owner Comments to Action Closing Prosecution dated Dec. 3, 2012.

U.S. Appl. No. 95/000,659 Opposition to Petition dated Dec. 17, 2012.

U.S. Appl. No. 95/000,659 Third Party Comments to Action Closing Prosecution dated Jan. 2, 2013.

U.S. Appl. No. 95/000,660 Inter Partes Reexam Request dated Mar. 2, 2012.

U.S. Appl. No. 95/000,660 Order Granting Reexamination dated May 10, 2012.

U.S. Appl. No. 95/000,660 Office Action dated May 10, 2012.

U.S. Appl. No. 95/000,660 Response to Office Action dated Jul. 10, 2012 (including Exhibits 1 and 2).

U.S. Appl. No. 95/000,660 Third Party Comments to Office After Patent Owner's Response dated Aug. 8, 2012 (including Revised Comments).

U.S. Appl. No. 95/000,660 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Declaration of Prof. Dr. Bernhard Plattner).

U.S. Appl. No. 95/000,660 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Prof. Dr. Bernhard Plattner CV).

U.S. Appl. No. 95/000,660 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).

U.S. Appl. No. 95/000,660 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Office Action Granting Reexamination in 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,660 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Office Action in 95/000,660 dated May 10, 2012).

U.S. Appl. No. 95/000,660 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Implicit Networks, Inc. U.S. Pat. No. 6,629,163 Claims Chart).

U.S. Appl. No. 95/000,660 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).

U.S. Appl. No. 95/000,660 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).

U.S. Appl. No. 95/000,660 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Claim Construction Order dated Feb. 29, 2012).

U.S. Appl. No. 95/000,660 Appendix R-10 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (vol. I-IV of Edward Balassanian Deposition Transcript dated May 30, 2012).

U.S. Appl. No. 95/000,660 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 3173 Sep. 2001).

U.S. Appl. No. 95/000,660 Appendix R-12 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 2393 Dec. 1998).

U.S. Appl. No. 95/000,660 Appendix R-13 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 ('163 Pfeiffer Claim Chart).

U.S. Appl. No. 95/000,660 Appendix R-14 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Ylonen, T., "*SSH Transport Layer Protocol*", Network Working Group—Draft Feb. 22, 1999).

U.S. Appl. No. 95/000,660 Appendix R-15 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Dommety, G., "*Key and Sequence Number Extensions to GRE*", Network Working Group, RFC 2890 Sep. 2000).

U.S. Appl. No. 95/000,660 Appendix R-16 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Monsour, R., et al, "*Compression in IP Security*" Mar. 1997).

U.S. Appl. No. 95/000,660 Appendix R-17 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Friend, R., Internet Working Group RFC 3943 dated Nov. 2004 *Transport Layer Security Protocol Compression Using Lempel-Ziv-Stac*).

U.S. Appl. No. 95/000,660 Appendix R-18 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).

U.S. Appl. No. 95/000,660 Revised—Third Party Comments to Office After Patent Owner's Response dated Nov. 2, 2012.

U.S. Appl. No. 95/000,660 Action Closing Prosecution dated Dec. 21, 2012.

U.S. Appl. No. 95/000,660 Comments to Action Closing Prosecution dated Feb. 21, 2013 (including Dec of Dr. Ng).

(56) **References Cited**

OTHER PUBLICATIONS

U.S. Appl. No. 95/000,660 Third Party Comments to Action Closing Prosecution dated Mar. 25, 2013.
PCT/US00/33634—PCT application (WO 01/2077 A2—Jul. 12, 2001).
PCT/US00/33634—Written Opinion (WO 01/50277 A3—Feb. 14, 2002).
PCT/US00/33634—International Search Report (Oct. 9, 2001).
PCT/US00/33634—Response to Official Communication dated Dec. 7, 2001 (Mar. 21, 2002).
PCT/US00/33634—International Preliminary Examination Report (Apr. 8, 2002).
PCT/US00/33634—Official Communication (Jan. 24, 2003).
PCT/US00/33634—Response to Official Communication dated Jan. 24, 2003 (Mar. 12, 2003).
PCT/US00/33634—Official Communication (May 13, 2004).
PCT/US00/33634—Response to Summons to Attend Oral Proceeding dated May 13, 2004 (Oct. 9, 2004).
PCT/US00/33634—Decision to Refuse a European Patent application (Nov. 12, 2004).
PCT/US00/33634—Minutes of the oral proceedings before the Examining Division (Oct. 12, 2004).
PCT/US00/33634—Closure of the procedure in respect to Application No. 00984234.5-2212 (Feb. 22, 2005).
May 3, 2013 Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Pat. Nos. 6,877,006; 7,167,864; 7,720,861; and 8,082,268 (6 documents).
Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Pat. No. 7,167,864 (3 documents).
"InfoReports User Guide: Version 3.3.1;" Platinum Technology, Publication No. PRO-X-331-UG00-00, printed Apr. 1998; pp. 1-430.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,659 issued Aug. 16, 2013, 107 pages.
Decision on Petition in Reexamination Control No. 95/000,659 issued Aug. 19, 2013, 3 pages.
Response to Non-Final Office Action in Reexamination Control No. 95/000,659 mailed Oct. 2, 2013 including Exhibits A-C, 37 pages.
Decision on Petition in Reexamination Control No. 95/000,660 issued Jul. 30, 2013, 12 pages.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,660 issued Aug. 30, 2013, 23 pages.
RFC: 791. Internet Protocol: DARPA Internet Program Protocol Specification, Sep. 1981, prepared for Defense Advanced Research Projects Agency Information Processing Techniques Office by Information Sciences Institute University of Southern California, 52 pages.

* cited by examiner


101
102
103
104
150
DRIVER
MESSAGE SEND
DEMUX
LABELMAP GET
149
QUEUE
105
THREAD
106
151
MESSAGE SEND
107
152
MESSAGE SEND
108
153
MESSAGE SEND
109
110
111
MESSAGE SEND
DEMUX
LABELMAP GET
154
114
155
MESSAGE SEND

*Fig. 1*


P1
P2
P3
P4
D1
1
D2
D1
2
D3
D2
1
D5
D9
1
D12
D10
2
D13
D15
1
NULL

*Fig. 2*


300
MEMORY 303
304
DRIVERS
305
FORWARDING COMPONENT
306
DEMUX COMPONENT
307
LABEL MAP GET COMPONENT
308
PATH DATA STRUCTURES
309
CONVERSION ROUTINES
310
INSTANCE DATA
CPU 301
I/O 302

*Fig. 3*


PATH (StackList)
462
SESSION
450
463
440
430
464
TCP
453
TCP
443
TCP
433
452
442
432
431
431
431
423
424
425
420
IP
422
421
413
414
415
410
ETHERNET
412
411
473
472
471
QUEUE
QUEUE
QUEUE
PathEntry
(REFERENCE)

*Fig. 4*


Map
507
OutputLabel
TargetLabel
TargetKey
MessageQueue
502
505
PathEntry
pPath
pMap
multiplayList
pAddress
Member
MultiplayList
508
PATH
501
MessageQueue
StackList
pAddress
StackList
pPathEntry
503
PathEntry
505
Member
509
Binding
StackListEntry
PathListEntry
AddressEntry
Address
504
URL
Name
BindingList
CurrentBinding
BindingList
506
pBinding
Binding
510
pSession
Key
PathList
ActivePaths
pEdge
Binding
511

*Fig. 5*


Binding
510
PathEntry
505
602
session
601
BindingTable
Binding
510
PathList
603
Context
pProtocol
pBindingTable
pKey
pBinding
pSession
key
ActivePaths
PathList
pEdge
pPathEntry
PathEntry
505
Binding
510

*Fig. 6*


MessageSend
(Message, PathEntry)
701
list = PathEntry --> Multiplex List
YES
09
NO
702
PathEntry --> Member
NO
703
PatnEntry --> Path
YES
703A
nextEntry = List Head Data (pathEntry --> Path --> StackList)
17
NO
YES
704
position = PathEntry --> Member --> StackListEntry
05
705
NextEntry = ListNextData (position)
YES
NO
706
retVal = nextEntry --> Member --> Binding --> Edge --> MessageHandler (Message, nextEntry)
707
List = Demux (Message, PathEntry --> Address, PathEntry
708
list
NO
YES
09
Return (retval)

*Fig. 7A*


09
710
Select next Candidate path in List
711
NextEntry
NO
Return (True)
YES
712
NextEntry = = PathEntry
YES
05
NO
713
Number of Candidate Path > 1
NO
17
YES
714
PathEntry --> MultiplayList
NO
715
PathEntry --> MultiplayList = List
YES
716
MessageSend (Message, nextEntry)

*Fig. 7B*


17
717
NextEntry --> Path
NO
YES
718
QueueMessage (Message, NextEntry)
Return

*Fig. 7C*


Demux
Message
Address
PathEntry
801
Initialize Demux
802
Status
NO
YES
811
Find Path
812
Process Path Hopping
803
Get Next Binding
804
return status
Break
multiple
binding
805
nailed
YES
NO
return
806
Get Key
807
return status
next binding
continued
808
Get Session
809
Nail Binding
810
return status
other
simplex

Fig. 8


Initialize Demux
901
Map
PathEntry --> Map
902
message = Message
path = null
address Elem = null
903
savedStatus = 0
Status = demux Continue
904
PathEntry --> Path
YES
905
status =
PathEntry --> Path --> Status
NO
909
patn Address =
pathEntry --> Path --> Address
906
Status
demux Extend
demux continue
demux End
907
pathAddress = Address
addressElem =
pathAddress -->
CurrentBinding =
pathEntry --> Member
--> AddressEntry
910
908
InitEnd
911
status = demux Continue
binding List =
pathAddress -->
BindingList
912
CurrentBinding =
&pathAddress -->
CurrentBinding
postpone = 0
913
traverse = ListDataNext
session = Null
Return

*Fig. 9*


InitEnd
1001
PathEntry --> Member --> Binding --> Flags == Simplex
YES
1002
pathAddress = AddressCopy (PathEntry -> Path -> Address, PathEntry -> Member -> AddressEntry)
Return
NO
1003
pathAddress = AddressCreate (PathEntry -> Path -> Address -> URL)
1004
elem = null
1005
binding = ListDataNext (PathEntry -> Path -> Address -> BindingList, & elem)
Return
YES
1006
pathAddress --> CurrentBinding = ListTailInsert (pathAddress --> BindingList, binding)
1007
elem = = PathEntry --> Member --> AddressEntry
NO
YES
Return

*Fig. 10*


GetNext Binding
1101
binding = traverse (BindingList, currentBinding)
1102
binding
YES
Return (binding)
NO
1103
trailList = LabelMapGet (map --> Output Label, map --> Target Label)
1104
size of trailList
= 1
> 1
1105
currentBinding = ListTail (bindingList) Data
1106
tmpTrail = ListHeadRemove (trailList)
1107
Address Extend (pathAddress, tmpTrail)
1108
binding = ListTail Data (binding List)
1109
!binding -> Key && map -> Target key
NO
YES
1110
binding --> Key = map --> Target key
1111
map --> Target key = Null
1112
session
YES
NO
1113
returnList = Prepare Multicast Paths (trailList, map)
Return (multiple)
Return (break)

*Fig. 11*


Get Key
edge = binding --> Edge
Edge protocol = edge
--> Protocol
1201
Status = edge -->
DemuxKey (message,
pathAddress, map)
1202
1204
binding --> Flags
1 = Binding-Remove
remove
status
1203
postpone
other
1205
traverse = ListDataNext
postpone++
Return
(next binding)
1206
postpone
NO
YES
1211
traverse = ListDataNext
1207
postpone --
traverse = ListDataPrev
1212
saved status
NO
YES
1213
status = saved status
savedstatus = 0
1209
savedStatus =
Status
NO
1208
saved status
YES
1210
status = demux
continue
1214
binding
-> Flags & Binding
Remove
NO
Return
(continue)
YES
Return
(next binding)

*Fig. 12*


Get Session
session = TableGet (protocol -> SessionTable, & binding -> key)
1301
session
1302
YES
Return
NO
session = CreateSession (protocol)
1303
session --> key = LabelReference (binding --> key)
1304
Table Put (protocol -> sessionTable & session -> key session
1305
protocol --> CreateSession (session)
1306
Return

*Fig. 13*


Nail Binding
1401
session --> BindingTable [edge --> EdgeId]
YES
NO
1402
binding = session --> BindingTable [edge --> EdgeID]
1403
ListDataSet (*currentBinding, binding)
1404
binding -> flags = = simplex
YES
NO
Return (simplex)
return
1405
binding --> session = session
1406
binding --> key = Label Reference (session --> key)
1407
session --> BindingTable [edge --> EdgeId] = binding
1408
binding --> Edge --> CreateBinding (binding)
remove
1409
binding --> Flag 1 = Binding - Remove
continue
return

*Fig. 14*


Find Path
1501
binding -> Flags == simplex && entry = ListHeadData (binding -> PathList)
YES
1502
path = entry -> Path
Return
NO
1503
elem = null
shortEntry = null
1504
path = PathEntry -> Path && Path -> status == Extend
YES
09
NO
1505
firstBinding = ListHeadData (pathAddress --> Binding List)
1507
firstBinding == ListNextData (ListNext(entry -> Path -> StackList, NULL)) -> Member -> Binding && !ListNext(entry -> Path -> StackList, entry -> member -> StackListEntry) && !shortEntry11(entry -> Path -> StackListSize < shortEntry -> Path -> StackListSize
NO
1506
entry == ListDataNext (binding -> PathList, & elem)
YES
1508
shortEntry = 1 entry
NO
1509
entry = shortEntry
YES
1510
entry
YES
1511
path = entry -> Path
Return
NO
1512
Path = PathEntry -> Path && path -> Status == extend
NO
1513
Create Path (path Address, PathEntry -> map PathEntry -> QOS)
1514
elem = null
entry = ListHeadData (path -> StackList)
YES
1515
elem = PathEntry -> Member -> AddressEntry
entry = PathEntry
1516
ExtendPath (path, map, status)
Return

*Fig. 15*


Process Path Hopping
1601
PathEntry --> Path
NO
1610
PathEntry -> Path = path
YES
1611
entry = ListHeadData (path -> StackList)
1602
PathEntry -> Path = = path
YES
NO
1603
oldStack = PathEntry -> Path -> stacklist
1604
newStack = path -> StackList
1605
oldElm = ListNext (oldStack, Null)
1606
elem = ListNext (NewStack, Null)
1609
entry = ListDataPrev (newStack, & elem)
1607
oldEntry = ListDataNext (oldstack, &oldelem) && entry = ListDataNext (newStack, & elem) && entry --> Member --> Binding == oldEntry Member --> Binding
YES
NO
YES
1608
oldentry
NO
1612
ListHeadInsert (returnList, Entry)
Return (return list)

*Fig. 16*

# METHOD AND SYSTEM FOR DATA DEMULTIPLEXING

## CROSS REFERENCES TO RELATED APPLICATIONS

The present application is a continuation of U.S. application Ser. No. 13/911,324, filed Jun. 6, 2013 (now U.S. Pat. No. 8,694,683), which is a continuation of U.S. application Ser. No. 13/236,090, filed Sep. 19, 2011 (now abandoned), which is a continuation of U.S. application Ser. No. 10/636,314, filed Aug. 6, 2003 know U.S. Pat. No. 8,055,786), which is a continuation of U.S. application Ser. No. 09/474,664, filed Dec. 29, 1999 (now U.S. Pat. No. 6,629,163); the disclosures of each of the above-referenced applications are incorporated by reference herein in their entireties.

## TECHNICAL FIELD

The present invention relates generally to a computer system for data demultiplexing.

## BACKGROUND

Computer systems, which are becoming increasingly pervasive, generate data in a wide variety of formats. The Internet is an example of interconnected computer systems that generate data in many different formats. Indeed, when data is generated on one computer system and is transmitted to another computer system to be displayed, the data may be converted in many different intermediate formats before it is eventually displayed. For example, the generating computer system may initially store the data in a bitmap format. To send the data to another computer system, the computer system may first compress the bitmap data and then encrypt the compressed data. The computer system may then convert that compressed data into a TCP format and then into an IP format. The IP formatted data may be converted into a transmission format, such as an ethernet format. The data in the transmission format is then sent to a receiving computer system. The receiving computer system would need to perform each of these conversions in reverse order to convert the data in the bitmap format. In addition, the receiving computer system may need to convert the bitmap data into a format that is appropriate for rendering on output device.

In order to process data in such a wide variety of formats, both sending and receiving computer systems need to have many conversion routines available to support the various formats. These computer systems typically use predefined configuration information to load the correct combination of conversion routines for processing data. These computer systems also use a process-oriented approach when processing data with these conversion routines. When using a process-oriented approach, a computer system may create a separate process for each conversion that needs to take place. A computer system in certain situations, however, can be expected to receive data and to provide data in many different formats that may not be known until the data is received. The overhead of statically providing each possible series of conversion routines is very high. For example, a computer system that serves as a central controller for data received within a home would be expected to process data received via telephone lines, cable TV lines, and satellite connections in many different formats. The central controller would be expected to output the data to computer displays, television displays, entertainment centers, speakers, recording devices, and so on in many different formats. Moreover, since the various conversion routines may



be developed by different organizations, it may not be easy to identify that the output format of one conversion routine is compatible with the input format of another conversion routine.

It would be desirable to have a technique for dynamically identifying a series of conversion routines for processing data. In addition, it would be desirable to have a technique in which the output format of one conversion routine can be identified as being compatible with the input format of another conversion routine. It would also be desirable to store the identification of a series of conversion routines so that the series can be quickly identified when data is received.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a block diagram illustrating example processing of a message by the conversion system.

FIG. **2** is a block diagram illustrating a sequence of edges.

FIG. **3** is a block diagram illustrating components of the conversion system in one embodiment.

FIG. **4** is a block diagram illustrating example path data structures in one embodiment.

FIG. **5** is a block diagram that illustrates the interrelationship of the data structures of a path.

FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session.

FIGS. **7**A, **7**B, and **7**C comprise a flow diagram illustrating the processing of the message send routine.

FIG. **8** is a flow diagram of the demux routine.

FIG. **9** is a flow diagram of the initialize demux routine.

FIG. **10** is a flow diagram of the init end routine.

FIG. **11** is a flow diagram of a routine to get the next binding.

FIG. **12** is a flow diagram of the get key routine.

FIG. **13** is a flow diagram of the get session routine.

FIG. **14** is a flow diagram of the nail binding routine.

FIG. **15** is a flow diagram of the find path routine.

FIG. **16** is a flow diagram of the process of path hopping routine.

## DETAILED DESCRIPTION

A method and system for converting a message that may contain multiple packets from an source format into a target format. When a packet of a message is received, the conversion system in one embodiment searches for and identifies a sequence of conversion routines (or more generally message handlers) for processing the packets of the message by comparing the input and output formats of the conversion routines. (A message is a collection of data that is related in some way, such as stream of video or audio data or an email message.) The identified sequence of conversion routines is used to convert the message from the source format to the target format using various intermediate formats. The conversion system then queues the packet for processing by the identified sequence of conversion routines. The conversion system stores the identified sequence so that the sequence can be quickly found (without searching) when the next packet in the message is received. When subsequent packets of the message are received, the conversion system identifies the sequence and queues the packets for pressing by the sequence. Because the conversion system receives multiple messages with different source and target formats and identifies a sequence of conversion routines for each message, the conversion systems effectively "demultiplexes" the messages. That is, the conversion system demultiplexes the messages by receiving the message, identifying the sequence of

conversion routines, and controlling the processing of each message by the identified sequence. Moreover, since the conversion routines may need to retain state information between the receipt of one packet of a message and the next packet of that message, the conversion system maintains state information as an instance or session of the conversion routine. The conversion system routes all packets for a message through the same session of each conversion routine so that the same state or instance information can be used by all packets of the message. A sequence of sessions of conversion routines is referred to as a "path." In one embodiment, each path has a path thread associated with it for processing of each packet destined for that path.

In one embodiment, the packets of the messages are initially received by "drivers," such as an Ethernet driver. When a driver receives a packet, it forwards the packet to a forwarding component of the conversion system. The forwarding component is responsible for identifying the session of the conversion routine that should next process the packet and invoking that conversion routine. When invoked by a driver, the forwarding component may use a demultiplexing ("demux") component to identify the session of the first conversion routine of the path that is to process the packet and then queues the packet for processing by the path. A path thread is associated with each path. Each path thread is responsible for retrieving packets from the queue of its path and forwarding the packets to the forwarding component. When the forwarding component is invoked by a path thread, it initially invokes the first conversion routine in the path. That conversion routine processes the packet and forwards the processed packet to the forwarding component, which then invokes the second conversion routine in the path. The process of invoking the conversion routines and forwarding the processed packet to the next conversion routine continues until the last conversion routine in the path is invoked. A conversion routine may defer invocation of the forwarding component until it aggregates multiple packets or may invoke the forwarding component multiple times for a packet once for each sub-packet.

The forwarding component identifies the next conversion routine in the path using the demux component and stores that identification so that the forwarding component can quickly identify the conversion routine when subsequent packets of the same message are received. The demux component, searches for the conversion routine and session that is to next process a packet. The demux component then stores the identification of the session and conversion routine as part of a path data structure so that the conversion system does not need to search for the session and conversion routine when requested to demultiplex subsequent packets of the same message. When searching for the next conversion routine, the demux component invokes a label map get component that identifies the next conversion routine. Once the conversion routine is found, the demux component identifies the session associated with that message by, in one embodiment, invoking code associated with the conversion routine. In general, the code of the conversion routine determines what session should be associated with a message. In certain situations, multiple messages may share the same session. The demux component then extends the path for processing that packet to include that session and conversion routine. The sessions are identified so that each packet is associated with the appropriate state information. The dynamic identification of conversion routines is described in U.S. patent application Ser. No. 11,933,093, filed on Oct. 31, 2007 (now U.S. Pat. No. 7,730, 211), entitled "Method and System for Generating a Mapping Between Types of Data," which is hereby incorporated by reference.



FIG. **1** is a block diagram illustrating example processing of a message by the conversion system. The driver **101** receives the packets of the message from a network. The driver performs any appropriate processing of the packet and invokes a message send routine passing the processed packet along with a reference path entry **150**. The message send routine is an embodiment of the forwarding component. A path is represented by a series of path entries, which are represented by triangles. Each member path entry represents a session and conversion routine of the path, and a reference path entry represents the overall path. The passed reference path entry **150** indicates to the message send routine that it is being invoked by a driver. The message send routine invokes the demux routine **102** to search for and identify the path of sessions that is to process the packet. The demux routine may in turn invoke the label map get routine **104** to identify a sequence of conversion routines for processing the packet. In this example, the label map get routine identifies the first three conversion routines, and the demux routine creates the member path entries **151**, **152**, **153** of the path for these conversion routines. Each path entry identifies a session for a conversion routine, and the sequence of path entries **151**-**155** identifies a path. The message send routine then queues the packet on the queue **149** for the path that is to process the packets of the message. The path thread **105** for the path retrieves the packet from the queue and invokes the message send routine **106** passing the packet and an indication of the path. The message send routine determines that the next session and conversion routine as indicated by path entry **151** has already been found. The message send routine then invokes the instance of the conversion routine for the session. The conversion routine processes the packet and then invokes the message send routine **107**. This processing continues until the message send routine invokes the demux routine **110** after the packet is processed by the conversion routine represented by path entry **153**. The demux routine examines the path and determines that it has no more path entries. The demux routine then invokes the label map get routine **111** to identify the conversion routines for further processing of the packet. When the conversion routines are identified, the demux routine adds path entries **154**, **155** to the path. The messages send routine invokes the conversion routine associated with path entry **154**. Eventually, the conversion routine associated with path entry **155** performs the final processing for the path.

The label map get routine identifies a sequence of "edges" for converting data in one format into another format. Each edge corresponds to a conversion routine for converting data from one format to another. Each edge is part of a "protocol" (or more generally a component) that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has an input format and an output format. The label map get routine identifies a sequence of edges such that the output format of each edge is compatible with the input format of another edge in the sequence, except for the input format of the first edge in the sequence and the output format of the last edge in the sequence. FIG. **2** is a block diagram illustrating a sequence of edges. Protocol PI includes an edge for converting format D**1** to format D**2** and an edge for converting format D**1** to format D**3**; protocol P**2** includes an edge for converting format D**2** to format D**5**, and so on. A 30 sequence for converting format D**1** to format D**15** is shown by the curved lines and is defined by the address "P**1**:I, P**2**:**1**, P**3**:**2**, P**4**:**7**." When a packet of data in format DI is processed by this sequence, it is converted to format DIS. During the process, the packet of data is sequentially converted to format D**2**, D**5**, and D**13**. The output format of protocol P**2**, edge **1**

(i.e., P2:1) is format D5, but the input format of P3:2 is format D10. The label map get routine uses an aliasing mechanism by which two formats, such as D5 and D10 are identified as being compatible. The use of aliasing allows different names of the same format or compatible formats to be correlated.

FIG. 3 is a block diagram illustrating components of the conversion system in one embodiment. The conversion system 300 can operate on a computer system with a central processing unit 301, I/O devices 302, and memory 303. The 110 devices may include an Internet connection, a connection to various output devices such as a television, and a connection to various input devices such as a television receiver. The media mapping system may be stored as instructions on a computer-readable medium, such as a disk drive, memory, or data transmission medium. The data structures of the media mapping system may also be stored on a computer-readable medium. The conversion system includes drivers 304, a forwarding component 305, a demux component 306, a label map get component 307, path data structures 308, conversion routines 309, and instance data 310. Each driver receives data in a source format and forwards the data to the forwarding component. The forwarding component identifies the next conversion routine in the path and invokes that conversion routine to process a packet. The forwarding component may invoke the demux component to search for the next conversion routine and add that conversion routine to the path. The demux component may invoke the label map get component to identify the next conversion routine to process the packet. The demux component stores information defining the paths in the path structures. The conversion routines store their state information in the instance data.

FIG. 4 is a block diagram illustrating example path data structures in one embodiment. The demux component identifies a sequence of "edges" for converting data in one format into another format by invoking the label map get component. Each edge corresponds to a conversion routine for converting data from one format to another. As discussed above, each edge is part of a "protocol" that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has as an input format ("input label") and an output format ("output label"). Each rectangle represents a session 410, 420, 430, 440, 450 for a protocol. A session corresponds to an instance of a protocol. That is, the session includes the protocol and state information associated with that instance of the protocol. Session 410 corresponds to a session for an Ethernet protocol; session 420 corresponds to a session for an IP protocol; and sessions 430, 440, 450 correspond to sessions for a TCP protocol. FIG. 4 illustrates three paths 461, 462, 463. Each path includes edges 411, 421, 431. The paths share the same Ethernet session 410 and IP session 420, but each path has a unique TCP session 430, 440, 450. Thus, path 461 includes sessions 410, 420, and 430; path 462 includes sessions 410, 420, and 440; and path 463 includes sessions 410, 420, and 450. The conversion system represents each path by a sequence of path entry structures. Each path entry structure is represented by a triangle. Thus, path 461 is represented by path entries 415, 425, and 433. The conversion system represents the path entries of a path by a stack list. Each path also has a queue 471, 472, 473 associated with it. Each queue stores the messages that are to be processed by the conversion routines of the edges of the path. Each session includes a binding 412, 422, 432, 442, 452 that is represented by an oblong shape adjacent to the corresponding edge. A binding for an edge of a session represents those paths that include the edge. The binding 412 indicates that three paths are bound (or "nailed") to edge 411 of the Ethernet session 410. The conversion system uses a path list to track the paths that are bound to a binding. The path list of binding 412 identifies path entries 413, 414, and 415.

FIG. 5 is a block diagram that illustrates the interrelationship of the data structures of a path. Each path has a corresponding path structure 501 that contains status information and pointers to a message queue structure 502, a stack list structure 503, and a path address structure 504. The status of a path can be extend, continue, or end. Each message handler returns a status for the path. The status of extend means that additional path entries should be added to the path. The status of end means that this path should end at this point and subsequent processing should continue at a new path. The status of continue means that the protocol does not care how the path is handled. In one embodiment, when a path has a status of continue, the system creates a copy of the path and extends the copy. The message queue structure identifies the messages (or packets of a message) that are queued up for processing by the path and identifies the path entry at where the processing should start. The stack list structure contains a list of pointers to the path entry structures 505 that comprise the path. Each path entry structure contains a pointer to the corresponding path data structure, a pointer to a map structure 507, a pointer to a multiplex list 508, a pointer to the corresponding path address structure, and a pointer to a member structure 509. A map structure identifies the output label of the edge of the path entry and optionally a target label and a target key. A target key identifies the session associated with the protocol that converts the packet to the target label. (The terms "media," "label," and "format" are used interchangeably to refer to the output of a protocol.) The multiplex list is used during the demux process to track possible next edges when a path is being identified as having more than one next edge. The member structure indicates that the path entry represents an edge of a path and contains a pointer to a binding structure to which the path entry is associated (or "nailed"), a stack list entry is the position of the path entry within the associated stack list, a path list entry is the position of the path entry within the associated path list of a binding and an address entry is the position of the binding within the associated path address. A path address of a path identifies the bindings to which the path entries are bound. The path address structure contains a URL for the path, the name of the path identified by the address, a pointer to a binding list structure 506, and the identification of the current binding within the binding list. The URL (e.g., "protocol://tcp(0)/ip(0)/eth(0)") identifies conversion routines (e.g., protocols and edges) of a path in a human-readable format. The URL (universal resource locator) includes a type field (e.g., "protocol") followed by a sequence of items (e.g., "tcp(0)"). The type field specifies the format of the following information in the URL, that specifies that the type field is followed by a sequence of items. Each item identifies a protocol and an edge (e.g., the protocol is "tcp" and the edge is "0"). In one embodiment, the items of a URL may also contain an identifier of state information that is to be used when processing a message. These URLs can be used to illustrate to a user various paths that are available for processing a message. The current binding is the last binding in the path as the path is being built. The binding list structure contains a list of pointers to the binding structures associated with the path. Each binding structure 510 contains a pointer to a session structure, a pointer to an edge structure, a key, a path list structure, and a list of active paths through the binding. The key identifies the state information for a session of a protocol. A path list structure contains pointers to the path entry structures associated with the binding.

Case: 20-1362 Document: 17 Page: 148 Filed: 05/18/2020



FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session. A session structure **601** contains the context for the session, a pointer to a protocol structure for the session, a pointer to a binding table structure **602** for the bindings associated with the session, and the key. The binding table structure contains a list of pointers to the binding structures **510** for the session. The binding structure is described above with reference to FIG. **5**. The path list structure **603** of the binding structure contains a list of pointers to path entry structures **505**. The path entry structures are described with reference to FIG. **5**.

FIGS. **7**A, **7**B, and **7**C comprise a flow diagram illustrating the processing of the message send routine. The message send routine is passed a message along with the path entry associated with the session that last processed the message. The message send routine invokes the message handler of the next edge in the path or queues the message for processing by a path. The message handler invokes the demux routine to identify the next path entry of the path. When a driver receives a message, it invokes the message send routine passing a reference path entry. The message send routine examines the passed path entry to determine (1) whether multiple paths branch from the path of the passed path entry, (2) whether the passed path entry is a reference with an associated path, or (3) whether the passed path entry is a member with a next path entry. If multiple paths branch from the path of the passed path entry, then the routine recursively invokes the message send routine for each path. If the path entry is a reference with an associated path, then the driver previously invoked the message send routine, which associated a path with the reference path entry, and the routine places the message on the queue for the path. If the passed path entry is a member with a next path entry, then the routine invokes the message handler (i.e., conversion routine of the edge) associated with the next path entry. If the passed path entry is a reference without an associated path or is a member without a next path entry, then the routine invokes the demux routine to identify the next path entry. The routine then recursively invokes the messages send routine passing that next path entry. In decision block **701**, if the passed path entry has a multiplex list, then the path branches off into multiple paths and the routine continues at block **709**, else the routine continues at block **702**. A packet may be processed by several different paths. For example, if a certain message is directed to two different output devices, then the message is processed by two different paths. Also, a message may need to be processed by multiple partial paths when searching for a complete path. In decision block **702**, if the passed path entry is a member, then either the next path entry indicates a nailed binding or the path needs to be extended and the routine continues at block **704**, else the routine continues at block **703**. A nailed binding is a binding (e.g., edge and protocol) is associated with a session. In decision block **703**, the passed path entry is a reference and if the passed path entry has an associated path, then the routine can queue the message for the associated path and the routine continues at block **703**A, else the routine needs to identify a path and the routine continues at block **707**. In block **703**A, the routine sets the entry to the first path entry in the path and continues at block **717**. In block **704**, the routine sets the variable position to the stack list entry of the passed path entry. In decision block **705**, the routine sets the variable next entry to the next path entry in the path. If there is a next entry in the path, then the next session and edge of the protocol have been identified and the routine continues at block **706**, else the routine continues at block **707**. In block **706**, the routine passes the message to the message handler of the edge associated with the next entry and then returns. In block **706**, the routine invokes the demux routine passing the passed message, the address of the passed path entry, and the passed path entry. The demux routine returns a list of candidate paths for processing of the message. In decision block **708**, if at least one candidate path is returned, then the routine continues at block **709**, else the routine returns.

Blocks **709**-**716** illustrate the processing of a list of candidate paths that extend from the passed path entry. In blocks **710**-**716**, the routine loops selecting each candidate path and sending the message to be process by each candidate path. In block **710**, the routine sets the next entry to the first path entry of the next candidate path. In decision block **711**, if all the candidate paths have not yet been processed, then the routine continues at block **712**, else the routine returns. In decision block **712**, if the next entry is equal to the passed path entry, then the path is to be extended and the routine continues at block **705**, else the routine continues at block **713**. The candidate paths include a first path entry that is a reference path entry for new paths or that is the last path entry of a path being extended. In decision block **713**, if the number of candidate paths is greater than one, then the routine continues at block **714**, else the routine continues at block **718**. In decision block **714**, if the passed path entry has a multiplex list associated with it, then the routine continues at block **716**, else the routine continues at block **715**. In block **715**, **11** the routine associates the list of candidate path with the multiplex list of the passed path entry and continues at block **716**. In block **716**, the routine sends the message to the next entry by recursively invoking the message send routine. The routine then loops to block **710** to select the next entry associated with the next candidate path.

Blocks **717**-**718** are performed when the passed path entry is a reference path entry that has a path associated with it. In block **717**, if there is a path associated with the next entry, then the routine continues at block **718**, else the routine returns. In block **718**, the routine queues the message for the path of the next entry and then returns.

FIG. **8** is a flow diagram of the demux routine. This routine is passed the packet (message) that is received, an address structure, and a path entry structure. The demux routine extends a path, creating one if necessary. The routine loops identifying the next binding (edge and protocol) that is to process the message and "nailing" the binding to a session for the message, if not already nailed. After identifying the nailed binding, the routine searches for the shortest path through the nailed binding, creating a path if none exists. In block **801**, the routine invokes the initialize demux routine. In blocks **802**-**810**, the routine loops identifying a path or portion of a path for processing the passed message. In decision block **802**, if there is a current status, which was returned by the demuxkey routine that was last invoked (e.g., continue, extend, end, or postpone), then the routine continues at block **803**, else the routine continues at block **811**. In block **803**, the routine invokes the get next binding routine. The get next binding routine returns the next binding in the path. The binding is the edge of a protocol. That routine extends the path as appropriate to include the binding. The routine returns a return status of break, binding, or multiple. The return status of binding indicates that the next binding in the path was found by extending the path as appropriate and the routine continues to "nail" the binding to a session as appropriate. The return status of multiple means that multiple trails (e.g., candidate paths) were identified as possible extensions of the path. In a decision block **804**, if the return status is break, then the routine continues at block **811**. If the return status is multiple, then the routine returns. If the return status is binding, then the routine continues at block **805**. In decision block **805**, if the

Case: 20-1362 Document: 17 Page: 149 Filed: 05/18/2020



retrieved binding is nailed as indicated by being assigned to a session, then the routine loops to block **802**, else the routine continues at block **806**. In block **806**, the routine invokes the get key routine of the edge associated with the binding. The get key routine creates the key for the session associated with the message. If a key cannot be created until subsequent bindings are processed or because the current binding is to be removed, then the get key routine returns a next binding status, else it returns a continue status. In decision block **807**, if the return status of the get key routine is next binding, then the routine loops to block **802** to get the next binding, else the routine continues at block **808**. In block **808**, the routine invokes the routine get session. The routine get session returns the session associated with the key, creating a new session if necessary. In block **809**, the routine invokes the routine nail binding. The routine nail binding retrieves the binding if one is already nailed to the session. Otherwise, that routine nails the binding to the session. In decision block **810**, if the nail binding routine returns a status of simplex, then the routine continues at block **811** because only one path can use the session, else the routine loops to block **802**. Immediately upon return from the nail binding routine, the routine may invoke a set map routine of the edge passing the session and a map to allow the edge to set its map. In block **811**, the routine invokes the find path routine, which finds the shortest path through the binding list and creates a path if necessary. In block **812**, the routine invokes the process path hopping routine, which determines whether the identified path is part of a different path. Path hopping occurs when, for example, IP fragments are built up along separate paths, but once the fragments are built up they can be processed by the same subsequent path.

FIG. **9** is a flow diagram of the initialize demux routine. This routine is invoked to initialize the local data structures that are used in the demux process and to identify the initial binding. The demux routine finds the shortest path from the initial binding to the final binding. If the current status is demux extend, then the routine is to extend the path of the passed path entry by adding additional path entries. If the current status is demux end, then the demux routine is ending the current path. If the current status is demux continue, then the demux routine is in the process of continuing to extend or in the process of starting a path identified by the passed address. In block **901**, the routine sets the local map structure to the map structure in the passed path entry structure. The map structure identifies the output label, the target label, and the target key. In the block **902**, the routine initializes the local message structure to the passed message structure and initializes the pointers path and address element to null. In block **903**, the routine sets of the variable saved status to 0 and the variable status to demux continue. The variable saved status is used to track the status of the demux process when backtracking to nail a binding whose nail was postponed. In decision block **904**, if the passed path entry is associated with a path, then the routine continues at block **905**, else the routine continues at block **906**. In block **905**, the routine sets the variable status to the status of that path. In block **906**, if the variable status is demux continue, then the routine continues at block **907**. If the variable status is demux end, then the routine continues at block **908**. If the variable status is demux extend, then the routine continues at block **909**. In block **907**, the status is demux continue, and the routine sets the local pointer path address to the passed address and continues at block **911**. In block **908**, the status is demux end, and the routine invokes the init end routine and continues at block **911**. In block **909**, the status is demux extend, and the routine sets the local path address to the address of the path that contains the passed path entry. In block **910**, the routine sets the address element and the current binding of the path address pointed to by the local pointer path address to the address entry of the member structure of the passed path entry. In the block **911**, the routine sets the local variable status to demux continue and sets the local binding list structure to the binding list structure from the local path address structure. In block **912**, the routine sets the local pointer current binding to the address of the current binding pointed to by local pointer path address and sets the local variable postpone to 0. In block **913**, the routine sets the function traverse to the function that retrieves the next data in a list and sets the local pointer session to null. The routine then returns.

FIG. **10** is a flow diagram of the init end routine. If the path is simplex, then the routine creates a new path from where the other one ended, else the routine creates a copy of the path. In block **1001**, if the binding of the passed path entry is simplex (i.e., only one path can be bound to this binding), then the routine continues at block **1002**, else the routine continues at block **1003**. In block **1002**, the routine sets the local pointer path address to point to an address structure that is a copy of the address structure associated with the passed path entry structure with its current binding to the address entry associated with the passed path entry structure, and then returns. In block **1003**, the routine sets the local pointer path address to point to an address structure that contains the URL of the path that contains the passed path entry. In block **1004**, the routine sets the local pointer element to null to initialize the selection of the bindings. In blocks **1005** through **1007**, the routine loops adding all the bindings for the address of the passed path entry that include and are before the passed path entry to the address pointed to by the local path address. In block **1005**, the routine retrieves the next binding from the binding list starting with the first. If there is no such binding, then the routine returns, else the routine continues at block **1006**. In block **1006**, the routine adds the binding to the binding list of the local path address structure and sets the current binding of the local variable path address. In the block **1007**, if the local pointer element is equal to the address entry of the passed path entry, then the routine returns, else the routine loops to block **1005** to select the next binding.

FIG. **11** is a flow diagram of a routine to get the next binding. This routine returns the next binding from the local binding list. If there is no next binding, then the routine invokes the routine label map get to identify the list of edges ("trails") that will map the output label to the target label. If only one trail is identified, then the binding list of path address is extended by the edges of the trail. If multiple trails are identified, then a path is created for each trail and the routine returns so that the demux process can be invoked for each created path. In block **1101**, the routine sets the local pointer binding to point to the next or previous (as indicated by the traverse function) binding in the local binding list. In block **1102**, if a binding was found, then the routine returns an indication that a binding was found, else the routine continues at block **1103**. In block **1103**, the routine invokes the label map get function passing the output label and target label of the local map structure. The label map get function returns a trail list. A trail is a list of edges from the output label to the target label. In decision block **1104**, if the size of the trail list is one, then the routine continues at block **1105**, else the routine continues at block **1112**. In blocks **1105-1111**, the routine extends the binding list by adding a binding data structure for each edge in the trail. The routine then sets the local binding to the last binding in the binding list. In block **1108**, the routine sets the local pointer current binding to point to the last binding in the local binding list. In block

1106, the routine sets the local variable temp trail to the trail in the trail list. In block **1107**, the routine extends the binding list by temp trail by adding a binding for each edge in the trail. These bindings are not yet nailed. In block **1108**, the routine sets the local binding to point to the last binding in the local binding list. In decision block **1109**, if the local binding does not have a key for a session and the local map has a target key for a session, then the routine sets the key for the binding to the target key of the local map and continues at block **1110**, else the routine loops to block **1101** to retrieve the next binding in path. In block **1110**, the routine sets the key of the local binding to the target key of the local map. In block **1111**, the routine sets the target key of the local map to null and then loop to block **1101** to return the next binding. In decision block **1112**, if the local session is set, then the demultiplexing is already in progress and the routine returns a break status. In block **1113**, the routine invokes a prepare multicast paths routine to prepare a path entry for each trail in the trail list. The routine then returns a multiple status.

FIG. **12** is a flow diagram of the get key routine. The get key routine invokes an edge's demuxkey routine to retrieve a key for the session associated with the message. The key identifies the session of a protocol. The demux key routine creates the appropriate key for the message. The demux key routine returns a status of remove, postpone, or other. The status of remove indicates that the current binding should be removed from the path. The status of postpone indicates that the demux key routine cannot create the key because it needs information provided by subsequent protocols in the path. For example, a TCP session is defined by a combination of a remote and local port address and an IP address. Thus, the TCP protocol postpones the creating of a key until the IP protocol identifies the IP address. The get key routine returns a next binding status to continue at the next binding in the path. Otherwise, the routine returns a continue status. In block **1201**, the routine sets the local edge to the edge of the local binding (current binding) and sets the local protocol to the protocol of the local edge. In block **1202**, the routine invokes the demux key routine of the local edge passing the local message, local path address, and local map. The demux key routine sets the key in the local binding. In decision block **1203**, if the demux key routine returns a status of remove, then the routine continues at block **1204**. If the demux key routine returns a status of postpone, then the routine continues at block **1205**, else the routine continues at block **1206**. In block **1204**, the routine sets the flag of the local binding to indicate that the binding is to be removed and continues at block **1206**. In block **1205**, the routine sets the variable traverse to the function to list the next data, increments the variable postpone, and then returns a next binding status. In blocks **1206-1214**, the routine processes the postponing of the creating of a key. In blocks **1207-1210**, if the creating of a key has been postponed, then the routine indicates to backtrack on the path, save the demux status, and set the demux status to demux continue. In blocks **1211-1213**, if the creating of a key has not been postponed, then the routine indicates to continue forward in the path and to restore any saved demux status. The save demux status is the status associated by the binding where the backtrack started. In decision block **1206**, if the variable postpone is set, then the routine continues at block **1207**, else the routine continues at block **1211**. In block **1207**, the routine decrements the variable postpone and sets the variable traverse to the list previous data function. In decision block **1208**, if the variable saved status is set, then the routine continues at block **1210**, else the routine continues at block **1209**. The variable saved status contains the status of the demux process when the demux process started to backtrack. In block **1209**, the routine sets the variable saved status to the variable status. In block **1210**, the routine sets the variable status to demux continue and continues at block **1214**. In block **1211**, the routine sets the variable traverse to the list next data function. In decision block **1212**, if the variable saved status in set, then the routine continues at block **1213**, else the routine continues at block **1214**. In block **1213**, the routine sets the variable status to the variable saved status and sets the variable saved status to 0. In decision block **1214**, if the local binding indicates that it is to be removed, then the routine returns a next binding status, else the routine returns a continue status.

FIG. **13** is a flow diagram of the get session routine. This routine retrieves the session data structure, creating a data structure session if necessary, for the key indicated by the binding. In block **1301**, the routine retrieves the session from the session table of the local protocol indicated by the key of the local binding. Each protocol maintains a mapping from each key to the session associated with the key. In decision block **1302**, if there is no session, then the routine continues at block **1303**, else the routine returns. In block **1303**, the routine creates a session for the local protocol. In block **1304**, the routine initializes the key for the local session based on the key of the local binding. In block **1305**, the routine puts the session into the session table of the local protocol. In block **1306**, the routine invokes the create session function of the protocol to allow the protocol to initialize its context and then returns.

FIG. **14** is a flow diagram of the nail binding routine. This routine determines whether a binding is already associated with ("nailed to") the session. If so, the routine returns that binding. If not, the routine associates the binding with the session. The routine returns a status of simplex to indicate that only one path can extend through the nailed binding. In decision block **1401**, if the binding table of the session contains an entry for the edge, then the routine continues at block **1402**, else the routine continues at block **1405**. In block **1402**, the routine sets the binding to the entry from the binding table of the local session for the edge. In block **1403**, the routine sets the current binding to point to the binding from the session. In block **1404**, if the binding is simplex, then the routine returns a simplex status, else the routine returns. Blocks **1405** through **1410** are performed when there is no binding in the session for the edge. In block **1405**, the routine sets the session of the binding to the variable session. In block **1406**, the routine sets the key of the binding to the key from the session. In block **1407**, the routine sets the entry for the edge in the binding table of the local session to the binding. In block **1408**, the routine invokes the create binding function of the edge of the binding passing the binding so the edge can initialize the binding. If that function returns a status of remove, the routine continues at block **1409**. In block **1409**, the routine sets the binding to be removed and then returns.

FIG. **15** is a flow diagram of the find path routine. The find path routine identifies the shortest path through the binding list. If no such path exists, then the routine extends a path to include the binding list. In decision block **1501**, if the binding is simplex and a path already goes through this binding (returned as an entry), then the routine continues at block **1502**, else the routine continues at block **1503**. In block **1502**, the routine sets the path to the path of the entry and returns. In block **1503**, the routine initializes the pointers element and short entry to null. In block **1504**, the routine sets the path to the path of the passed path entry. If the local path is not null and its status is demux extend, then the routine continues at block **1509**, else the routine continues at block **1505**. In blocks **1505-1508**, the routine loops identifying the shortest

path through the bindings in the binding list. The routine loops selecting each path through the binding. The selected path is eligible if it starts at the first binding in the binding list and the path ends at the binding. The routine loops setting the short entry to the shortest eligible path found so far. In block **1505**, the routine sets the variable first binding to the first binding in the binding list of the path address. In block **1506**, the routine selects the next path (entry) in the path list of the binding starting with the first. If a path is selected (indicating that there are more paths in the binding), then the routine continues at block **1507**, else the routine continues at block **1509**. In block **1507**, the routine determines whether the selected path starts at the first binding in the binding list, whether the selected path ends at the last binding in the binding list, and whether the number of path entries in the selected path is less than the number of path entries in the shortest path selected so far. If these conditions are all satisfied, then the routine continues at block **1508**, else the routine loops to block **1506** to select the next path (entry). In block **1508**, the routine sets the shortest path (short entry) to the selected path and loops to block **1506** to select the next path through the binding. In block **1509**, the routine sets the selected path (entry) to the shortest path. In decision block **1510**, if a path has been found, then the routine continues at block **1511**, else the routine continues at block **1512**. In block **1511**, the routine sets the path to the path of the selected path entry and returns. Blocks **1512**-**1516** are performed when no paths have been found. In block **1512**, the routine sets the path to the path of the passed path entry. If the passed path entry has a path and its status is demux extend, then the routine continues at block **1515**, else the routine continues at block **1513**. In block **1513**, the routine creates a path for the path address. In block **1514**, the routine sets the variable element to null and sets the path entry to the first element in the stack list of the path. In block **1515**, the routine sets the variable element to be address entry of the member of the passed path entry and sets the path entry to the passed path entry. In block **1516**, the routine invokes the extend path routine to extend the path and then returns. The extend path routine creates a path through the bindings of the binding list and sets the path status to the current demux status.

FIG. **16** is a flow diagram of the process of path hopping routine. Path hopping occurs when the path through the binding list is not the same path as that of the passed path entry. In decision block **1601**, if the path of the passed path entry is set, then the routine continues at block **1602**, else the routine continues at block **1609**. In decision block **1602**, if the path of the passed path entry is equal to the local path, then the routine continues at **1612**, else path hopping is occurring and the routine continues at block **1603**. In blocks **1603**-**1607**, the routine loops positioning pointers at the first path entries of the paths that are not at the same binding. In block **1603**, the routine sets the variable old stack to the stack list of the path of the passed path entry. In block **1604**, the routine sets the variable new stack to the stack list of the local path. In block **1605**, the routine sets the variable old element to the next element in the old stack. In block **1606**, the routine sets the variable element to the next element in the new stack. In decision block **1607**, the routine loops until the path entry that is not in the same binding is located. In decision block **1608**, if the variable old entry is set, then the routine is not at the end of the hopped from path and the routine continues at block **1609**, else routine continues at block **1612**. In block **1609**, the routine sets the variable entry to the previous entry in the hopped-to path. In block **1610**, the routine sets the path of the passed path entry to the local path. In block **1611**, the routine sets the local entry to the first path entry of the stack list of the local path. In block **1612**, the routine inserts an entry into return list and then returns.

Although the conversion system has been described in terms of various embodiments, the invention is not limited to these embodiments. Modification within the spirit of the invention will be apparent to those skilled in the art. For example, a conversion routine may be used for routing a message and may perform no conversion of the message. Also, a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence. The scope of the invention is defined by the claims that follow.

What is claimed is:

**1**. An apparatus, comprising:

a processing unit; and

a memory storing instructions executable by the processing unit to:

identify a path for one or more received packets of a message, wherein the path indicates a sequence of two or more routines for processing packets in the message, wherein the path is identified based on a key located in one of the received packets, and wherein the key includes an IP address and a port address; and

process the one or more received packets using the sequence of routines indicated in the identified path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.

**2**. The apparatus of claim **1**, wherein the key includes a remote port address and a local port address.

**3**. The apparatus of claim **1**, wherein the sequence of routines includes:

a second routine that is used to execute a second, different protocol to convert packets of the different format into another format, wherein the second protocol is an application layer protocol.

**4**. The apparatus of claim **3**, wherein the sequence of routines further includes a third routine that is used to execute a different application layer protocol to further convert the packets.

**5**. The apparatus of claim **1**, wherein the path further indicates sessions corresponding to respective ones of the sequence of routines.

**6**. The apparatus of claim **1**, wherein the key identifies a TCP session associated with the received one or more packets.

**7**. The apparatus of claim **1**, wherein the sequence of routines includes a routine that is executable to process the one or more packets without converting a format of the packets.

**8**. An apparatus, comprising:

a processing unit; and

a memory storing instructions executable by the processing unit to:

receive one or more packets of a message;

identify, using an IP address and one or more port addresses located in one of the received packets, a sequence of two or more routines for processing packets in the message; and

process the one or more received packets using the identified sequence of routines, wherein the sequence includes a routine that is executable to perform a

Case: 20-1362 Document: 17 Page: 152 Filed: 05/18/2020





Transmission Control Protocol (TCP) to convert at least one of the packets of the message into a different format.

**9**. The apparatus of claim **8**, wherein the one or more port addresses include a remote port address and a local port address.

**10**. The apparatus of claim **8**, wherein the sequence of routines includes a plurality of application-level routines.

**11**. The apparatus of claim **8**, wherein the IP address and the one or more port addresses located in one of the received packets forms a key value that identifies a TCP session associated with the one or more received packets.

**12**. The apparatus of claim **8**, wherein the instructions are executable to use the IP address and the one or more port addresses to identify sessions corresponding to various ones of the sequence of routines.

**13**. The apparatus of claim **8**, wherein the instructions are executable to use the IP address and the one or more port addresses to identify a corresponding queue for the message.

**14**. The apparatus of claim **8**, wherein the sequence of routines includes a routine that does not perform a format conversion on the one or more received packets.

**15**. A non-transitory, computer-readable medium comprising software instructions for processing a message, wherein the software instructions, when executed, cause a computer system to:

identify a path for one or more received packets of the message, wherein the path indicates a sequence of two or more routines for processing packets in the message, wherein the path is identified based on a key value located in one of the received packets, and wherein the key value includes an IP address and one or more port addresses;

process the one or more received packets using the sequence of routines indicated in the identified path, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format.



**16**. The computer-readable medium of claim **15**, wherein the one or more port addresses in the key value include a remote port address and a local port address.

**17**. The computer-readable medium of claim **15**, wherein the path indicates sessions corresponding to respective ones of the sequence of routines.

**18**. The computer-readable medium of claim **15**, wherein the sequence of routines includes a plurality of application-level routines.

**19**. The computer-readable medium of claim **18**, wherein the plurality of application-level routines includes a decryption routine.

**20**. The computer-readable medium of claim **15**, wherein the sequence of routines includes a routine that is used to execute an Internet Protocol (IP) to convert packets having an IP format into the TCP format, and wherein the key value further identifies a TCP session associated with the one or more received packets.

* * * * *

US009591104B2

(12) **United States Patent**
**Balassanian**

(10) **Patent No.: US 9,591,104 B2**
(45) **Date of Patent: *Mar. 7, 2017**

(54) **METHOD AND SYSTEM FOR DATA DEMULTIPLEXING**

(71) Applicant: **Implicit, LLC**, Seattle, WA (US)

(72) Inventor: **Edward Balassanian**, Seattle, WA (US)

(73) Assignee: **Implicit, LLC**, Seattle, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 100 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/050,027**

(22) Filed: **Feb. 22, 2016**

(65) **Prior Publication Data**

US 2016/0173653 A1 Jun. 16, 2016

**Related U.S. Application Data**

(63) Continuation of application No. 14/230,952, filed on Mar. 31, 2014, now Pat. No. 9,270,790, which is a continuation of application No. 13/911,324, filed on Jun. 6, 2013, now Pat. No. 8,694,683, which is a continuation of application No. 13/236,090, filed on
(Continued)

(51) **Int. Cl.**

| | |
|---|---|
| ***H04L 12/58*** | (2006.01) |
| ***H04L 29/06*** | (2006.01) |
| ***H04L 29/08*** | (2006.01) |
| ***H04L 29/12*** | (2006.01) |

(52) **U.S. Cl.**

CPC .......... ***H04L 69/08*** (2013.01); ***H04L 61/2007*** (2013.01); ***H04L 61/6063*** (2013.01); ***H04L 67/02*** (2013.01); ***H04L 69/16*** (2013.01); ***H04L 69/18*** (2013.01)

(58) **Field of Classification Search**

None

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,298,674 A 3/1994 Yun
5,392,390 A 2/1995 Crozier
(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0408132 | 1/1991 |
| EP | 0807347 | 11/1997 |
| EP | 0817031 | 1/1998 |

OTHER PUBLICATIONS

2015 WL 2194627, United States District Court, N.D. California, *Implicit L.L.C.*, Plaintiff, v. *F5 Networks, Inc.*, Defendant, Case No. 14-cv-02856-SI, signed May 6, 2015, 14 pages.
(Continued)

*Primary Examiner* — Duc Duong

(57) **ABSTRACT**

A method and system for demultiplexing packets of a message is provided.
The demultiplexing system receives packets of a message, identifies a sequence of message handlers for processing the message, identifies state information associated with the message for each message handler, and invokes the message handlers passing the message and the associated state information. The system identifies the message handlers based on the initial data type of the message and a target data type. The identified message handlers effect the conversion of the data to the target data type through various intermediate data types.

**20 Claims, 16 Drawing Sheets**



## Related U.S. Application Data

Sep. 19, 2011, now abandoned, which is a continuation of application No. 10/636,314, filed on Aug. 6, 2003, now Pat. No. 8,055,786, which is a continuation of application No. 09/474,664, filed on Dec. 29, 1999, now Pat. No. 6,629,163.

## (56) References Cited


U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,414,833 | A | 5/1995 | Hershey et al. | |
| 5,425,029 | A | 6/1995 | Hluchyj et al. | |
| 5,568,478 | A | 10/1996 | van Loo, Jr. et al. | |
| 5,627,997 | A | 5/1997 | Pearson et al. | |
| 5,710,917 | A | 1/1998 | Musa et al. | |
| 5,761,651 | A | 6/1998 | Hasebe et al. | |
| 5,768,521 | A | 6/1998 | Dedrick | |
| 5,826,027 | A | 10/1998 | Pedersen et al. | |
| 5,835,726 | A | 11/1998 | Shwed et al. | |
| 5,848,233 | A | 12/1998 | Radia et al. | |
| 5,848,415 | A | 12/1998 | Guck | |
| 5,854,899 | A | 12/1998 | Callon et al. | |
| 5,870,479 | A | 2/1999 | Feiken et al. | |
| 5,898,830 | A | 4/1999 | Wesinger, Jr. et al. | |
| 5,991,299 | A * | 11/1999 | Radogna | H04L 29/06 370/389 |
| 5,991,806 | A * | 11/1999 | McHann, Jr. | H04L 41/0213 709/224 |
| 6,047,002 | A | 4/2000 | Hartmann et al. | |
| 6,091,725 | A | 7/2000 | Cheriton et al. | |
| 6,101,189 | A | 8/2000 | Tsuruoka | |
| 6,101,320 | A | 8/2000 | Schuetze et al. | |
| 6,104,500 | A | 8/2000 | Alam et al. | |
| 6,104,704 | A | 8/2000 | Buhler et al. | |
| 6,111,893 | A | 8/2000 | Volftsun et al. | |
| 6,115,393 | A | 9/2000 | Engel et al. | |
| 6,119,236 | A | 9/2000 | Shipley | |
| 6,128,624 | A | 10/2000 | Papierniak et al. | |
| 6,141,749 | A | 10/2000 | Coss et al. | |
| 6,151,390 | A | 11/2000 | Volftsun et al. | |
| 6,157,622 | A | 12/2000 | Tanaka et al. | |
| 6,192,419 | B1 | 2/2001 | Aditham et al. | |
| 6,199,054 | B1 | 3/2001 | Khan et al. | |
| 6,212,550 | B1 | 4/2001 | Segur | |
| 6,222,536 | B1 | 4/2001 | Kihl et al. | |
| 6,226,267 | B1 | 5/2001 | Spinney et al. | |
| 6,243,667 | B1 | 6/2001 | Kerr et al. | |
| 6,246,678 | B1 | 6/2001 | Erb et al. | |
| 6,259,781 | B1 | 7/2001 | Crouch et al. | |
| 6,275,507 | B1 | 8/2001 | Anderson et al. | |
| 6,278,532 | B1 | 8/2001 | Heimendinger et al. | |
| 6,356,529 | B1 | 3/2002 | Zarom | |
| 6,359,911 | B1 | 3/2002 | Movshovich et al. | |
| 6,401,132 | B1 | 6/2002 | Bellwood et al. | |
| 6,404,775 | B1 | 6/2002 | Leslie et al. | |
| 6,405,254 | B1 | 6/2002 | Hadland | |
| 6,426,943 | B1 | 7/2002 | Spinney et al. | |
| 6,493,348 | B1 | 12/2002 | Gelman et al. | |
| 6,504,843 | B1 | 1/2003 | Cremin et al. | |
| 6,519,636 | B2 | 2/2003 | Engel et al. | |
| 6,560,236 | B1 | 5/2003 | Varghese et al. | |
| 6,574,610 | B1 | 6/2003 | Clayton et al. | |
| 6,598,034 | B1 | 7/2003 | Kloth | |
| 6,629,163 | B1 | 9/2003 | Balassanian | |
| 6,651,099 | B1 | 11/2003 | Dietz et al. | |
| 6,678,518 | B2 | 1/2004 | Eerola | |
| 6,680,922 | B1 | 1/2004 | Jorgensen | |
| 6,701,432 | B1 | 3/2004 | Deng et al. | |
| 6,711,166 | B1 | 3/2004 | Amir et al. | |
| 6,785,730 | B1 | 8/2004 | Taylor | |
| 6,871,179 | B1 | 3/2005 | Kist et al. | |
| 6,889,181 | B2 | 5/2005 | Kerr et al. | |
| 6,937,574 | B1 | 8/2005 | Delaney et al. | |
| 6,957,346 | B1 | 10/2005 | Kivinen et al. | |
| 6,959,439 | B1 * | 10/2005 | Boike | G06F 13/102 719/321 |
| 7,233,569 | B1 | 6/2007 | Swallow | |
| 7,233,948 | B1 | 6/2007 | Shamoon et al. | |
| 7,281,036 | B1 | 10/2007 | Lu et al. | |
| 7,383,341 | B1 | 6/2008 | Saito et al. | |
| 7,711,857 | B2 | 5/2010 | Balassanian | |
| 8,055,786 | B2 | 11/2011 | Balassanian | |
| 8,694,683 | B2 | 4/2014 | Balassanian | |
| 2003/0142669 | A1 | 7/2003 | Kubota et al. | |
| 2004/0015609 | A1 * | 1/2004 | Brown | H04L 69/08 709/246 |
| 2008/0250045 | A1 | 10/2008 | Balassanian et al. | |
| 2009/0083763 | A1 * | 3/2009 | Sareen | H04L 67/2823 719/317 |
| 2009/0265695 | A1 | 10/2009 | Karino | |

OTHER PUBLICATIONS

Alexander, D. et al., "The SwitchWare Active Network Architecture", Jun. 6, 1998, IEEE.

Antoniazzi, S. et al., "An Open Software Architecture for Multimedia Consumer Terminals", Central Research Labs, Italy; Alcatel SEL Research Centre, Germany, ECMAST 1997.

Arbanowski, Stefan, "Generic Description of Telecommunication Services and Dynamic Resource Selection in Intelligent Communication Environments", Thesis, Technische Universitat Berlin, Oct. 9, 1996 (3 documents).

Arbanowski, S., et al.,Service Personalization for Unified Messaging Systems, Jul. 6-8, 1999, The Fourth IEEE Symposium on Computers and Communications, ISCC '99, Red Sea, Egypt.

Atkinson, R., "Security Architecture for the Internet Protocol", Aug. 1995, Naval Research Laboratory.

Atkinson, R., "IP Authentication Header", Aug. 1995, Naval Research Laboratory.

Atkinson, R., "IP Encapsulating Security Payload (ESP)", Aug. 1995, Naval Research Laboratory.

Back, G., et al., Java Operating Systems: Design and Implementation, Aug. 1998, Technical Report UUCS-98-015, University of Utah.

Baker, Dr. Sean, "CORBA Implementation Issues", 1994, IONA Technologies, O'Reilly Institute Dublin, Ireland.

Barrett, R., et al., "Intermediaries: New Places for Producing and Manipulating Web Content", 1998, IBM Almaden Research Center, Elsevier Science.

Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the DES Modes of Operation", Aug. 15, 1997, Dept. of Computer Science and Engineering, University of California, San Diego.

Bellare, M., et al., "A Concrete Security Treatment of Symmetric Encryption: Analysis of the DES Modes of Operation", Aug. 15, 1997, IEEE.

Bellare, M., et al., "XOR MACs: New Methods for Message Authentication Using Finite Pseudorandom Functions", 1995, CRYPTO '95, LNCS 963, pp. 15-28, Springer-Verlag Berlin Heidelberg.

Bellissard, L., et al., "Dynamic Reconfiguration of Agent-Based Applications", Third European Research Seminar on Advances in Distributed Systems, (ERSADS '99) Madeira Island.

Bolding, Darren, "Network Security, Filters and Firewalls", 1995, www.acm.org/crossroads/xrds2-1/security.html.

Booch, G., et al., "Software Engineering with ADA", 1994, Third Edition, The Benjamin/Cummings Publishing Company, Inc. (2 documents).

Breugst, et al., "Mobile Agents—Enabling Technology for Active Intelligent Network Implementation", May/Jun. 1998, IEEE Network.

"C Library Functions", AUTH(3) Sep. 17, 1993, Solbourne Computer, Inc.

Chapman, D., et al., "Building Internet Firewalls", Sep. 1995, O'Reilly & Associates, Inc.

CheckPoint FireWall-1 Technical White Paper, Jul. 18, 1994, CheckPoint Software Technologies, Ltd.

CheckPoint FireWall-1 White Paper, Sep. 1995, Version 2.0, CheckPoint Software Technologies, Ltd.

(56) **References Cited**

OTHER PUBLICATIONS

Command Line Interface Guide P/N 093-0011-000 Rev C Version 2.5, 2000-2001, NetScreen Technologies, Inc.
Coulson, G. et al., "A CORBA Compliant Real-Time Multimedia Platform for Broadband Networks", Lecture Notes in Computer Science, 1996, Trends in Distributed Systems CORBA and Beyond.
Cox, Brad, "SuperDistribution, Objects As Property on the Electronic Frontier", 1996, Addison-Wesley Publishing Company.
Cranes, et al., "A Configurable Protocol Architecture for CORBA Environments", Autonomous Decentralized Systems 1997 Proceedings ISADS, Third International Symposium Apr. 9-11, 1997.
Curran, K., et al., "CORBA Lacks Venom", University of Ulster, Northern Ireland, UK 2000.
Dannert, Andreas, "Call Logic Service for a Personal Communication Supporting System", Thesis, Jan. 20, 1998, Technische Universitat Berlin.
DARPA Internet Program Protocol Specification, "Transmission Control Protocol", Sep. 1981, Information Sciences Institute, California.
DARPA Internet Program Protocol Specification, "Internet Protocol", Sep. 1981, Information Sciences Institute, California.
Decasper, D., et al., "Crossbow: A Toolkit for Integrated Services over Cell Switched IPv6", 1997, Computer Engineering and Networks Laboratory, ETH Zurich, Switzerland.
Decasper, D., et al., "Router Plugins A Software Architecture for Next Generation Routers", 1998, Proceedings of ACM SIGCONM '98.
Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1998, Nokia, The Internet Society.
Deering, S., et al., Internet Protocol, Version 6 (IPv6) Specification, Dec. 1995, Network Working Group, RFC 1883.
Dutton, et al, "Asynchronous Transfer Mode Technical Overview (ATM)", Second Edition; IBM, Oct. 1995, 2nd Edition, Prentice Hall PTR, USA.
Eckardt, T., et al., "Application of X.500 and X.700 Standards for Supporting Personal Communications in Distributed Computing Environments", 1995, IEEE.
Eckardt, T., et al., "Personal Communications Support based on TMN and TINA Concepts", 1996, IEEE Intelligent Network Workshop (IN '96), Apr. 21-24, Melbourne, Australia.
Eckardt, T., et al., "Beyond IN and UPT—A Personal Communications Support System Based on TMN Concepts", Sep. 1997, IEEE Journal on Selected Areas in Communications, vol. 15, No. 7.
Egevang, K., et al., "The IP Network Address Translator (NAT)", May 1994, Network Working Group, RFC 1631.
Estrin, D., et al., "Visa Protocols for Controlling Inter-Organizational Datagram Flow", Dec. 1998, Computer Science Department, University of Southern California and Digital Equipment Corporation.
Faupel, M., "Java Distribution and Deployment", Oct. 9, 1997, APM Ltd., United Kingdom.
Felber, P., "The CORBA Object Group Service: A Service Approach to Object Groups in CORBA", Thesis, 1998, Ecole Polytechnique Federate de Lausanne, Switzerland.
Fish, R., et al., "DRoPS: Kernel Support for Runtime Adaptable Protocols", Aug. 25-27, 1998, IEEE 24th Euromicro Conference, Sweden.
Fiuczynski, M., et al., "An Extensible Protocol Architecture for Application-Specific Networking", 1996, Department of Computer Science and Engineering, University of Washington.
Franz, Stefan, "Job and Stream Control in Heterogeneous Hardware and Software Architectures", Apr. 1998, Technische Universitat, Berlin (2 documents).
Fraser, T., "DTE Firewalls: Phase Two Measurement and Evaluation Report", Jul. 22, 1997, Trusted Information Systems, USA.
Gazis, V., et al., "A Survey of Dynamically Adaptable Protocol Stacks", first Quarter 2010, IEEE Communications Surveys & Tutorials, vol. 12, No. 1, 1st Quarter.
Gokhale, A., et al., "Evaluating the Performance of Demultiplexing Strategies for Real-Time CORBA", Nov. 1997, GLOBECOM.
Gokhale, A., et al., "Measuring and Optimizing CORBA Latency and Scalability Over High-Speed Networks", Apr. 1998, IEEE Transaction on Computers, vol. 47, No. 4; Proceedings of the International Conference on Distributed Computing Systems (ICDCS '97) May 27-30, 1997.
Gokhale, A., et al., "Operating System Support for High-Performance, Real-Time CORBA", 1996.
Gokhale, A., et al., "Principles for Optimizing CORBA Internet Inter-ORB Protocol Performance", Jan. 9, 1998, Proceedings of the HICSS Conference, Hawaii.
Gong, Li, "Java Security: Present and Near Future", May/Jun. 1997, IEEE Micro.
Gong, Li, "New Security Architectural Directions for Java (Extended Abstract)", Dec. 19, 1996, IEEE.
Gong, Li, "Secure Java Class Loading", Nov./Dec. 1998, IEEE Internet.
Goos, G., et al., "Lecture Notes in Computer Science: Mobile Agents and Security", 1998, Springer-Verlag Berlin Heidelberg.
Goralski, W., "Introduction to ATM Networking", 1995, McGraw-Hill Series on Computer Communications, USA.
Hamzeh, K., et al., "Layer Two Tunneling Protocol L2TP", Jan. 1998, PPP Working Group, Internet Draft.
Harrison, T., et al., "The Design and Performance of a Real-Time CORBA Event Service", Aug. 8, 1997,Proceedings of the OOPSLA '97 Conference, Atlanta, Georgia in Oct. 1997.
Huitema, Christian, "IPv6 The New Internet Protocol", 1997 Prentice Hall, Second Edition.
Hutchins, J., et al., "Enhanced Internet Firewall Design Using Stateful Filters Final Report", Aug. 1997, Sandia Report; Sandia National Laboratories.
IBM, Local Area Network Concepts and Products: Routers and Gateways, May 1996.
Juniper Networks Press Release, Juniper Networks Announces Junos, First Routing Operating System for High-Growth Internet Backbone Networks, Jul. 1, 1998, Juniper Networks.
Juniper Networks Press Release, Juniper Networks Ships the Industry's First Internet Backbone Router Delivering Unrivaled Scalability, Control and Performance, Sep. 16, 1998, Juniper Networks.
Karn, P., et al., "The ESP DES-CBC Transform", Aug. 1995, Network Working Group, RFC 1829.
Kelsey, J. et al., "Authenticating Outputs of Computer Software Using a Cryptographic Coprocessor", Sep. 1996, CARDIS.
Krieger, D., et al., "The Emergence of Distributed Component Platforms", Mar. 1998, IEEE.
Krupczak, B., et al., "Implementing Communication Protocols in Java", Oct. 1998, IEEE Communications Magazine.
Krupczak, B., et al., "Implementing Protocols in Java: The Price of Portability", 1998, IEEE.
Lawson, Stephen, "Cisco NetFlow Switching Speeds Traffic Routing", Jul. 7, 1997, Infoworld.
Li, S., et al., "Active Gateway: A Facility for Video Conferencing Traffic Control", Feb. 1, 1997, Purdue University; Purdue e-Pubs; Computer Science Technical Reports.
Magedanz, T., et al., "Intelligent Agents: An Emerging Technology for Next Generation Telecommunications?", 1996, IEEE.
Mills, H., et al., "Principles of Information Systems Analysis and Design", 1986, Academic Press, Inc. (2 documents).
Mosberger, David, "*Scout: A Path-Based Operating System*", Doctoral Dissertation Submitted to the University of Arizona, 1997 (3 documents).
Muhugusa, M., et al., "COMSCRIPT : An Environment for the Implementation of Protocol Stacks and their Dynamic Reconfiguration", Dec. 1994.
Nelson, M., et al., The Data Compression Book, 2nd Edition, 1996, M&T Books, A division of MIS Press, Inc.
NetRanger User's Guide, 1996, WheelGroup Corporation.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 Rev A, NetScreen Technologies, Inc., USA.
NetScreen Command Line Reference Guide, 2000, P/N 093-0000-001 NetScreen Technologies, Inc., USA.
NetScreen Concepts and Examples ScreenOS Reference Guide, 1998-2001, Version 2.5 P/N 093-0039-000 Rev. A, NetScreen Technologies, Inc.

(56) **References Cited**

OTHER PUBLICATIONS

NetScreen Products Webpage, wysiwyg://body_bottom.3/http://www...een.com/products/products.html 1998-1999, NetScreen Technologies, Inc.
NetScreen WebUI, Reference Guide, Version 2.5.0 P/N 093-0040-000 Rev. A, 2000-2001, NetScreen Technologies, Inc.
NetStalker Installation and User's Guide, 1996, Version 1.0.2, Haystack Labs, Inc.
Niculescu, Dragos, "Survey of Active Network Research", Jul. 14, 1999, Rutgers University.
Nortel Northern Telecom, "ISDN Primary Rate User-Network Interface Specification", Aug. 1998.
Nygren, Erik, "The Design and Implementation of a High-Performance Active Network Node", Thesis, Feb. 1998, MIT.
Osbourne, E., "Morningstar Technologies SecureConnect Dynamic Firewall Filter User's Guide", Jun. 14, 1995, V. 1.4, Morning Star Technologies, Inc.
Padovano, Michael, "Networking Applications on UNIX System V Release 4," 1993 Prentice Hall, USA (2 documents).
Pfeifer, T., "Automatic Conversion of Communication Media", 2000, GMD Research Series, Germany.
Pfeifer, T., "Automatic Conversion of Communication Media", Thesis, 1999, Technischen Universitat Berlin, Berlin.
Pfeifer, T., et al., "Applying Quality-of-Service Parametrization for Medium-to-Medium Conversion", Aug. 25-28, 1996, 8[th] IEEE Workshop on Local and Metropolitan Area Networks, Potsdam, Germany.
Pfeifer, T., "Micronet Machines—New Architectural Approaches for Multimedia End-Systems", 1993 Technical University of Berlin.
Pfeifer, T., "On the Convergence of Distributed Computing and Telecommunications in the Field of Personal Communications", 1995, KiVS, Berlin.
Pfeifer, T., "Speech Synthesis in the Intelligent Personal Communication Support System (IPCSS)", Nov. 2-3, 1995, 2[nd] 'Speak!' Workshop on Speech Generation in Multimodal Information Systems and Practical Applications.
Pfeifer, T., et al., "Generic Conversion of Communication Media for Supporting Personal Mobility", Nov. 25-27, 1996, Proc. of the Third COST 237 Workshop: Multimedia Telecommunications and Applications.
Pfeifer, T., et al., "Intelligent Handling of Communication Media", Oct. 29-31, 1997, 6[th] IEEE Workshop on Future Trends of Distributed Computing Systems (FTDCS) Tunis.
Pfeifer, T., et al., "Resource Selection in Heterogeneous Communication Environments using the Teleservice Descriptor", Dec. 15-19, 1997, Proceedings from the 4[th] COST 237 Workshop: From Multimedia Services to Network Services, Lisboa.
Pfeifer, T., et al., Mobile Guide—Location-Aware Applications from the Lab to the Market, 1998, IDMS '98, LNCS 1483, pp. 15-28.
Pfeifer, T., et al., "The Active Store providing Quality Enhanced Unified Messaging", Oct. 20-22, 1998, 5[th] Conference on computer Communications, AFRICOM-CCDC '98, Tunis.
Pfeifer, T.,, et al., "*A Modular Location-Aware Service and Application Platform*", 1999, Technical University of Berlin.
Plagemann, T., et al., "*Evaluating Crucial Performance Issues of Protocol Configuration in DaCaPo*", 1994, University of Oslo.
Psounis, Konstantinos, "*Active Networks: Applications, Security Safety, and Architectures*", First Quarter 1999, IEEE Communications Surveys.
Rabiner, Lawrence, "*Applications of Speech Recognition in the Area of Telecommunications*", 1997, IEEE.
Raman, Suchitra, et al, "*A Model, Analysis, and Protocol Framework for Soft State-based Communications*", Department of EECS, University of California, Berkeley.
Rogaway, Phillip, "*Bucket Hashing and its Application to Fast Message Authentication*", Oct. 13, 1997, Department of Computer Science, University of California.
Schneier, B., et al., "*Remote Auditing of Software Outputs Using a Trusted CoProcessor*", 1997, Elsevier Paper Reprint 1999.
Tennenhouse, D., et al., "*From Internet to ActiveNet*", Laboratory of Computer Science, MIT, 1996.
Tudor, P., "*Tutorial MPEG-2 Video Compression*", Dec. 1995, Electronics & Communication Engineering Journal.
US Copyright Webpage of Copyright Title, "*IPv6: the New Internet Protocol*", by Christian Huitema, 1998 Prentice Hall.
Van der Meer, et al., "*An Approach for a 4[th] Generation Messaging System*", Mar. 21-23, 1999, The Fourth International Symposium on Autonomous Decentralized Systems ISADS '99, Tokyo.
Van der Meer, Sven, "*Dynamic Configuration Management of the Equipment in Distributed Communication Environments*", Thesis, Oct. 6, 1996, Berlin (3 documents).
Van Renesse, R. et al., "*Building Adaptive Systems Using Ensemble*", Cornell University Jul. 1997.
Venkatesan, R., et al., "*Threat-Adaptive Security Policy*", 1997, IEEE.
Wetherall, D., et al., "*The Active IP Option*", Sep. 1996, Proceedings of the 7[th] ACM SIGOPS European Workshop, Connemara, Ireland.
Welch, Terry, "*A Technique for High-Performance Data Compression*", 1984, Sperry Research Center, IEEE.
Zeletin, R. et al., "*Applying Location Aware Computing for Electronic Commerce: Mobile Guide*", Oct. 20-22, 1998, 5[th] Conference on Computer Communications, AFRICOM-CCDC '98, Tunis.
Zell, Markus, "*Selection of Converter Chains by Means of Quality of Service Analysis*", Thesis, Feb. 12, 1998, Technische Universitat Berlin.
Feb. 4, 2008 Plaintiff's Original Complaint.
Aug. 26, 2008 Defendant NVIDIA Corporation's Answer to Complaint.
Aug. 26, 2008 Defendant Sun Microsystems, Inc.'s Answer to Complaint.
Aug. 27, 2008 Defendant Advanced Micro Devices, Inc.'s Answer to Complaint for Patent Infringement.
Aug. 27, 2008 RealNetworks, Inc.'s Answer to Implicit Networks, Inc.'s Original Complaint for Patent Infringement, Affirmative Defenses, and Counterclaims.
Aug. 27, 2008 Intel Corp.'s Answer, Defenses and Counterclaims.
Aug. 27, 2008 Defendant RMI Corporation's Answer to Plaintiff's Original Complaint.
Sep. 15, 2008 Plaintiffs Reply to NVIDIA Corporation's Counterclaims.
Sep. 15, 2008 Plaintiff's Reply to Sun Microsystems Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiff's Reply to RealNetworks, Inc.'s Counterclaims.
Sep. 16, 2008 Plaintiff's Reply to Intel Corp.'s Counterclaims.
Dec. 10, 2008 Order granting Stipulated Motion for Dismissal with Prejudice re NVIDIA Corporation, Inc.
Dec. 16, 2008 Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Dec. 29, 2008 Order granting Stipulated Motion for Dismissal without Prejudice of Claims re Sun Microsystems, Inc.
Jan. 5, 2009 Plaintiff's Opposition to Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending Reexamination and Exhibit A.
Jan. 9, 2009 Reply of Defendants AMD, RealNetworks, RMI, and Sun's Motion to Stay Pending the Patent and Trademark Office's Reexamination of the '163 Patent.
Feb. 9, 2009 Order Granting Stay Pending the United States Patent and Trademark Office's Reexamination of U.S. Pat. No. 6,629,163.
Feb. 17, 2009 Order Granting Stipulated Motion for Dismissal of Advanced Micro Devices, Inc. with Prejudice.
May 14, 2009 Order Granting Stipulated Motion for Dismissal of RMI Corporation with Prejudice.
Oct. 13, 2009 Order Granting Stipulated Motion for Dismissal of Claims Against and Counterclaims by Intel Corporation.
Oct. 30, 2009 Executed Order for Stipulated Motion for Dismissal of Claims Against and Counterclaims by RealNetworks, Inc.
Nov. 30, 2009 Plaintiffs Original Complaint, *Implicit* v *Microsoft*, Case No. 09-5628.
Jan. 22, 2010 Order Dismissing Case, *Implicit* v *Microsoft*, Case No. 09-5628.

(56) **References Cited**

OTHER PUBLICATIONS

Aug. 16, 2010 Plaintiffs Original Complaint, *Implicit* v *Cisco*, Case No. 10-3606.
Nov. 22, 2010 Defendant Cisco Systems, Inc.'s Answer and Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Dec. 13, 2010 Plaintiff, Implicit Networks, Inc.'s, Answer to Counterclaims, *Implicit* v *Cisco*, Case No. 10-3606.
Oct. 4, 2011 Order of Dismissal with Prejudice, *Implicit* v *Cisco*, Case No. 10-3606.
Aug. 24, 2010 Plaintiffs Original Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Dec. 1, 2010 Plaintiff's First Amended Complaint, *Implicit* v *Citrix*, Case No. 10-3766.
Jan. 14, 2011 Defendant Citrix Systems, Inc.'s Answer, Defenses and Counter-complaint for Declaratory Judgment, *Implicit* v *Citrix*, Case No. 10-3766.
Feb. 18, 2011 Plaintiff, Implicit Networks, Inc.'s, Answer to Defendants Counterclaims, *Implicit* v *Citrix*, Case No. 10-3766.
May 2, 2011 Order of Dismissal, *Implicit* v *Citrix*, Case No. 10-3766.
Jul. 30, 2010 Plaintiff's Original Complaint, *Implicit* v *F5*, Case No. 10-3365.
Oct. 13, 2010 Defendants' Answer and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Nov. 3, 2010 Plaintiff's Answer to Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Dec. 10, 2010 Plaintiff's First Amended Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jan. 14, 2011 Defendants' Answer to 1st Amended Complaint and Counterclaim, *Implicit* v *F5*, Case No. 10-3365.
Feb. 18, 2011 Plaintiff's Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Apr. 18, 2011 Defendants' Amended Answer to 1st Amended Complaint and Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
May 5, 2011 Plaintiff's Answer to F5's Amended Counter-Complaint, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, *Implicit* v *F5*, Case No. 10-3365.
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (31 documents).
Jul. 22, 2011 F5 Networks, Inc.'s Invalidity Contentions, Exhibit B, *Implicit* v *F5*, Case No. 10-3365.
Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3), *Implicit* v *F5*, Case No. 10-3365.
Oct. 18, 2011 Joint Claim Construction & Pre-Hearing Statement (PR 4-3) Exhibit A, *Implicit* v *F5*, Case No. 10-3365 (2 documents).
Nov. 28, 2011 Plaintiff's Opening Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing Statement, *Implicit* v *F5*, Case No. 10-3365.
Nov. 29, 2011 Amended Joint Claim Construction & Pre-Hearing Statement, Exhibit A, *Implicit* v *F5*, Case No. 10-3365.
Dec. 12, 2011 Defendants' Claim Construction Brief, *Implicit* v *F5*, Case No. 10-3365.
Dec. 19, 2011 Plaintiff's Reply to Defendants' (F5, HP, Juniper) Responsive Claim Construction Brief (4-5), *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 17, 2012; *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 18, 2012; *Implicit* v *F5*, Case No. 10-3365.
Jan. 27, 2012 Transcript of Proceeding Held on Jan. 19, 2012; *Implicit* v *F5*, Case No. 10-3365.
Feb. 29, 2012 Claim Construction Order.
Aug. 15, 2012 Storer Invalidity Report.
Sep. 10, 2012 Implicit's Expert Report of Scott M. Nettles.
Mar. 13, 2013 Order Granting Defendants' Motion for Summary Judgment.
Apr. 9, 2013 Notice of Appeal to the Federal Circuit.
Aug. 23, 2010 Plaintiff's Original Complaint, *Implicit* v *HP*, Case No. 10-3746.
Nov. 23, 2010 Plaintiff's First Amended Complaint, *Implicit* v *HP*, Case No. 10-3746.
Jan. 14, 2011 Defendant HP's Answer and Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
Feb. 18, 2011 Implicit Networks, Inc.'s Answer to HP Counterclaims, *Implicit* v *HP*, Case No. 10-3746.
May 10, 2011 Plaintiff's Amended Disclosure of Asserted Claims and Infringement Contentions, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, A1-14, *Implicit* v *HP*, Case No. 10-3746.
Jun. 30, 2011 Defendant HP Company's Invalidity Contentions, B1-21, *Implicit* v *HP*, Case No. 10-3746.
Sep. 20, 2010 Plaintiff's Original Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 12, 2010 Juniper Network's Motion to Dismiss For Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 12, 2010 Juniper Network's Request for Judicial Notice in Support of its Motion to Dismiss For Failure to State a Claim Under Rule 12(B)(6): Memorandum of Points and Authorities; *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 1, 2010 First Amended Complaint; *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 18, 2011 Juniper Networks, Inc.'s Answer and Affirmative Defenses to 1st Amended Complaint, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 18, 2011 Plaintiff's Answer to Defendant's Counterclaims, *Implicit* v *Juniper*, Case No. 10-4234.
May 23, 2011 Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 15, 2011 Plaintiff's Amended Disclosure of Asserted Claim and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief), *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit E, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit J, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibit K, *Implicit* v *Juniper*, Case No. 10-4234.
Nov. 28, 2011 Spencer Hosie Declaration in Support of Plaintiff's Opening Claim Construction Brief Exhibits M-O, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit B, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit F, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit N, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Q, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit S., *Implicit* v *Juniper*, Case No. 10-4234.

(56) **References Cited**

OTHER PUBLICATIONS

Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit T-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit U, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit V, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit W, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit X, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-1, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-2, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-3, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Y-4, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 12, 2011 Holly Hogan Declaration in Support of Defendants' Claim Construction Brief, Exhibit Z, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiff's Reply Claim Construction Brief, *Implicit* v *Juniper*, Case No. 10-4234.
Dec. 19, 2011 Spencer Hosie Declaration in Support of Plaintiff's Reply Claim Construction Brief, Exhibit P, *Implicit* v *Juniper*, Case No. 10-4234.
Jan. 10, 2012 Plaintiff's Jan. 10, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A1, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A2, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A3, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit A4, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 10, 2012 Juniper Networks, Inc.'s Supplemental Invalidity Contentions, Exhibit B1, *Implicit* v *Juniper*, Case No. 10-4234.
Feb. 29, 2012 Plaintiff's Feb. 29, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 6, 2012 Plaintiff's Apr. 6, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Apr. 9, 2012 Plaintiff's Apr. 9, 2012 Amended Disclosure of Asserted Claims and Infringement Contentions, *Implicit* v *Juniper*, Case No. 10-4234.
Sep. 11, 2012 Implicit's Expert Report of Scott Nettles.
Nov. 9, 2012 Juniper's Notice of Motion and Memorandum of Law ISO Motion for Summary Judgment or, in the alternative, for Partial Summary Judgment, on the Issue of Invalidity.
Nov. 9, 2012 Exhibit 2 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Expert Report.
Nov. 9, 2012 Exhibit 3 to Declaration in support of Juniper's Motion for Summary Judgment—Calvert Supplemental Expert Report.
Nov. 26, 2012 Implicit Opposition to Juniper's and F5 Motion on Invalidity.
Nov. 26, 2012 Exhibit A to Hosie Declaration—Aug. 27, 2012 Excerpts from David Blaine deposition.
Nov. 26, 2012 Exhibit B to Hosie Declaration—Oct. 25, 2012 Excerpts from Kenneth Calvert Deposition.
Nov. 26, 2012 Exhibit C to Hosie Declaration—Aug. 15, 2012 Excerpts from Kenneth Calvert Expert Report.
Nov. 26, 2012 Exhibit D to Hosie Declaration—U.S. Pat. No. 6,651,099 to Dietz et al.
Nov. 26, 2012 Exhibit E to Hosie Declaration—Understanding Packet-Based and Flow-Based Forwarding.
Nov. 26, 2012 Exhibit F to Hosie Declaration—Wikipedia on Soft State.
Nov. 26, 2012 Exhibit G to Hosie Declaration—Sprint Notes.
Nov. 26, 2012 Exhibit H to Hosie Declaration—Implicit's Supplemental Response to Juniper's 2nd Set of Interrogatories.
Nov. 26, 2012 Exhibit I to Hosie Declaration—U.S. Pat. No. 7,650,634 (Zuk).
U.S. Appl. No. 11/933,022 Utility Application filed Oct. 31, 2007.
U.S. Appl. No. 11/933,022 Preliminary Amendment filed Feb. 19, 2008.
U.S. Appl. No. 11/933,022 Office Action mailed Jun. 24, 2009.
U.S. Appl. No. 11/933,022 Amendment filed Sep. 24, 2009.
U.S. Appl. No. 11/933,022 Office Action dated Dec. 11, 2009.
U.S. Appl. No. 11/933,022 Amendment and Response dated Jan. 29, 2010.
U.S. Appl. No. 11/933,022 Notice of Allowance dated Mar. 2, 2010.
U.S. Appl. No. 11/933,022 Issue Notification dated May 4, 2010.
U.S. Appl. No. 10/636,314 Utility Application filed Aug. 6, 2003.
U.S. Appl. No. 10/636,314 Office Action dated Apr. 7, 2008.
U.S. Appl. No. 10/636,314 Response to Restriction Requirement dated Aug. 5, 2008.
U.S. Appl. No. 10/636,314 Office Action dated Oct. 3, 2008.
U.S. Appl. No. 10/636,314 Response to Office Action dated Apr. 3, 2009.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated May 4, 2009.
U.S. Appl. No. 10/636,314 Amendment to Office Action Response dated Jun. 4, 2009.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated Jun. 12, 2009.
U.S. Appl. No. 10/636,314 Amendment to Office Action dated Jul. 10, 2009.
U.S. Appl. No. 10/636,314 Final Rejection Office Action dated Oct. 21, 2009.
U.S. Appl. No. 10/636,314 Amendment after Final Office Action dated Dec. 14, 2009.
U.S. Appl. No. 10/636,314 Advisory Action dated Jan. 11, 2010.
U.S. Appl. No. 10/636,314 Notice of Non-Compliant Amendment dated Jan. 11, 2010.
U.S. Appl. No. 10/636,314 Supplemental Amendment and Response dated Mar. 13, 2010.
U.S. Appl. No. 10/636,314 Office Action dated May 11, 2010.
U.S. Appl. No. 10/636,314 Amendment and Response dated Sep. 13, 2010.
U.S. Appl. No. 10/636,314 Final Rejection dated Nov. 24, 2010.
U.S. Appl. No. 10/636,314 Notice of Appeal dated May 19, 2011.
U.S. Appl. No. 10/636,314 Amendment and Request for Continued Examination dated Jul. 19, 2011.
U.S. Appl. No. 10/636,314 Notice of Allowance dated Sep. 13, 2011.
U.S. Appl. No. 10/636,314 Notice of Allowance dated Sep. 19, 2011.
U.S. Appl. No. 10/636,314 Issue Notification dated Oct. 19, 2011.

(56) **References Cited**

OTHER PUBLICATIONS

U.S. Appl. No. 09/474,664 Utility Application filed Dec. 29, 1999.
U.S. Appl. No. 09/474,664 Office Action dated Sep. 23, 2002.
U.S. Appl. No. 09/474,664 Amendment and Response dated Feb. 24, 2003.
U.S. Appl. No. 09/474,664 Notice of Allowance dated May 20, 2003.
U.S. Appl. No. 90/010,356 Request for Ex Parte Reexamination dated Dec. 15, 2008.
U.S. Appl. No. 90/010,356 Office Action Granting Reexamination dated Jan. 17, 2009.
U.S. Appl. No. 90/010,356 First Office Action dated Jul. 7, 2009.
U.S. Appl. No. 90/010,356 First Office Action Response dated Sep. 1, 2009.
U.S. Appl. No. 90/010,356 Patent Owner Interview Summary dated Oct. 23, 2009.
U.S. Appl. No. 90/010,356 Office Action Final dated Dec. 4, 2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Dec. 18, 2009.
U.S. Appl. No. 90/010,356 Amendment and Response to Office Action dated Jan. 4, 2010.
U.S. Appl. No. 90/010,356 Advisory Action dated Jan. 21, 2010.
U.S. Appl. No. 90/010,356 Amendment and Response to Advisory Action dated Feb. 8, 2010.
U.S. Appl. No. 90/010,356 Notice of Intent to Issue a Reexam Certificate dated Mar. 2, 2010.
U.S. Appl. No. 90/010,356 Reexamination Certificate Issued dated Jun. 22, 2010.
U.S. Appl. No. 95/000,659 Inter Partes Reexam Request dated Feb. 13, 2012.
U.S. Appl. No. 95/000,659 Order Granting Reexamination dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action dated Apr. 3, 2012.
U.S. Appl. No. 95/000,659 Office Action Response dated Jun. 4, 2012 (including Exhibits 1 & 2) (4 documents).
U.S. Appl. No. 95/000,659 Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012.
U.S. Appl. No. 95/000,659 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Declaration of Prof. Dr. Bernhard Plattner).
U.S. Appl. No. 95/000,659 Appendix R-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Prof. Dr. Bernhard Plattner CV).
U.S. Appl. No. 95/000,659 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).
U.S. Appl. No. 95/000,659 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012(Office Action Granting Reexamination in 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,659 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Office Action in 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,659 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc. U.S. Pat. No. 6,629,163 Claims Chart).
U.S. Appl. No. 95/000,659 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).
U.S. Appl. No. 95/000,659 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).
U.S. Appl. No. 95/000,659 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Claim Construction Order dated Feb. 29, 2012).
U.S. Appl. No. 95/000,659 Appendix R-10-1 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. I of Edward Balassanian Deposition Transcript dated May 30, 2012).
U.S. Appl. No. 95/000,659 Appendix R-10-2 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. II of Edward Balassanian Deposition Transcript dated May 31, 2012).
U.S. Appl. No. 95/000,659 Appendix R-10-3 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. III of Edward Balassanian Deposition Transcript dated Jun. 7, 2012).
U.S. Appl. No. 95/000,659 Appendix R-10-4 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (vol. IV of Edward Balassanian Deposition Transcript dated Jun. 8, 2012).
U.S. Appl. No. 95/000,659 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Jul. 5, 2012 (Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).
U.S. Appl. No. 95/000,659 Action Closing Prosecution dated Oct. 1, 2012.
U.S. Appl. No. 95/000,659 Petition to Withdraw and Reissue Action Closing Prosecution dated Nov. 20, 2012.
U.S. Appl. No. 95/000,659 Patent Owner Comments to Action Closing Prosecution dated Dec. 3, 2012.
U.S. Appl. No. 95/000,659 Opposition to Petition dated Dec. 17, 2012.
U.S. Appl. No. 95/000,659 Third Party Comments to Action Closing Prosecution dated Jan. 2, 2013.
U.S. Appl. No. 95/000,660 Inter Partes Reexam Request dated Mar. 2, 2012.
U.S. Appl. No. 95/000,660 Order Granting Reexamination dated May 10, 2012.
U.S. Appl. No. 95/000,660 Office Action dated May 10, 2012.
U.S. Appl. No. 95/000,660 Response to Office Action dated Jul. 10, 2012 (including Exhibits 1 and 2).
U.S. Appl. No. 95/000,660 Third Party Comments to Office After Patent Owner's Response dated Aug. 8, 2012 (including Revised Comments).
U.S. Appl. No. 95/000,660 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Declaration of Prof. Dr. Bernhard Plattner).
U.S. Appl. No. 95/000,660 Appendix R-1 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Prof. Dr. Bernhard Plattner CV).
U.S. Appl. No. 95/000,660 Appendix R-3 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Listing of Publications to Prof. Dr. Bernhard Plattner updated Feb. 2012).
U.S. Appl. No. 95/000,660 Appendix R-4 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Office Action Granting Reexamination in 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,660 Appendix R-5 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Office Action in 95/000,660 dated May 10, 2012).
U.S. Appl. No. 95/000,660 Appendix R-6 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Implicit Networks, Inc. U.S. Pat. No. 6,629,163 Claims Chart).
U.S. Appl. No. 95/000,660 Appendix R-7 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Internet Protocol DARPA Internet Program Protocol Specification dated Sep. 1991).
U.S. Appl. No. 95/000,660 Appendix R-8 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Atkinson, IP Encapsulating Security Payload (ESP) dated Aug. 1995).
U.S. Appl. No. 95/000,660 Appendix R-9 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Claim Construction Order dated Feb. 29, 2012).

(56) **References Cited**

OTHER PUBLICATIONS

U.S. Appl. No. 95/000,660 Appendix R-10 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (vol. I-IV of Edward Balassanian Deposition Transcript dated May 30, 2012).
U.S. Appl. No. 95/000,660 Appendix R-11 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 3173 Sep. 2001).
U.S. Appl. No. 95/000,660 Appendix R-12 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Shacham, A., et al, "*IP Payload Compression Protocol*", Network Working Group, RFC 2393 Dec. 1998).
U.S. Appl. No. 95/000,660 Appendix R-13 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 ('163 Pfeiffer Claim Chart).
U.S. Appl. No. 95/000,660 Appendix R-14 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Ylonen, T., "*SSH Transport Layer Protocol*", Network Working Group—Draft Feb. 22, 1999).
U.S. Appl. No. 95/000,660 Appendix R-15 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Dommety, G., "*Key and Sequence Number Extensions to GRE*", Network Working Group, RFC 2890 Sep. 2000).
U.S. Appl. No. 95/000,660 Appendix R-16 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Monsour, R., et al, "*Compression in IP Security*" Mar. 1997).
U.S. Appl. No. 95/000,660 Appendix R-17 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012 (Friend, R., Internet Working Group RFC 3943 dated Nov. 2004 *Transport Layer Security Protocol Compression Using Lempel-Ziv-Stac*).
U.S. Appl. No. 95/000,660 Appendix R-18 to Third Party Comments to Patent Owner's Response to Office Action dated Aug. 8, 2012(Implicit Networks, Inc.'s Response to Juniper Networks, Inc.'s First Set of Requests for Admission 1-32).
U.S. Appl. No. 95/000,660 Revised—Third Party Comments to Office After Patent Owner's Response dated Nov. 2, 2012.
U.S. Appl. No. 95/000,660 Action Closing Prosecution dated Dec. 21, 2012.
U.S. Appl. No. 95/000,660 Comments to Action Closing Prosecution dated Feb. 21, 2013 (including Dec of Dr. Ng).
U.S. Appl. No. 95/000,660 Third Party Comments to Action Closing Prosecution dated Mar. 25, 2013.
PCT/US00/33634—PCT application (WO 01/2077 A2—Jul. 12, 2001).
PCT/US00/33634—Written Opinion (WO 01/50277 A3—Feb. 14, 2002).
PCT/US00/33634—International Search Report (Oct. 9, 2001).
PCT/US00/33634—Response to Official Communication dated Dec. 7, 2001 (Mar. 21, 2002).
PCT/US00/33634—International Preliminary Examination Report (Apr. 8, 2002).
PCT/US00/33634—Official Communication (Jan. 24, 2003).
PCT/US00/33634—Response to Official Communication dated Jan. 24, 2003 (Mar. 12, 2003).
PCT/US00/33634—Official Communication (May 13, 2004).
PCT/US00/33634—Response to Summons to Attend Oral Proceeding dated May 13, 2004 (Oct. 9, 2004).
PCT/US00/33634—Decision to Refuse a European Patent application (Nov. 12, 2004).
PCT/US00/33634—Minutes of the oral proceedings before the Examining Division (Oct. 12, 2004).
PCT/US00/33634—Closure of the procedure in respect to Application No. 00984234.5-2212 (Feb. 22, 2005).
May 3, 2013 Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Pat. Nos. 6,877,006; 7,167,864; 7,720,861; and 8,082,268 (6 documents).
Expert Report of Dr. Alfonso Cardenas Regarding Validity of U.S. Pat. No. 7,167,864 (3 documents).
"InfoReports User Guide: Version 3.3.1;" Platinum Technology, Publication No. PRO-X-331-UG00-00, printed Apr. 1998; pp. 1-430.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,659 issued Aug. 16, 2013, 107 pages.
Decision on Petition in Reexamination Control No. 95/000,659 issued Aug. 19, 2013, 3 pages.
Response to Non-Final Office Action in Reexamination Control No. 95/000,659 mailed Oct. 2, 2013 including Exhibits A-C, 37 pages.
Decision on Petition in Reexamination Control No. 95/000,660 issued Jul. 30, 2013, 12 pages.
Non-Final Office Action in Inter Partes Reexamination Control No. 95/000,660 issued Aug. 30, 2013, 23 pages.
RFC: 791. Internet Protocol: DARPA Internet Program Protocol Specification, Sep. 1981, prepared for Defense Advanced Research Projects Agency Information Processing Techniques Office by Information Sciences Institute University of Southern California, 52 pages.

* cited by examiner


101
DRIVER
102
MESSAGE SEND
103
DEMUX
104
LABELMAP GET
150
149
QUEUE
105
THREAD
106
MESSAGE SEND
151
107
MESSAGE SEND
152
108
MESSAGE SEND
153
109
MESSAGE SEND
110
DEMUX
111
LABELMAP GET
154
114
MESSAGE SEND
155

*Fig. 1*


P1
P2
P3
P4
D1
1
D2
D2
1
D5
D9
1
D12
D15
1
NULL
D1
2
D3
D10
2
D13

*Fig. 2*


300
MEMORY 303
304
305
306
307
DRIVERS
FORWARDING COMPONENT
DEMUX COMPONENT
LABEL MAP GET COMPONENT
308
309
310
PATH DATA STRUCTURES
CONVERSION ROUTINES
INSTANCE DATA
CPU 301
I/O 302

*Fig. 3*

Case: 20-1362 Document: 17 Page: 163 Filed: 05/18/2020






*Fig. 4*


Map
507
OutputLabel
TargetLabel
TargetKey
MessageQueue
502
505
PathEntry
pPath
pMap
multiplayList
pAddress
Member
MultiplayList
508
PATH
501
MessageQueue
StackList
pAddress
StackList
pPathEntry
503
PathEntry
505
Member
509
Binding
StackListEntry
PathListEntry
AddressEntry
Address
504
URL
Name
BindingList
CurrentBinding
BindingList
506
pBinding
Binding
510
pSession
Key
PathList
ActivePaths
pEdge
Binding
511

*Fig. 5*



session
601
Context
pProtocol
pBindingTable
pKey
BindingTable
602
pBinding
Binding
510
Binding
510
pSession
key
ActivePaths
PathList
pEdge
Binding
510
PathList
603
pPathEntry
PathEntry
505
PathEntry
505


*Fig. 6*

Case: 20-1362 Document: 17 Page: 166 Filed: 05/18/2020






Fig. 7A


09
710
Select next Candidate path in List
711
NextEntry
NO
Return (True)
YES
712
NextEntry == PathEntry
YES
05
NO
713
Number of Candidate Path > 1
NO
17
YES
714
PathEntry --> MultiplayList
NO
715
PathEntry --> MultiplayList = List
YES
716
MessageSend (Message, nextEntry)

*Fig. 7B*


17
717
NextEntry --> Path
NO
YES
718
QueueMessage (Message, NextEntry)
Return

*Fig. 7C*

Case: 20-1362 Document: 17 Page: 168 Filed: 05/18/2020






*Fig. 8*


Initialize Demux
Map
PathEntry --> Map
901
message = Message
path = null
address Elem = null
902
savedStatus = 0
Status = demux Continue
903
904
PathEntry --> Path
YES
status = PathEntry --> Path --> Status
905
NO
906
Status
demux Extend
demux continue
demux End
pathAddress = Address
907
InitEnd
908
909
pain Address = pathEntry --> Path --> Address
addressElem = pathAddress --> CurrentBinding = pathEntry --> Member --> AddressEntry
910
status = demux Continue
binding List = pathAddress --> BindingList
911
CurrentBinding = &pathAddress --> CurrentBinding
postpone = 0
912
traverse = ListDataNext
session = Null
913
Return

*Fig. 9*


InitEnd
1001
PathEntry --> Member --> Binding --> Flags == Simplex
YES
NO
1002
pathAddress = AddressCopy (PathEntry -> Path -> Address, PathEntry -> Member -> AddressEntry)
Return
1003
pathAddress = AddressCreate (PathEntry -> Path -> Address -> URL)
1004
elem = null
1005
binding = ListDataNext (PathEntry -> Path -> Address -> BindingList, & elem)
Return
YES
1006
pathAddress --> CurrentBinding = ListTailInsert (pathAddress --> BindingList, binding)
1007
elem = = PathEntry --> Member --> AddressEntry
NO
YES
Return

*Fig. 10*


GetNext Binding
1101
binding = traverse (BindingList, currentBinding)
1102
binding
YES
Return (binding)
NO
1103
trailList = LabelMapGet (map --> Output Label, map --> Target Label)
1104
size of trailList
= 1
> 1
1105
currentBinding = ListTail (bindingList) Data
1106
tmpTrail = ListHeadRemove (trailList)
1107
Address Extend (pathAddress, tmpTrail)
1108
binding = ListTail Data (binding List)
1109
!binding -> Key && map -> Target key
NO
YES
1110
binding --> Key = map --> Target key
1111
map --> Target key = Null
1112
session
YES
NO
1113
returnList = Prepare Multicast Paths (trailList, map)
Return (multiple)
Return (break)

Fig. 11


Get Key
edge = binding --> Edge
Edge protocol = edge --> Protocol
1201
Status = edge --> DemuxKey (message, pathAddress, map)
1202
status
1203
remove
binding --> Flags
1 = Binding-Remove
1204
postpone
traverse = ListDataNext
postpone++
1205
Return (next binding)
other
postpone
1206
NO
YES
traverse = ListDataNext
1211
postpone --
traverse = ListDataPrev
1207
saved status
1212
NO
YES
status = saved status
savedstatus = 0
1213
saved status
1208
NO
savedStatus = Status
1209
YES
status = demux
continue
1210
binding -> Flags & Binding Remove
1214
NO
Return (continue)
YES
Return (next binding)

Fig. 12


Get Session
session = TableGet (protocol -> SessionTable, & binding -> key)
1301
session
1302
YES
Return
NO
session = CreateSession (protocol)
1303
session --> key = LabelReference (binding --> key)
1304
Table Put (protocol -> sessionTable & session -> key session
1305
protocol --> CreateSession (session)
1306
Return

*Fig. 13*


Nail Binding
1401
session --> BindingTable [edge --> EdgeId]
YES
NO
1402
binding = session --> BindingTable [edge --> EdgeID]
1403
ListDataSet (*currentBinding, binding)
1404
binding -> flags = = simplex
YES
NO
Return (simplex)
return
1405
binding --> session = session
1406
binding --> key = Label Reference (session --> key)
1407
session --> BindingTable [edge --> EdgeId] = binding
1408
binding --> Edge --> CreateBinding (binding)
remove
1409
binding --> Flag 1 = Binding - Remove
continue
return

*Fig. 14*

Case: 20-1362 Document: 17 Page: 175 Filed: 05/18/2020






*Fig. 15*


Process Path Hopping
1601
PathEntry --> Path
NO
YES
1610
PathEntry -> Path = path
1611
entry = ListHeadData (path -> StackList)
1602
PathEntry -> Path = = path
YES
NO
1603
oldStack = PathEntry -> Path -> stacklist
1604
newStack = path -> StackList
1605
oldElm = ListNext (oldStack, Null)
1606
elem = ListNext (NewStack, Null)
1609
entry = ListDataPrev (newStack, & elem)
1607
oldEntry = ListDataNext (oldstack, &oldelem) && entry = ListDataNext (newStack, & elem) && entry --> Member --> Binding == oldEntry Member --> Binding
YES
NO
YES
1608
oldentry
NO
1612
ListHeadInsert (returnList, Entry)
Return (return list)

*Fig. 16*

Case: 20-1362 Document: 17 Page: 177 Filed: 05/18/2020





# METHOD AND SYSTEM FOR DATA DEMULTIPLEXING

## CROSS REFERENCES TO RELATED APPLICATIONS

The present application is a continuation of U.S. application Ser. No. 14/230,952, filed Mar. 31, 2014 (now U.S. Pat. No. 9,270,790), which is a continuation of U.S. application Ser. No. 13/911,324, filed Jun. 6, 2013 (now U.S. Pat. No. 8,694,683), which is a continuation of U.S. application Ser. No. 13/236,090, filed Sep. 19, 2011 (now abandoned), which is a continuation of US. application Ser. No. 10/636, 314, filed Aug. 6, 2003 (now U.S. Pat. No. 8,055,786), which is a continuation of U.S application Ser. No. 09/474, 664, filed Dec. 29, 1999 (now U.S. Pat. No. 6,629,163); the disclosures of each of the above-referenced applications are incorporated by reference herein in their entireties.

## TECHNICAL FIELD

The present invention relates generally to a computer system for data demultiplexing.

## BACKGROUND

Computer systems, which are becoming increasingly pervasive, generate data in a wide variety of formats. The Internet is an example of interconnected computer systems that generate data in many different formats. Indeed, when data is generated on one computer system and is transmitted to another computer system to be displayed, the data may be converted in many different intermediate formats before it is eventually displayed. For example, the generating computer system may initially store the data in a bitmap format. To send the data to another computer system, the computer system may first compress the bitmap data and then encrypt the compressed data. The computer system may then convert that compressed data into a TCP format and then into an IP format. The IP formatted data may be converted into a transmission format, such as an ethernet format. The data in the transmission format is then sent to a receiving computer system. The receiving computer system would need to perform each of these conversions in reverse order to convert the data in the bitmap format. In addition, the receiving computer system may need to convert the bitmap data into a format that is appropriate for rendering on output device.

In order to process data in such a wide variety of formats, both sending and receiving computer systems need to have many conversion routines available to support the various formats. These computer systems typically use predefined configuration information to load the correct combination of conversion routines for processing data. These computer systems also use a process-oriented approach when processing data with these conversion routines. When using a process-oriented approach, a computer system may create a separate process for each conversion that needs to take place. A computer system in certain situations, however, can be expected to receive data and to provide data in many different formats that may not be known until the data is received. The overhead of statically providing each possible series of conversion routines is very high. For example, a computer system that serves as a central controller for data received within a home would be expected to process data received via telephone lines, cable TV lines, and satellite connections in many different formats. The central controller



would be expected to output the data to computer displays, television displays, entertainment centers, speakers, recording devices, and so on in many different formats. Moreover, since the various conversion routines may be developed by different organizations, it may not be easy to identify that the output format of one conversion routine is compatible with the input format of another conversion routine.

It would be desirable to have a technique for dynamically identifying a series of conversion routines for processing data. In addition, it would be desirable to have a technique in which the output format of one conversion routine can be identified as being compatible with the input format of another conversion routine. It would also be desirable to store the identification of a series of conversion routines so that the series can be quickly identified when data is received.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a block diagram illustrating example processing of a message by the conversion system.

FIG. **2** is a block diagram illustrating a sequence of edges.

FIG. **3** is a block diagram illustrating components of the conversion system in one embodiment.

FIG. **4** is a block diagram illustrating example path data structures in one embodiment.

FIG. **5** is a block diagram that illustrates the interrelationship of the data structures of a path.

FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session.

FIGS. **7** A, **7**B, and **7**C comprise a flow diagram illustrating the processing of the message send routine.

FIG. **8** is a flow diagram of the demux routine.

FIG. **9** is a flow diagram of the initialize demux routine.

FIG. **10** is a flow diagram of the init end routine.

FIG. **11** is a flow diagram of a routine to get the next binding.

FIG. **12** is a flow diagram of the get key routine.

FIG. **13** is a flow diagram of the get session routine.

FIG. **14** is a flow diagram of the nail binding routine.

FIG. **15** is a flow diagram of the find path routine.

FIG. **16** is a flow diagram of the process of path hopping routine.

## DETAILED DESCRIPTION

A method and system for converting a message that may contain multiple packets from an source format into a target format. When a packet of a message is received, the conversion system in one embodiment searches for and identifies a sequence of conversion routines (or more generally message handlers) for processing the packets of the message by comparing the input and output formats of the conversion routines. (A message is a collection of data that is related in some way, such as stream of video or audio data or an email message.) The identified sequence of conversion routines is used to convert the message from the source format to the target format using various intermediate formats. The conversion system then queues the packet for processing by the identified sequence of conversion routines. The conversion system stores the identified sequence so that the sequence can be quickly found (without searching) when the next packet in the message is received. When subsequent packets of the message are received, the conversion system identifies the sequence and queues the packets for pressing by the sequence. Because the conversion system receives multiple messages with different source and target formats and iden-

Case: 20-1362 Document: 17 Page: 178 Filed: 05/18/2020



tifies a sequence of conversion routines for each message, the conversion systems effectively "demultiplexes" the messages. That is, the conversion system demultiplexes the messages by receiving the message, identifying the sequence of conversion routines, and controlling the processing of each message by the identified sequence. Moreover, since the conversion routines may need to retain state information between the receipt of one packet of a message and the next packet of that message, the conversion system maintains state information as an instance or session of the conversion routine. The conversion system routes all packets for a message through the same session of each conversion routine so that the same state or instance information can be used by all packets of the message. A sequence of sessions of conversion routines is referred to as a "path." In one embodiment, each path has a path thread associated with it for processing of each packet destined for that path.

In one embodiment, the packets of the messages are initially received by "drivers," such as an Ethernet driver. When a driver receives a packet, it forwards the packet to a forwarding component of the conversion system. The forwarding component is responsible for identifying the session of the conversion routine that should next process the packet and invoking that conversion routine. When invoked by a driver, the forwarding component may use a demultiplexing ("demux") component to identify the session of the first conversion routine of the path that is to process the packet and then queues the packet for processing by the path. A path thread is associated with each path. Each path thread is responsible for retrieving packets from the queue of its path and forwarding the packets to the forwarding component. When the forwarding component is invoked by a path thread, it initially invokes the first conversion routine in the path. That conversion routine processes the packet and forwards the processed packet to the forwarding component, which then invokes the second conversion routine in the path. The process of invoking the conversion routines and forwarding the processed packet to the next conversion routine continues until the last conversion routine in the path is invoked. A conversion routine may defer invocation of the forwarding component until it aggregates multiple packets or may invoke the forwarding component multiple times for a packet once for each sub-packet.

The forwarding component identifies the next conversion routine in the path using the demux component and stores that identification so that the forwarding component can quickly identify the conversion routine when subsequent packets of the same message are received. The demux component, searches for the conversion routine and session that is to next process a packet. The demux component then stores the identification of the session and conversion routine as part of a path data structure so that the conversion system does not need to search for the session and conversion routine when requested to demultiplex subsequent packets of the same message. When searching for the next conversion routine, the demux component invokes a label map get component that identifies the next conversion routine. Once the conversion routine is found, the demux component identifies the session associated with that message by, in one embodiment, invoking code associated with the conversion routine. In general, the code of the conversion routine determines what session should be associated with a message. In certain situations, multiple messages may share the same session. The demux component then extends the path for processing that packet to include that session and conversion routine. The sessions are identified so that each packet is associated with the appropriate state information. The dynamic identification of conversion routines is described in U.S. patent application Ser. No. 11/933,093, filed on Oct. 31, 2007 (now U.S. Pat. No. 7,730,211), entitled "Method and System for Generating a Mapping Between Types of Data," which is hereby incorporated by reference.

FIG. **1** is a block diagram illustrating example processing of a message by the conversion system. The driver **101** receives the packets of the message from a network. The driver performs any appropriate processing of the packet and invokes a message send routine passing the processed packet along with a reference path entry **150**. The message send routine is an embodiment of the forwarding component. A path is represented by a series of path entries, which are represented by triangles. Each member path entry represents a session and conversion routine of the path, and a reference path entry represents the overall path. The passed reference path entry **150** indicates to the message send routine that it is being invoked by a driver. The message send routine invokes the demux routine **102** to search for and identify the path of sessions that is to process the packet. The demux routine may in turn invoke the label map get routine **104** to identify a sequence of conversion routines for processing the packet. In this example, the label map get routine identifies the first three conversion routines, and the demux routine creates the member path entries **151**, **152**, **153** of the path for these conversion routines. Each path entry identifies a session for a conversion routine, and the sequence of path entries **151**-**155** identifies a path. The message send routine then queues the packet on the queue **149** for the path that is to process the packets of the message. The path thread **105** for the path retrieves the packet from the queue and invokes the message send routine **106** passing the packet and an indication of the path. The message send routine determines that the next session and conversion routine as indicated by path entry **151** has already been found. The message send routine then invokes the instance of the conversion routine for the session. The conversion routine processes the packet and then invokes the message send routine **107**. This processing continues until the message send routine invokes the demux routine **110** after the packet is processed by the conversion routine represented by path entry **153**. The demux routine examines the path and determines that it has no more path entries. The demux routine then invokes the label map get routine **111** to identify the conversion routines for further processing of the packet. When the conversion routines are identified, the demux routine adds path entries **154**, **155** to the path. The messages send routine invokes the conversion routine associated with path entry **154**. Eventually, the conversion routine associated with path entry **155** performs the final processing for the path.

The label map get routine identifies a sequence of "edges" for converting data in one format into another format. Each edge corresponds to a conversion routine for converting data from one format to another. Each edge is part of a "protocol" (or more generally a component) that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has an input format and an output format. The label map get routine identifies a sequence of edges such that the output format of each edge is compatible with the input format of another edge in the sequence, except for the input format of the first edge in the sequence and the output format of the last edge in the sequence. FIG. **2** is a block diagram illustrating a sequence of edges. Protocol PI includes an edge for converting format D**1** to format D**2** and an edge for converting format D**1** to format D**3**; protocol P**2**

Case: 20-1362 Document: 17 Page: 179 Filed: 05/18/2020



includes an edge for converting format D2 to format D5, and so on. A 30 sequence for converting format D 1 to format D 15 is shown by the curved lines and is defined by the address "P1:I, P2:1, P3:2, P4:7." When a packet of data in format D I is processed by this sequence, it is converted to format DIS. During the process, the packet of data is sequentially converted to format D2, D5, and D13. The output format of protocol P2, edge 1 (i.e., P2: 1) is format D5, but the input format of P3:2 is format D10. The label map get routine uses an aliasing mechanism by which two formats, such as D5 and D10 are identified as being compatible. The use of aliasing allows different names of the same format or compatible formats to be correlated.

FIG. 3 is a block diagram illustrating components of the conversion system in one embodiment. The conversion system 300 can operate on a computer system with a central processing unit 301, I/O devices 302, and memory 303. The 110 devices may include an Internet connection, a connection to various output devices such as a television, and a connection to various input devices such as a television receiver. The media mapping system may be stored as instructions on a computer-readable medium, such as a disk drive, memory, or data transmission medium. The data structures of the media mapping system may also be stored on a computer-readable medium. The conversion system includes drivers 304, a• forwarding component 305, a demux component 306, a label map get component 307, path data structures 308, conversion routines 309, and instance data 310. Each driver receives data in a source format and forwards the data to the forwarding component. The forwarding component identifies the next conversion routine in the path and invokes that conversion routine to process a packet. The forwarding component may invoke the demux component to search for the next conversion routine and add that conversion routine to the path. The demux component may invoke the label map get component to identify the next conversion routine to process the packet. The demux component stores information defining the paths in the path structures. The conversion routines store their state information in the instance data.

FIG. 4 is a block diagram illustrating example path data structures in one embodiment. The demux component identifies a sequence of "edges" for converting data in one format into another format by invoking the label map get component. Each edge corresponds to a conversion routine for converting data from one format to another. As discussed above, each edge is part of a "protocol" that may include multiple related edges. For example, a protocol may have edges that each convert data in one format into several different formats. Each edge has as an input format ("input label") and an output format ("output label"). Each rectangle represents a session 410, 420, 430, 440, 450 for a protocol. A session corresponds to an instance of a protocol. That is, the session includes the protocol and state information associated with that instance of the protocol. Session 410 corresponds to a session for an Ethernet protocol; session 420 corresponds to a session for an IP protocol; and sessions 430, 440, 450 correspond to sessions for a TCP protocol. FIG. 4 illustrates three paths 461, 462, 463. Each path includes edges 411, 421, 431. The paths share the same Ethernet session 410 and IP session 420, but each path has a unique TCP session 430, 440, 450. Thus, path 461 includes sessions 410, 420, and 430; path 462 includes sessions 410, 420, and 440; and path 463 includes sessions 410, 420, and 450. The conversion system represents each path by a sequence of path entry structures. Each path entry structure is represented by a triangle. Thus, path 461 is represented by path entries 415, 425, and 433. The conversion system represents the path entries of a path by a stack list. Each path also has a queue 471, 472, 473 associated with it. Each queue stores the messages that are to be processed by the conversion routines of the edges of the path. Each session includes a binding 412, 422, 432, 442, 452 that is represented by an oblong shape adjacent to the corresponding edge. A binding for an edge of a session represents those paths that include the edge. The binding 412 indicates that three paths are bound (or "nailed") to edge 411 of the Ethernet session 410. The conversion system uses a path list to track the paths that are bound to a binding. The path list of binding 412 identifies path entries 413, 414, and 415.

FIG. 5 is a block diagram that illustrates the interrelationship of the data structures of a path. Each path has a corresponding path structure 501 that contains status information and pointers to a message queue structure 502, a stack list structure 503, and a path address structure 504. The status of a path can be extend, continue, or end. Each message handler returns a status for the path. The status of extend means that additional path entries should be added to the path. The status of end means that this path should end at this point and subsequent processing should continue at a new path. The status of continue means that the protocol does not care how the path is handled. In one embodiment, when a path has a status of continue, the system creates a copy of the path and extends the copy. The message queue structure identifies the messages (or packets of a message) that are queued up for processing by the path and identifies the path entry at where the processing should start. The stack list structure contains a list of pointers to the path entry structures 505 that comprise the path. Each path entry structure contains a pointer to the corresponding path data structure, a pointer to a map structure 507, a pointer to a multiplex list 508, a pointer to the corresponding path address structure, and a pointer to a member structure 509. A map structure identifies the output label of the edge of the path entry and optionally a target label and a target key. A target key identifies the session associated with the protocol that converts the packet to the target label. (The terms "media," "label," and "format" are used interchangeably to refer to the output of a protocol.) The multiplex list is used during the demux process to track possible next edges when a path is being identified as having more than one next edge. The member structure indicates that the path entry represents an edge of a path and contains a pointer to a binding structure to which the path entry is associated (or "nailed"), a stack list entry is the position of the path entry within the associated stack list, a path list entry is the position of the path entry within the associated path list of a binding and an address entry is the position of the binding within the associated path address. A path address of a path identifies the bindings to which the path entries are bound. The path address structure contains a URL for the path, the name of the path identified by the address, a pointer to a binding list structure 506, and the identification of the current binding within the binding list. The URL (e.g., "protocol://tcp(0)/ip(0)/eth(0)") identifies conversion routines (e.g., protocols and edges) of a path in a human-readable format. The URL (universal resource locator) includes a type field (e.g., "protocol") followed by a sequence of items (e.g., "tcp(0)"). The type field specifies the format of the following information in the URL, that specifies that the type field is followed by a sequence of items. Each item identifies a protocol and an edge (e.g., the protocol is "tcp" and the edge is "0"). In one embodiment, the items of a URL may also contain an identifier of state information that is to be used when

processing a message. These URLs can be used to illustrate to a user various paths that are available for processing a message. The current binding is the last binding in the path as the path is being built. The binding list structure contains a list of pointers to the binding structures associated with the path. Each binding structure **510** contains a pointer to a session structure, a pointer to an edge structure, a key, a path list structure, and a list of active paths through the binding. The key identifies the state information for a session of a protocol. A path list structure contains pointers to the path entry structures associated with the binding.

FIG. **6** is a block diagram that illustrates the interrelationship of the data structures associated with a session. A session structure **601** contains the context for the session, a pointer to a protocol structure for the session, a pointer to a binding table structure **602** for the bindings associated with the session, and the key. The binding table structure contains a list of pointers to the binding structures **510** for the session. The binding structure is described above with reference to FIG. **5**. The path list structure **603** of the binding structure contains a list of pointers to path entry structures **505**. The path entry structures are described with reference to FIG. **5**.

FIGS. **7** A, 7B, and 7C comprise a flow diagram illustrating the processing of the message send routine. The message send routine is passed a message along with the path entry associated with the session that last processed the message. The message send routine invokes the message handler of the next edge in the path or queues the message for processing by a path. The message handler invokes the demux routine to identify the next path entry of the path. When a driver receives a message, it invokes the message send routine passing a reference path entry. The message send routine examines the passed path entry to determine (1) whether multiple paths branch from the path of the passed path entry, (2) whether the passed path entry is a reference with an associated path, or (3) whether the passed path entry is a member with a next path entry. If multiple paths branch from the path of the passed path entry, then the routine recursively invokes the message send routine for each path. If the path entry is a reference with an associated path, then the driver previously invoked the message send routine, which associated a path with the reference path entry, and the routine places the message on the queue for the path. If the passed path entry is a member with a next path entry, then the routine invokes the message handler (i.e., conversion routine of the edge) associated with the next path entry. If the passed path entry is a reference without an associated path or is a member without a next path entry, then the routine invokes the demux routine to identify the next path entry. The routine then recursively invokes the messages send routine passing that next path entry. In decision block **701**, if the passed path entry has a multiplex list, then the path branches off into multiple paths and the routine continues at block **709**, else the routine continues at block **702**. A packet may be processed by several different paths. For example, if a certain message is directed to two different output devices, then the message is processed by two different paths. Also, a message may need to be processed by multiple partial paths when searching for a complete path. In decision block **702**, if the passed path entry is a member, then either the next path entry indicates a nailed binding or the path needs to be extended and the routine continues at block **704**, else the routine continues at block **703**. A nailed binding is a binding (e.g., edge and protocol) is associated with a session. In decision block **703**, the passed path entry is a reference and if the passed path entry has an associated path, then the routine can queue the message for the associated path and the routine continues at block **703**A, else the routine needs to identify a path and the routine continues at block **707**. In block **703**A, the routine sets the entry to the first path entry in the path and continues at block **717**. In block **704**, the routine sets the variable position to the stack list entry of the passed path entry. In decision block **705**, the routine sets the variable next entry to the next path entry in the path. If there is a next entry in the path, then the next session and edge of the protocol have been identified and the routine continues at block **706**, else the routine continues at block **707**. In block **706**, the routine passes the message to the message handler of the edge associated with the next entry and then returns. In block **706**, the routine invokes the demux routine passing the passed message, the address of the passed path entry, and the passed path entry. The demux routine returns a list of candidate paths for processing of the message. In decision block **708**, if at least one candidate path is returned, then the routine continues at block **709**, else the routine returns.

Blocks **709-716** illustrate the processing of a list of candidate paths that extend from the passed path entry. In blocks **710-716**, the routine loops selecting each candidate path and sending the message to be process by each candidate path. In block **710**, the routine sets the next entry to the first path entry of the next candidate path. In decision block **711**, if all the candidate paths have not yet been processed, then the routine continues at block **712**, else the routine returns. In decision block **712**, if the next entry is equal to the passed path entry, then the path is to be extended and the routine continues at block **705**, else the routine continues at block **713**. The candidate paths include a first path entry that is a reference path entry for new paths or that is the last path entry of a path being extended. In decision block **713**, if the number of candidate paths is greater than one, then the routine continues at block **714**, else the routine continues at block **718**. In decision block **714**, if the passed path entry has a multiplex list associated with it, then the routine continues at block **716**, else the routine continues at block **715**. In block **715**, **11** the routine associates the list of candidate path with the multiplex list of the passed path entry and continues at block **716**. In block **716**, the routine sends the message to the next entry by recursively invoking the message send routine. The routine then loops to block **710** to select the next entry associated with the next candidate path.

Blocks **717-718** are performed when the passed path entry is a reference path entry that has a path associated with it. In block **717**, if there is a path associated with the next entry, then the routine continues at block **718**, else the routine returns. In block **718**, the routine queues the message for the path of the next entry and then returns.

FIG. **8** is a flow diagram of the demux routine. This routine is passed the packet (message) that is received, an address structure, and a path entry structure. The demux routine extends a path, creating one if necessary. The routine loops identifying the next binding (edge and protocol) that is to process the message and "nailing" the binding to a session for the message, if not already nailed. After identifying the nailed binding, the routine searches for the shortest path through the nailed binding, creating a path if none exists. In block **801**, the routine invokes the initialize demux routine. In blocks **802-810**, the routine loops identifying a path or portion of a path for processing the passed message. In decision block **802**, if there is a current status, which was returned by the demuxkey routine that was last invoked (e.g., continue, extend, end, or postpone), then the routine continues at block **803**, else the routine continues at block **811**. In block **803**, the routine invokes the get next binding

routine. The get next binding routine returns the next binding in the path. The binding is the edge of a protocol. That routine extends the path as appropriate to include the binding. The routine returns a return status of break, binding, or multiple. The return status of binding indicates that the next binding in the path was found by extending the path as appropriate and the routine continues to "nail" the binding to a session as appropriate. The return status of multiple means that multiple trails (e.g., candidate paths) were identified as possible extensions of the path. In a decision block **804**, if the return status is break, then the routine continues at block **811**. If the return status is multiple, then the routine returns. If the return status is binding, then the routine continues at block **805**. In decision block **805**, if the retrieved binding is nailed as indicated by being assigned to a session, then the routine loops to block **802**, else the routine continues at block **806**. In block **806**, the routine invokes the get key routine of the edge associated with the binding. The get key routine creates the key for the session associated with the message. If a key cannot be created until subsequent bindings are processed or because the current binding is to be removed, then the get key routine returns a next binding status, else it returns a continue status. In decision block **807**, if the return status of the get key routine is next binding, then the routine loops to block **802** to get the next binding, else the routine continues at block **808**. In block **808**, the routine invokes the routine get session. The routine get session returns the session associated with the key, creating a new session if necessary. In block **809**, the routine invokes the routine nail binding. The routine nail binding retrieves the binding if one is already nailed to the session. Otherwise, that routine nails the binding to the session. In decision block **810**, if the nail binding routine returns a status of simplex, then the routine continues at block **811** because only one path can use the session, else the routine loops to block **802**. Immediately upon return from the nail binding routine, the routine may invoke a set map routine of the edge passing the session and a map to allow the edge to set its map. In block **811**, the routine invokes the find path routine, which finds the shortest path through the binding list and creates a path if necessary. In block **812**, the routine invokes the process path hopping routine, which determines whether the identified path is part of a different path. Path hopping occurs when, for example, IP fragments are built up along separate paths, but once the fragments are built up they can be processed by the same subsequent path.

FIG. **9** is a flow diagram of the initialize demux routine. This routine is invoked to initialize the local data structures that are used in the demux process and to identify the initial binding. The demux routine finds the shortest path from the initial binding to the final binding. If the current status is demux extend, then the routine is to extend the path of the passed path entry by adding additional path entries. If the current status is demux end, then the demux routine is ending the current path. If the current status is demux continue, then the demux routine is in the process of continuing to extend or in the process of starting a path identified by the passed address. In block **901**, the routine sets the local map structure to the map structure in the passed path entry structure. The map structure identifies the output label, the target label, and the target key. In the block **902**, the routine initializes the local message structure to the passed message structure and initializes the pointers path and address element to null. In block **903**, the routine sets of the variable saved status to 0 and the variable status to demux continue. The variable saved status is used to track the status of the demux process when backtracking to nail a binding whose nail was postponed. In decision block **904**, if the passed path entry is associated with a path, then the routine continues at block **905**, else the routine continues at block **906**. In block **905**, the routine sets the variable status to the status of that path. In block **906**, if the variable status is demux continue, then the routine continues at block **907**. If the variable status is demux end, then the routine continues at block **908**. If the variable status is demux extend, then the routine continues at block **909**. In block **907**, the status is demux continue, and the routine sets the local pointer path address to the passed address and continues at block **911**. In block **908**, the status is demux end, and the routine invokes the init end routine and continues at block **911**. In block **909**, the status is demux extend, and the routine sets the local path address to the address of the path that contains the passed path entry. In block **910**, the routine sets the address element and the current binding of the path address pointed to by the local pointer path address to the address entry of the member structure of the passed path entry. In the block **911**, the routine sets the local variable status to demux continue and sets the local binding list structure to the binding list structure from the local path address structure. In block **912**, the routine sets the local pointer current binding to the address of the current binding pointed to by local pointer path address and sets the local variable postpone to 0. In block **913**, the routine sets the function traverse to the function that retrieves the next data in a list and sets the local pointer session to null. The routine then returns.

FIG. **10** is a flow diagram of the init end routine. If the path is simplex, then the routine creates a new path from where the other one ended, else the routine creates a copy of the path. In block **1001**, if the binding of the passed path entry is simplex (i.e., only one path can be bound to this binding), then the routine continues at block **1002**, else the routine continues at block **1003**. In block **1002**, the routine sets the local pointer path address to point to an address structure that is a copy of the address structure associated with the passed path entry structure with its current binding to the address entry associated with the passed path entry structure, and then returns. In block **1003**, the routine sets the local pointer path address to point to an address structure that contains the URL of the path that contains the passed path entry. In block **1004**, the routine sets the local pointer element to null to initialize the selection of the bindings. In blocks **1005** through **1007**, the routine loops adding all the bindings for the address of the passed path entry that include and are before the passed path entry to the address pointed to by the local path address. In block **1005**, the routine retrieves the next binding from the binding list starting with the first. If there is no such binding, then the routine returns, else the routine continues at block **1006**. In block **1006**, the routine adds the binding to the binding list of the local path address structure and sets the current binding of the local variable path address. In the block **1007**, if the local pointer element is equal to the address entry of the passed path entry, then the routine returns, else the routine loops to block **1005** to select the next binding.

FIG. **11** is a flow diagram of a routine to get the next binding. This routine returns the next binding from the local binding list. If there is no next binding, then the routine invokes the routine label map get to identify the list of edges ("trails") that will map the output label to the target label. If only one trail is identified, then the binding list of path address is extended by the edges of the trail. If multiple trails are identified, then a path is created for each trail and the routine returns so that the demux process can be invoked for each created path. In block **1101**, the routine sets the local

pointer binding to point to the next or previous (as indicated by the traverse function) binding in the local binding list. In block **1102**, if a binding was found, then the routine returns an indication that a binding was found, else the routine continues at block **1103**. In block **1103**, the routine invokes the label map get function passing the output label and target label of the local map structure. The label map get function returns a trail list. A trail is a list of edges from the output label to the target label. In decision block **1104**, if the size of the trail list is one, then the routine continues at block **1105**, else the routine continues at block **1112**. In blocks **1105-1111**, the routine extends the binding list by adding a binding data structure for each edge in the trail. The routine then sets the local binding to the last binding in the binding list. In block **1108**, the routine sets the local pointer current binding to point to the last binding in the local binding list. In block **1106**, the routine sets the local variable temp trail to the trail in the trail list. In block **1107**, the routine extends the binding list by temp trail by adding a binding for each edge in the trail. These bindings are not yet nailed. In block **1108**, the routine sets the local binding to point to the last binding in the local binding list. In decision block **1109**, if the local binding does not have a key for a session and the local map has a target key for a session, then the routine sets the key for the binding to the target key of the local map and continues at block **1110**, else the routine loops to block **1101** to retrieve the next binding in path. In block **1110**, the routine sets the key of the local binding to the target key of the local map. In block **1111**, the routine sets the target key of the local map to null and then loop to block **1101** to return the next binding. In decision block **1112**, if the local session is set, then the demultiplexing is already in progress and the routine returns a break status. In block **1113**, the routine invokes a prepare multicast paths routine to prepare a path entry for each trail in the trail list. The routine then returns a multiple status.

FIG. **12** is a flow diagram of the get key routine. The get key routine invokes an edge's demuxkey routine to retrieve a key for the session associated with the message. The key identifies the session of a protocol. The demux key routine creates the appropriate key for the message. The demux key routine returns a status of remove, postpone, or other. The status of remove indicates that the current binding should be removed from the path. The status of postpone indicates that the demux key routine cannot create the key because it needs information provided by subsequent protocols in the path. For example, a TCP session is defined by a combination of a remote and local port address and an IP address. Thus, the TCP protocol postpones the creating of a key until the IP protocol identifies the IP address. The get key routine returns a next binding status to continue at the next binding in the path. Otherwise, the routine returns a continue status. In block **1201**, the routine sets the local edge to the edge of the local binding (current binding) and sets the local protocol to the protocol of the local edge. In block **1202**, the routine invokes the demux key routine of the local edge passing the local message, local path address, and local map. The demux key routine sets the key in the local binding. In decision block **1203**, if the demux key routine returns a status of remove, then the routine continues at block **1204**. If the demux key routine returns a status of postpone, then the routine continues at block **1205**, else the routine continues at block **1206**. In block **1204**, the routine sets the flag of the local binding to indicate that the binding is to be removed and continues at block **1206**. In block **1205**, the routine sets the variable traverse to the function to list the next data, increments the variable postpone, and then returns a next binding status. In blocks **1206-1214**, the routine processes the postponing of the creating of a key. In blocks **1207-1210**, if the creating of a key has been postponed, then the routine indicates to backtrack on the path, save the demux status, and set the demux status to demux continue. In blocks **1211-1213**, if the creating of a key has not been postponed, then the routine indicates to continue forward in the path and to restore any saved demux status. The save demux status is the status associated by the binding where the backtrack started. In decision block **1206**, if the variable postpone is set, then the routine continues at block **1207**, else the routine continues at block **1211**. In block **1207**, the routine decrements the variable postpone and sets the variable traverse to the list previous data function. In decision block **1208**, if the variable saved status is set, then the routine continues at block **1210**, else the routine continues at block **1209**. The variable saved status contains the status of the demux process when the demux process started to backtrack. In block **1209**, the routine sets the variable saved status to the variable status. In block **1210**, the routine sets the variable status to demux continue and continues at block **1214**. In block **1211**, the routine sets the variable traverse to the list next data function. In decision block **1212**, if the variable saved status in set, then the routine continues at block **1213**, else the routine continues at block **1214**. In block **1213**, the routine sets the variable status to the variable saved status and sets the variable saved status to 0. In decision block **1214**, if the local binding indicates that it is to be removed, then the routine returns a next binding status, else the routine returns a continue status.

FIG. **13** is a flow diagram of the get session routine. This routine retrieves the session data structure, creating a data structure session if necessary, for the key indicated by the binding. In block **1301**, the routine retrieves the session from the session table of the local protocol indicated by the key of the local binding. Each protocol maintains a mapping from each key to the session associated with the key. In decision block **1302**, if there is no session, then the routine continues at block **1303**, else the routine returns. In block **1303**, the routine creates a session for the local protocol. In block **1304**, the routine initializes the key for the local session based on the key of the local binding. In block **1305**, the routine puts the session into the session table of the local protocol. In block **1306**, the routine invokes the create session function of the protocol to allow the protocol to initialize its context and then returns.

FIG. **14** is a flow diagram of the nail binding routine. This routine determines whether a binding is already associated with ("nailed to") the session. If so, the routine returns that binding. If not, the routine associates the binding with the session. The routine returns a status of simplex to indicate that only one path can extend through the nailed binding. In decision block **1401**, if the binding table of the session contains an entry for the edge, then the routine continues at block **1402**, else the routine continues at block **1405**. In block **1402**, the routine sets the binding to the entry from the binding table of the local session for the edge. In block **1403**, the routine sets the current binding to point to the binding from the session. In block **1404**, if the binding is simplex, then the routine returns a simplex status, else the routine returns. Blocks **1405** through **1410** are performed when there is no binding in the session for the edge. In block **1405**, the routine sets the session of the binding to the variable session. In block **1406**, the routine sets the key of the binding to the key from the session. In block **1407**, the routine sets the entry for the edge in the binding table of the local session to the binding. In block **1408**, the routine invokes the create

Case: 20-1362 Document: 17 Page: 183 Filed: 05/18/2020



binding function of the edge of the binding passing the binding so the edge can initialize the binding. If that function returns a status of remove, the routine continues at block **1409**. In block **1409**, the routine sets the binding to be removed and then returns.

FIG. **15** is a flow diagram of the find path routine. The find path routine identifies the shortest path through the binding list. If no such path exists, then the routine extends a path to include the binding list. In decision block **1501**, if the binding is simplex and a path already goes through this binding (returned as an entry), then the routine continues at block **1502**, else the routine continues at block **1503**. In block **1502**, the routine sets the path to the path of the entry and returns. In block **1503**, the routine initializes the pointers element and short entry to null. In block **1504**, the routine sets the path to the path of the passed path entry. If the local path is not null and its status is demux extend, then the routine continues at block **1509**, else the routine continues at block **1505**. In blocks **1505-1508**, the routine loops identifying the shortest path through the bindings in the binding list. The routine loops selecting each path through the binding. The selected path is eligible if it starts at the first binding in the binding list and the path ends at the binding. The routine loops setting the short entry to the shortest eligible path found so far. In block **1505**, the routine sets the variable first binding to the first binding in the binding list of the path address. In block **1506**, the routine selects the next path (entry) in the path list of the binding starting with the first. If a path is selected (indicating that there are more paths in the binding), then the routine continues at block **1507**, else the routine continues at block **1509**. In block **1507**, the routine determines whether the selected path starts at the first binding in the binding list, whether the selected path ends at the last binding in the binding list, and whether the number of path entries in the selected path is less than the number of path entries in the shortest path selected so far. If these conditions are all satisfied, then the routine continues at block **1508**, else the routine loops to block **1506** to select the next path (entry). In block **1508**, the routine sets the shortest path (short entry) to the selected path and loops to block **1506** to select the next path through the binding. In block **1509**, the routine sets the selected path (entry) to the shortest path. In decision block **1510**, if a path has been found, then the routine continues at block **1511**, else the routine continues at block **1512**. In block **1511**, the routine sets the path to the path of the selected path entry and returns. Blocks **1512-1516** are performed when no paths have been found. In block **1512**, the routine sets the path to the path of the passed path entry. If the passed path entry has a path and its status is demux extend, then the routine continues at block **1515**, else the routine continues at block **1513**. In block **1513**, the routine creates a path for the path address. In block **1514**, the routine sets the variable element to null and sets the path entry to the first element in the stack list of the path. In block **1515**, the routine sets the variable element to be address entry of the member of the passed path entry and sets the path entry to the passed path entry. In block **1516**, the routine invokes the extend path routine to extend the path and then returns. The extend path routine creates a path through the bindings of the binding list and sets the path status to the current demux status.

FIG. **16** is a flow diagram of the process of path hopping routine. Path hopping occurs when the path through the binding list is not the same path as that of the passed path entry. In decision block **1601**, if the path of the passed path entry is set, then the routine continues at block **1602**, else the routine continues at block **1609**. In decision block **1602**, if the path of the passed path entry is equal to the local path, then the routine continues at **1612**, else path hopping is occurring and the routine continues at block **1603**. In blocks **1603-1607**, the routine loops positioning pointers at the first path entries of the paths that are not at the same binding. In block **1603**, the routine sets the variable old stack to the stack list of the path of the passed path entry. In block **1604**, the routine sets the variable new stack to the stack list of the local path. In block **1605**, the routine sets the variable old element to the next element in the old stack. In block **1606**, the routine sets the variable element to the next element in the new stack. In decision block **1607**, the routine loops until the path entry that is not in the same binding is located. In decision block **1608**, if the variable old entry is set, then the routine is not at the end of the hopped from path and the routine continues at block **1609**, else routine continues at block **1612**. In block **1609**, the routine sets the variable entry to the previous entry in the hopped-to path. In block **1610**, the routine sets the path of the passed path entry to the local path. In block **1611**, the routine sets the local entry to the first path entry of the stack list of the local path. In block **1612**, the routine inserts an entry into return list and then returns.

Although the conversion system has been described in terms of various embodiments, the invention is not limited to these embodiments. Modification within the spirit of the invention will be apparent to those skilled in the art. For example, a conversion routine may be used for routing a message and may perform no conversion of the message. Also, a reference to a single copy of the message can be passed to each conversion routine or demuxkey routine. These routines can advance the reference past the header information for the protocol so that the reference is positioned at the next header. After the demux process, the reference can be reset to point to the first header for processing by the conversion routines in sequence. The scope of the invention is defined by the claims that follow.

What is claimed is:

**1**. An apparatus, comprising:

a processing unit; and

a memory storing instructions executable by the processing unit to:

receive one or more packets of a message;

determine a key value using information in the one or more packets;

identify, using the key value, a sequence of two or more routines, wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format;

create a path that includes one or more data structures that indicate the identified sequence of two or more routines, wherein the path is usable to store state information associated with the message; and

process subsequent packets in the message using the sequence of two or more routines indicated in the path.

**2**. The apparatus of claim **1**, wherein the key value includes an IP address and one or more TCP port addresses.

**3**. The apparatus of claim **1**, wherein the sequence of two or more routines includes:

a second routine that is used to execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol.

**4**. The apparatus of claim **3**, wherein the second protocol is an HTTP protocol.

5. The apparatus of claim **1**, wherein the path further indicates sessions corresponding to respective ones of the sequence of two or more routines.

6. The apparatus of claim **1**, wherein the path indicates the key value and a queue for storing packets associated with the message.

7. The apparatus of claim **1**, wherein the sequence of two or more routines includes a routine that is executable to process information in the message without performing a format conversion.

8. The apparatus of claim **1**, wherein the memory stores instructions executable by the processing unit to:
store, prior to receiving any packets of the message, a list having a plurality of sequences of routines that includes the sequence of two or more routines.

9. The apparatus of claim **8**, wherein the instructions executable by the processing unit to identify the sequence of two or more routines are executable to select the sequence of two or more routines from the list using the key value.

10. A non-transitory, computer-readable medium comprising software instructions for processing a message, wherein the software instructions, when executed, cause a computer system to:
determine a key value based on information in one or more received packets of the message, wherein the key value includes an IP address and one or more Transmission Control Protocol (TCP) port addresses;
identify, using the key value, a sequence of two or more routines;
create one or more data structures that reference the identified sequence of two or more routines and are usable to store state information associated with the message; and
process subsequent packets in the message using the identified sequence of two or more routines, wherein the sequence includes a routine that is used to execute TCP to process at least one of the subsequent packets having a TCP format.

11. The computer-readable medium of claim **10**, wherein the created one or more data structures include a reference to the key value and to a queue for storing packets of the message for processing.

12. The computer-readable medium of claim **10**, wherein the one or more data structures indicate sessions corresponding to respective ones of the sequence of two or more routines.

13. The computer-readable medium of claim **10**, wherein the sequence of two or more routines includes a plurality of application-level routines.

14. The computer-readable medium of claim **10**, wherein the software instructions, when executed, further cause the computer system to store, prior to receiving any packets of the message, a list of routine sequences that includes the sequence of two or more routines.

15. The computer-readable medium of claim **14**, wherein the software instructions are executable to identify the sequence of two or more routines by selecting, using the key value, the sequence of two or more routines from the list.

16. A method, comprising:
receiving, by a computer network device, one or more packets of a message;
determining, by the computer network device, a key value based on information in the one or more packets;
identifying, by the computer network device, a particular sequence of two or more routines using the key value, wherein the particular sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format;
creating, by the computer network device, one or more data structures that reference the particular sequence, wherein the one or more data structures are usable to store state information associated with the message; and
processing, by the computer network device, subsequent packets in the message using the particular sequence.

17. The method of claim **16**, further comprising:
storing, by the computer network device prior to receiving any packets of the message, a list that indicates a plurality of sequences of routines that includes the particular sequence.

18. The method of claim **17**, wherein the identifying includes using the key value to select the particular sequence from the list.

19. The method of claim **16**, wherein the key value includes an IP address and one or more TCP port addresses.

20. The method of claim **16**, wherein the creating includes storing, in the one or more data structures:
an indication of the key value; and
a reference to a queue for storing packets of the message.

* * * * *

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00054-JRG |
| | § | |
| SANDVINE CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**FINAL JUDGMENT**

Before the Court is Plaintiff Implicit, LLC ("Implicit") and Defendant Sandvine Corporation's ("Sandvine") (collectively, the "Parties") Stipulation of Noninfringement (the "Stipulation"). (Dkt. No. 17.) In the Stipulation, the Parties stipulate to noninfringement as to all asserted claims of U.S. Patent Nos. 8,694,683 ("the '683 patent"); 9,270,790 ("the '790 patent"); and 9,591,104 ("the '104 patent") (collectively, "the Patents-in-Suit") based on the Court's claim construction order (Dkt. Nos. 111, 117.) Further, the Parties request that the Court enter a final judgment of noninfringement pursuant to the Stipulation.

Having considered the Stipulation, the Court is of the opinion that the Stipulation should be and hereby is **APPROVED**. Accordingly, Pursuant to Rule 58 of the Federal Rules of Civil Procedure the Court hereby **ORDERS** and **ENTERS JUDGMENT** pursuant to the Stipulation as follows:

1. Sandvine did not infringe Claims 1, 2, and 10 of the '683 Patent;
2. Sandvine did not infringe Claims 1, 2, 8, 9, and 15 of the '790 Patent;
3. Sandvine did not infringe Claims 1, 3, 4, 10 and 16 of the '104 Patent;

4. All of the Sandvine's other claims, counterclaims, and defenses are **DISMISSED WITHOUT PREJUDICE;** and
5. Each party shall bear its own costs and attorneys' fees.

The Clerk of the Court is directed to **CLOSE** the above-referenced case. All other relief requested by either party and not specifically awarded is **DENIED**.

**So ORDERED and SIGNED this 18th day of December, 2019.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

IMPLICIT, LLC,

Plaintiff,

v.

SANDVINE CORPORATION,

*Defendant.*

Civil Action No. 2:18-cv-00054-JRG-RSP

JURY TRIAL DEMANDED

**STIPULATION OF NONINFRINGEMENT**

Based on the Court's claim construction of certain terms, Plaintiff Implicit, LLC ("Implicit") and Sandvine Corporation ("Sandvine") hereby stipulate to noninfringement as to all asserted claims of U.S. Patent Nos. 8,694,683 ("the '683 patent"); 9,270,790 ("the '790 patent"); and 9,591,104 ("the '104 patent") (collectively, "the Patents-in-Suit"). Implicit and Sandvine request that the Court enter a final judgment of noninfringement. The requested relief will conserve judicial and party resources by allowing the parties to forego further litigation of the '683, '790, and '104 patent infringement claims in this Court, while preserving Implicit's right to appeal the Court's claim construction.

1. Implicit has alleged that Sandvine's Policy Traffic Switch ("PTS"), PacketLogic, Network Application Visibility Layer ("NAVL") (collectively, the "Accused Products") infringe '683 Patent claims 1, 2, and 10; '790 Patent claims 1, 2, 8, 9, and 15; and '104 Patent claims 1, 3, 4, 10, and 16 (collectively, the "Asserted Claims").

2. On April 15, 2019, the Court issued its Memorandum Opinion and Order construing certain terms of the Patents-in-Suit. Dkt. Nos. 111, 117. That Order construed a number of terms in the Asserted Claims of the Patents-in-Suit as follows:

| **Term** | **Court's Construction** |
|---|---|
| "sequence of [two or more] routines" | "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message" |
| "list of conversion routines" | "an ordered arrangement of software conversion routines that was not selected from a set of arrangements created before receiving a first packet of the message" |
| "convert one or more packets having a TCP format into a different format" | "convert the outermost header structure of the packet(s) from TCP to another type of header structure"<br><br>The Court also concluded the following: "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." |
| "convert one of the packets of the message into a different format" | "convert the outermost header structure of the packet(s) from TCP to another type of header structure"<br><br>The Court also concluded the following: "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." |
| "convert one or more packets in a transport layer format into a different format" | "convert the outermost header structure of the packet(s) from a transport layer protocol header to another type of header structure"<br><br>The Court also concluded the following: "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' |

Case: 20-1362 Document: 17 Page: 189 Filed: 05/18/2020

| **Term** | **Court's Construction** |
|---|---|
| | 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." |
| "convert packets of the different format into another format" | "convert each packet's outermost header structure from the different protocol header into another type of header structure"<br><br>The Court also concluded the following: "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." |
| "execute a Transmission Control Protocol (TCP)" | "operate on one or more packets whose outermost header is a TCP header" |
| "executable to perform a Transmission Control Protocol (TCP)" | "operable on one or more packets whose outermost header is a TCP header" |
| "execute a second, different protocol" | "operate on packets whose outermost header is a [second/third], different protocol header" |
| "execute a third, different protocol" | "operate on packets whose outermost header is a [second/third], different protocol header" |
| "execute a Transmission Control Protocol (TCP) to process packets having a TCP format" | "operate on one or more packets whose outermost header is a TCP header" |
| "execute TCP to process at least one of the subsequent packets having a TCP format" | "operate on one or more packets whose outermost header is a TCP header" |
| "execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol" | "execute a second protocol to operate on packets whose outermost header is other than a TCP header, wherein the second protocol is an application-level protocol" |

3. Implicit and Sandvine stipulate that under the Court's construction of the above terms, there is no infringement of the Asserted Claims by the Accused Products.

4. Each party shall bear its own costs and fees.

Date December 17, 2019

*Counsel for Plaintiff Implicit, LLC*

/s/William E. Davis, III

Spencer Hosie, pro hac vice,
(CA Bar No. 101777)
shosie@hosielaw.com
Diane S. Rice, pro hac vice,
(CA Bar No. 118303)
drice@hosielaw.com
Brandon C. Martin, pro hac vice,
(CA Bar No. 269624)
bmartin@hosielaw.com
Darrell Rae Atkinson, pro hac vice,
(CA Bar No. 280564)
datkinson@hosielaw.com
Francesca M.S. Germinario, pro hac vice,
(CA Bar No. 326208)
fgerminario@hosielaw.com
**HOSIE RICE LLP**
600 Montgomery St., 34th Floor
San Francisco, CA 94111
415.247.6000
Fax: 415.247.6001

William E. Davis, III (TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt (TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echine@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty William Wilson

*Counsel for Defendant Sandvine Corporation.*

*/s/Abran J. Kean*

Abran J. Kean (CO Bar 44660)
**ERISE IP, P.A.**
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600

Eric A. Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
eric.buresh@eriseip.com
abran.kean@eriseip.com
mark.lang@eriseip.com

Melissa Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

Case: 20-1362 Document: 17 Page: 191 Filed: 05/18/2020

(TX Bar No. 24106583)
twilson@bdavisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically on December 17, 2019 in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel, who are deemed to have consented to electronic service. *See* Local Rule CV-5(a)(3)(V).

/s/William E. Davis, III
William E. Davis, III

Case: 20-1362 Document: 17 Page: 192 Filed: 05/18/2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMPLICIT, LLC,<br><br>Plaintiff,<br>v.<br><br>SANDVINE CORPORATION,<br><br>*Defendant.* | Civil Action No. 2:18-cv-00054-JRG-RSP<br><br>JURY TRIAL DEMANDED |

## FINAL JUDGMENT

Based on the Court's Claim Construction Order (Dkt. Nos. 111, 117), Plaintiff Implicit, LLC ("Implicit") and Sandvine Corporation ("Sandvine") have stipulated to noninfringement as to all asserted claims of U.S. Patent Nos. 8,694,683 ("the '683 patent"); 9,270,790 ("the '790 patent"); and 9,591,104 ("the '104 patent") (collectively, "the Patents-in-Suit"). *See* Joint Stipulation of Non-Infringement, at ¶¶ 1–4. The parties have therefore stipulated that Sandvine is entitled to a judgment of noninfringement as to all Plaintiff's Asserted Claims as set forth in the joint stipulation.

Accordingly, the Court enters Judgment as follows:

Judgment is entered against Plaintiff and for Defendant as to Plaintiff's claims for patent infringement based on the parties' Joint Stipulation of Non-Infringement;

The Court further enters judgment for Defendants and against Plaintiff and declares '683 Patent claims 1, 2, and 10; '790 Patent claims 1, 2, 8, 9, and 15; and '104 Patent claims 1, 3, 4, 10,

and 16 are not infringed by Defendant. Plaintiff shall take nothing from Defendant with respect to the Asserted Claims;

All of the Defendants' other claims, counterclaims, and defenses are dismissed without prejudice;

Each party shall bear their own costs and attorneys' fees.

It is SO ORDERED.

United States Court of Appeals
for the Federal Circuit

*Implicit, LLC v. Sandvine Corporation* 2020-1362

**CERTIFICATE OF SERVICE**

I, Christian John Hurt, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **May 18, 2020** I caused the foregoing **Opening Brief for Appellant** to be filed with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Eric A. Buresh
erise ip, pa
7015 College Boulevard
Suite 700
Overland Park, KS 66211
(913) 777-5600
eric.buresh@eriseip.com

ABRAN J. KEAN
ERISE IP, PA
5299 DTC Boulevard
Suite 1340
Greenwood Village, CO 80111
(913)777-5600
abran.kean@eriseip.com

Pursuant to Administrative Order No. 20-01, dated March 20, 2020, paper copies of Appellant's Opening Brief will not be mailed to principal counsel or submitted to the Court.

Dated: May 18, 2020

/s/ Christian John Hurt
Christian John Hurt
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 9258 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(5)(A)(B), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2020 for Mac in Times New Roman 14 point font.

Dated: May 18 , 2020

/s/ Christian John Hurt
Christian John Hurt
*Counsel for Appellant*